IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 18-366-WCB |
| IAC/INTERACTIVECORP, MATCH GROUP, INC., MATCH GROUP, LLC, and VIMEO, INC., | § § § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION & ORDER

### BACKGROUND

Plaintiff British Telecommunications plc ("British Telecom") filed its first amended complaint in this action on June 8, 2018, against IAC/InteractiveCorp ("IAC"), Match Group, Inc. ("MGI"), Match Group, LLC, and Vimeo, Inc. The first amended complaint alleged that the named defendants infringed six patents through the provision of four online services: Match.com, Tinder, OkCupid, and Vimeo. *See* Dkt. No. 17, at 24–53. The six patents include U.S. Patent Nos. 6,240,450; 6,397,040; 6,578,079; 7,243,105; 7,974,200; and 9,177,297. *Id.* at 24–25.

The defendants' corporate structure is relevant to this motion. IAC is a Delaware corporation with its headquarters in New York City. *Id.* at 8. MGI, also a Delaware corporation, is an IAC subsidiary; according to the complaint, IAC "owns over 81% of [MGI's] stock value, and controls over 97% of [MGI's] voting rights." *Id.* at 11. Vimeo, Inc., is also a subsidiary of IAC. *Id.* at 18. Additionally, Match Group, LLC, and Humor Rainbow, Inc., are subsidiaries of

1

MGI. *Id.* at 15, 16. Vimeo, Inc., operates Vimeo. Match Group, LLC, operates Match.com and Tinder. And Humor Rainbow, Inc., operates OkCupid.[1] *Id*. at 16, 18.

Defendants IAC and MGI have filed a motion under Fed. R. Civ. P. 12(b)(6) to dismiss British Telecom's first amended complaint for failure to plead state a claim on which relief can be granted. Dkt. No. 20. IAC and MGI argue that British Telecom has failed to plead facts plausibly demonstrating that IAC or MGI owns or operates any of the alleged infringing services or that either company is liable for any acts of alleged infringement by any of the other defendants. Dkt. No. 21, at 1. According to IAC and MGI, "[n]either IAC nor MGI operates the accused services[;] [n]evertheless, [British Telecom's first amended complaint] seeks to hold the two companies liable for the alleged infringement by their subsidiary companies that do operate the accused services." *Id.* at 2. British Telecom disagrees, stating that, aside from vicarious liability, the first amended complaint shows that IAC and MGI "own and operate each of the underlying accused services, websites, and applications." Dkt. No. 27, at 2, 5–15.

The motion to dismiss asserts that IAC and MGI are not liable for infringement on either of two theories: (1) vicarious liability based on an alter ago theory, and (2) vicarious liability based on an agency theory. In response, British Telecom does not allege liability on an alter ego theory, but relies only on an agency theory. Dkt. No. 27, at 11 n.2. The Court will therefore focus on whether British Telecom's first amended complaint is sufficient to meet the pleading requirements for British Telecom's agency theory of liability. Because the Court finds that the pleadings are sufficient to survive a motion to dismiss under an agency theory of vicarious liability, it is not necessary to address whether the first amended complaint shows that IAC or MGI actually owns or operates the accused services.

---

[1] Humor Rainbow, Inc. was not named as a defendant in the first amended complaint.

**DISCUSSION**

When presented with a motion to dismiss for failure to state a claim, the court applies a two-part analysis: (1) "the factual and legal elements of a claim should be separated," and (2) accepting all of the complaint's well-pleaded facts as true, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Ashcraft v. Iqbal*, 556 U.S. 662, 679 (2009)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. That standard guides the Court's analysis of the sufficiency of British Telecom's claims of vicarious liability.

"A parent company is not liable for the actions of its subsidiary solely because of the parent-subsidiary relationship." *StrikeForce Techs., Inc. v. PhoneFactor, Inc.*, No. CV 13-490, 2013 WL 6002850, at *3 (D. Del. Nov. 13, 2013). However, liability may be permissible under either of two distinct theories: (1) the alter ego theory, or (2) the agency theory. *See id.* Although British Telecom does not rely on the alter ego theory, the differences between the two theories inform the Court's analysis.

Under the alter ego theory, the court must determine whether a parent and its subsidiary are truly separate. *See Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1476 (3d Cir. 1988). Factors to consider include: "adequacy of capitalization, overlapping directorates and officers, separate record keeping, payment of taxes and filing of consolidated returns, maintenance of separate bank accounts, level of parental financing and control over the subsidiary, and subsidiary authority over day-to-day operations." *Id.*; *see Upjohn Co. v. Syntro Corp.*, No. CIV. A. 89-107, 1990 WL 79232, at *4 (D. Del. Mar. 9, 1990); *Mobil Oil Corp. v.*

3

*Linear Films, Inc.*, 718 F. Supp. 260, 266 (D. Del. 1989); *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 237 (D. Del. 1984). Significantly, "[t]he activities bearing on the issue of corporate independence need not have any particular relationship to the cause of action being asserted." *Phoenix Canada*, 842 F.2d at 1477.

The agency theory differs in scope and application. Under the agency theory, "total domination or general alter ego criteria need not be proven." *Id*. Rather, "a parent corporation is held liable for the actions of its subsidiary if the parent directed or authorized those actions." *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, No. CV 16-581, 2017 WL 896988, at *6 (D. Del. Mar. 7, 2017); *StrikeForce*, 2013 WL 6002850, at * 5; *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998). Stated another way, when a subsidiary acts as the agent of the parent corporation, the parent corporation may be liable for actions conducted by the agent. *See Phoenix Canada*, 842 F.2d at 1477. However, agency liability is limited in application. Finding liability under the agency test requires the parent-subsidiary relationship to be directly related to the cause of action. *See id.*; *T-Jat Sys.*, 2017 WL 896988, at *6; *StrikeForce*, 2013 WL 6002850, at *5.

Here, the facts alleged in the complaint are sufficient to show that British Telecom has a plausible claim for relief against IAC and MGI under an agency theory of vicarious liability. With regard to MGI, the first amended complaint alleges that MGI: (1) "represents to the public and shareholders that Match, Tinder and OkCupid are its proprietary brands, operated by [MGI]"; (2) "provides the technology and network systems that perform the steps for the Match.com, Tinder, and OkCupid products/services that infringe [British Telecom's] patents"; (3) "share[s] [user] information with other Match Group companies to . . . improve [users'] chances at building significant connections with others"; (4) "directly hires and fires officers of

4

its subsidiaries, including Humor Rainbow, Inc. and . . . Match Group, LLC"; (5) "shares officers and directors and shuffles officers throughout its subsidiaries"; and (6) relies on a system in which the "persons responsible for overseeing [MGI and] Humor Rainbow, Inc. . . . also report directly to [MGI's] CEO, rather than reporting to their own companies' boards of directors." Dkt. No. 17, at 11–17. Those factual allegations, accepted as true, amount to more than bald, conclusory assertions that should be disregarded. *See BlackBerry Ltd. v. Nokia Corp.*, No. 17-CV-155, 2018 WL 1401330, at *1 (D. Del. Mar. 20, 2018) ("Though detailed factual allegations are not required, a complaint must do more than simply provide labels and conclusions or a formulaic recitation of the elements of a cause of action." (internal citations and quotations omitted)). Instead, they present a plausible factual scenario of close coordination and a joint strategy for the use and deployment of technology and user information that are at the heart of the '040 patent (Match.com's Mixer feature, OkCupid's Quickmatch and Locals features, and Tinder's basic features), the '105 patent (Match.com's Daily Matches feature and OkCupid's quiz question feature), and the '297 patent (Tinder's Smart Photos). *See* Dkt. No. 21, at 2–3.

IAC's relationship to MGI's subsidiaries is somewhat less clear. The first amended complaint notes, at the outset, that in IAC's Annual Reports, "[a]ll references to 'IAC,' the 'Company,' 'we,' 'our' or 'us' . . . are to IAC." Dkt. No. 17, at 9. It then cites to language from numerous Annual Reports in which IAC allegedly discusses its relationship (using the pronoun "we") to the alleged infringing products and services. This language includes: (1) "[t]hrough Match Group, we operate a dating business . . . [and] provide these [dating] services through websites and applications that we own and operate"; (2) "we also offer access to our services via various mobile devices through our Match, OkCupid, [and] Tinder . . . applications"; (3) "[w]e also continually work to expand and enhance the efficiency and scalability of our technology and

network systems." Dkt. No. 21, at 9–12. The first amended complaint also alleges that IAC "promulgated the infringing products/services of the '040 Patent . . . and the '105 Patent . . . across and incorporated them into each of the dating business products/services." *Id.* at 13. While the connection between the grandparent company and its sub-subsidiaries is more attenuated than the connection between MGI and its subsidiaries, the requisite "evidence of agency required at the pleading stage is minimal. . . . Although this corporate closeness may not be sufficient to succeed on agency theory at later stages in litigation, it is sufficient to survive a motion to dismiss, if the parties are properly and individually identified." *T-Jat Sys.*, 2017 WL 896988, at *5–6 (D. Del. Mar. 7, 2017); *see Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 808 (3d Cir. 2003) ("Jurimex must allege facts sufficient to allow such a relationship to be proven at trial, but it is not required to have extensive proof at the complaint stage."); *Intellectual Ventures I LLC v. Toshiba Corp.*, 66 F. Supp. 3d 495, 499 (D. Del. 2014) (regarding allegations of an agency relationship between a corporate parent and its subsidiaries, "[t]he court must take plaintiffs' factual allegations as true, especially where, as here, the information resides with defendants who, in turn, have provided only a general denial of infringement rather than facts about the organization and relationships between the various defendant entities").

IAC is also the parent company of Vimeo, Inc., and the first amended complaint alleges a plausible agency relationship between IAC and Vimeo. It cites language from IAC's Annual Reports including: (1) "[w]e offer basic video hosting and sharing services . . . and the ability to sell videos"; (2) "[t]hrough Vimeo, we offer video creators . . . tools to share, manage distribute and monetize content online, and provide viewers with a clutter-free environment to watch content"; (3) "[w]e market Vimeo's services . . . through our owned and operated website and

6

mobile applications"; and (4) "[w]e also continually work to expand and enhance the efficiency and scalability of our technology and network systems" (language also used to describe IAC's relationship with MGI's subsidiaries). Dkt. No. 17, at 10–12. The amended complaint also alleges that "Vimeo, Inc.'s revenue is consolidated and reported as part of the operations of IAC." *Id*. at 18. Based on those allegations, the Court finds that British Telecom has plausibly alleged that Vimeo, Inc., is directed and controlled by IAC, particularly with respect to the Vimeo products and services that assertedly infringe the '450 patent (Vimeo's Advanced Stats features), the '079 patent (Vimeo's basic video "purchased" or "rented" features), and the '200 patent (Vimeo and Vimeo Live products/services). *See* Dkt. No. 21, at 3.

Citing *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227 (D. Del. 1984), IAC and MGI argue that British Telecom's factual allegations are not sufficient to overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6). In *Akzona*, the plaintiffs argued that the district court's jurisdiction over two subsidiaries, Enka and Akzona, was sufficient to give it jurisdiction over parent company, Akzo. The court first held that "[jurisdiction over a] subsidiary does not confer jurisdiction over the parent where separate corporate identities are maintained . . . unless the subsidiary is found to be either the alter ago or the agent of the parent." *Id.* at 237. According to the court, "[w]hether a subsidiary is the agent of the parent involves a determination that the separate corporate identities of the subsidiary and parent are a fiction and that the subsidiary is, in fact, being operated as a department of the parent." *Id.* The court summarized the plaintiffs' allegations regarding the parent-subsidiary relationship as follows:

> (1) Akzo's 100% ownership of Enka and Akzona; (2) some overlap between the board of directors and Akzo and those of Enka and Akzona; (3) references to Enka and Akzona as divisions of Akzo in the Akzo annual report; (4) deposition of current and former Enka employees in which they referred to Enka as a division of Akzo and stated that the Enka board reported to the Akzo board; (5) the

7

> requirement that Akzo approve capital expenditures by Enka and Akzona of amounts exceeding $850,000; (6) references to Akzo's board members' supervision of the "divisions"; (7) references in Akzo board meetings and in corporate reports to the development of advanced fibers as an "Akzo decision" and "Akzo project"; (8) Akzo taking credit for the advanced fiber project in its annual report; (9) Akzo's negotiation with an agency of the Dutch government to set up a joint venture with Enka to manufacture aramid fibers; (10) Akzo's guarantee of 50% of the Dutch government loans to Enka; and (11) Akzo's participation in the decision to bring this declaratory judgment action.

*Id.* Despite those allegations, the court found that the plaintiffs failed to establish that Enka and Akzona were agents of Akzo, and it dismissed the claims against Akzo. *Id.* IAC and MGI argue that British Telecom's claims "resemble the claims that were dismissed in *Akzona*." Dkt. No. 21, at 11. Therefore, according to IAC and MGI, British Telecom's claims should also be dismissed.

The Court disagrees. The analysis conducted in *Akzona* has been recognized by subsequent courts in this district (either explicitly or implicitly) as being more akin to an alter ego analysis than to a conventional agency analysis. *See Upjohn Co. v. Syntro Corp.*, No. CIV. A. 89-107, 1990 WL 79232, at *4 (D. Del. Mar. 9, 1990) (stating that the court in *Akzona* "concluded that the record was insufficient to support a finding that the subsidiary was the alter ego of the parent"); *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305–06 (D. Del. 1990) (finding that "[t]he Court in *Akzona* . . . did not distinguish the agency and alter-ego theories[;] [h]owever, it did find that absent *total* control of the subsidiary . . . the presence of the subsidiary could not be imputed to the parent for jurisdictional purposes"); *see also Phoenix Canada*, 842 F.2d at 1477 ("Under [the general agency theory of liability], total domination or general alter ego criteria need not be proven").

The *Akzona* court's reliance on *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil*, 456 F. Supp. 831 (D. Del. 1978), further undermines the argument made by IAC and MGI. *See*

*Akzona*, 607 F. Supp. at 238. The *Akzona* court justified its finding of no agency relationship by comparing its facts to what it deemed to be the stronger facts of the *Japan Petroleum* case, which also found no agency relationship. *Id.* However, in *Japan Petroleum*, following a motion to dismiss based on the plaintiff's agency theory, the court "deferred its ruling in order to permit the parties to conduct discovery." 456 F. Supp. at 834. It was not until after discovery that the court refused to infer an agency relationship. *Id.* at 846. Therefore, the Court finds *Akzona* distinguishable from the current case, in which general agency is at issue and the parties have yet to conduct discovery.

IAC and MGI also attempt to draw parallels between this case and *BlackBerry Ltd. v. Nokia Corp.*, No. 17-CV-155, 2018 WL 1401330 (D. Del. Mar. 20, 2018). In *BlackBerry*, the court found that Plaintiff BlackBerry's direct infringement claims against two defendants were based entirely on the defendants' agency relationship to a third defendant. *See id.* at *2. The court held that the complaint, consisting of merely three paragraphs related to the defendants' relationships, "d[id] not state facts supporting the existence of an agency relationship between any of the [d]efendants." *Id*. IAC and MGI argue that, as in the case of the allegations in *BlackBerry*, the allegations in this case are "wholly conclusory." Dkt. No. 31, at 7. Again, the Court disagrees. Here, the first amended complaint consists of over 30 paragraphs of factual allegations, with references to Annual Reports, news articles, and websites, discussing the relationship between IAC, MGI, and their subsidiaries and sub-subsidiaries. Such allegations far exceed the allegations in *BlackBerry,* and are sufficient to show that British Telecom has a plausible claim for relief against IAC and MGI under an agency theory of vicarious liability.

Therefore, IAC and MGI's motion to dismiss for failure to plead facts plausibly demonstrating that IAC or MGI owns or operates any of the alleged infringing services or that either company is liable for the alleged infringement of the other defendants is denied.

IT IS SO ORDERED.

SIGNED this 4th day of February, 2019.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE