# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-366-WCB |
| | ) |
| IAC/INTERACTIVECORP, MATCH GROUP, INC., MATCH GROUP, LLC, and VIMEO, INC., | ) ) ) |
| | ) |
| Defendants. | ) |

## THE PARTIES' JOINT SUBMISSION REGARDING
## PROPOSED PROTECTIVE ORDER

The Parties have resolved most, but not all, provisions of a Proposed Protective Order to protect discovery in this case. The following two issues remain unresolved.

The first issue involves defining who has access to "Highly Confidential" information. The Proposed Protective Order is essentially a 2-tier order insofar as defining access to information, including a "Confidential" tier and a "Highly Confidential" tier. There is a 3rd tier for "Source Code" which adds a specific mechanism for disclosing and producing Source Code information, but the issue of "who has access" for tier 3 is the same as for tier 2. The parties are in agreement that each party's in-house counsel may review another party's "Confidential" tier 1 materials, but disagree as whether each party's in-house counsel should be given access to the other parties' "Highly Confidential" tier 2 or tier 3 materials. Plaintiff British Telecommunications plc (hereinafter "BT") contends that two in-house attorneys of each party should be allowed access to other parties' "Highly Confidential" materials, provided the in-house attorneys are not involved in either business decision making and/or patent prosecution and whose responsibilities include management and oversight of either the conduct of this litigation

or the settlement of this litigation.  Defendants oppose BT's proposal, contending that in-house attorneys – like BT's – who actively manage and direct patent assertion and litigation businesses should not have access to Defendants' "Highly Confidential" materials.

The second issue involves the extent to which litigation counsel who access another party's "Highly Confidential" materials can be involved in post-grant administrative proceedings, such as for example *Inter Partes* Review (hereinafter "IPR").  BT contends that such counsel should have full ability to participate in all aspects of such proceedings. Defendants do not object to BT's litigation counsel's participation in such proceedings, but contend they should be prohibited from participating in any amendment of the patent claims.

In short and succinct sections below, the parties have presented their respective positions in more detail:

**Issue No. 1:  Sec. 7.3(f) - Access to Highly Confidential Information:**

**BT's Position:**

The issue of in-house counsel's access to sensitive information under a Protective Orders has been settled law for almost 25-years.  *U.S. Steel Corp. v. United States,* 730 F.2d 1465 (Fed. Cir. 1984; *see also Matsushita Electric Industrial Co. v. United States*, 929 F.2d 1577 (Fed. Cir.1991).  As this Court explained in *Affymetrix* v, *Illumina*, No. 04-901-JJF, 2005 U.S. Dist. LEXIS 15482, at *6 (D. Del. July 28, 2005) (Farnan, J.), "[t]he question of whether to allow in-house counsel access to materials under a protective order is governed by the factual circumstances surrounding each individual counsel's activities, association and relationship with a party, and not the attorney's status as in-house or outside counsel." *See also R.R. Donnelley & Sons Co. v. Quark, Inc.*, No. 06-032 JJF, 2007 WL 61885 (D. Del. Jan. 4, 2007); *Sanofi-Aventis U.S. LLC v. Breckenridge Pharm., Inc.*, No. 15-289 (MAS)(LHG), 2016 WL 308795 (D.N.J. Jan.

25, 2016). The primary issue that must be resolved under the case law is whether in-house counsel (or anyone who is to be given access to confidential information) works in a "competitive decision making" capacity. *See, e.g.*, *Affymetrix*, 2005 U.S. Dist. LEXIS 15482, at *6-7; *see also U.S. Steel Corp.*, 730 F.2d at 1468 and n.3.

In the present case, BT's choice of counsel includes BT's in-house counsel – whom BT has already specifically identified. These BT in-house counsel need full access to the discovery in this case in order to fully and fairly represent their client in this action. They are: (i) Mr. Neil Hobbs, who is a U.S. attorney as well as a UK solicitor, living in California, and whose job is management of BT litigation in the U.S.; and (ii) Mr. Peter Ratcliffe, who is a UK solicitor and whose job is global licensing and settlement of litigation with respect to BT's patent portfolio. As BT has explained to Defendants, neither of these attorneys is involved in any competitive business decision-making; moreover, neither attorney is involved in any patent prosecution. Indeed, both men are well known to this Delaware court because both attorneys were actively involved in ADR conferences with Magistrate Judge Thynge during the successful settlement of unrelated prior patent litigation between BT and defendants, Comcast, Cox Communications, and Cable One Inc. D. Del. C.A. No. 11-843-SLR and D. Del. No. 10-658-SLR. If helpful to the Court's determination, BT will provide a declaration from each attorney, confirming that he is not involved in either competitive business decision-making and/or patent prosecution and, also, that his job responsibilities involve management of the litigation and related settlement discussions, if any.

**Defendants' Position:**

Defendants oppose granting BT in-house attorneys access to Defendants' Highly Confidential technical materials over a concern that knowledge gained by such personnel would

become fodder for BT's patent monetization program. The two in-house attorneys that BT identified, Mr. Ratcliffe and Mr. Hobbs, appear to be decision-makers in this program.

Although BT has represented to IAC that Mr. Ratcliffe and Mr. Hobbs have limited roles and responsibilities within the BT organization as a whole and that they do not prosecute patent applications for BT, BT has made no representations that Mr. Ratcliffe and Mr. Hobbs have no role in BT's patent enforcement activities. Defendants know from first-hand experience that both Mssrs. Ratcliffe and Hobbs participate actively in such activities.

BT first initiated contact with Defendants in 2015, working through Mr. Ratcliffe. At the time, BT presented analyses of five patents that IAC and its subsidiaries allegedly infringed: U.S. Patents 6,253,208, 6,240,450, 6,324,266, 6,397,040, and 7,243,105.[1] Defendants evaluated BT's assertions and concluded that those patents either are not infringed, invalid, or both. Defendants communicated their conclusions to BT in 2016 and 2017, in meetings that Mr. Hobbs attended.

BT's monetization program involves claiming entitlement to license fees based not on demonstrated claims of infringement but, instead, on sheer numbers of patents. For example, with respect to IAC, BT presented "heat maps" illustrating the breadth of BT's patent holdings and their alleged relevance to Defendants' commercial activities. BT also provided a list of other patents, without providing any particularized showing that they are infringed, as further justification for a license to BT's patents. The message was simple: IAC should pay license fees notwithstanding a weak case of infringement because BT will use the size of its portfolio to harass IAC with more and more patent assertions. Allowing BT's in-house attorneys to review

---

[1] BT ultimately asserted only three of these patents, the '450 patent, the '040 patent, and the '105 patent, in this suit. This Court then held two of these – the '450 patent and the '040 patent – invalid under 35 U.S.C. § 101. D.I. 61.

the details of Defendants' proprietary technical materials and code would be a significant tool in this process.

The dangers of giving in-house counsel responsible for patent assertion activities access to a defendant's "Highly Confidential" technical materials in litigation is well recognized. *See, e.g., Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, Civil Action No. 15-53-RGA, 2016 WL 2904592, at *5 (D. Del. May 18, 2016) ("Although I presume the good faith of Blackbird's [in-house] counsel, once such confidential information is disclosed, the bell cannot be unrung."); *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort maybe to do so." (internal quotation marks omitted)). In addition, courts recognize that in-house counsel who participate in patent assertion activities should be considered competitive decision makers. S*ee, e.g., PhishMe, Inc. v. Wombat Sec. Techs. Inc*., 2017 WL 4138961, at *3-4 (D. Del. Sept. 8, 2017) ("Unsurprisingly, courts have found that this type of significant, active role in the direction of patent litigation and licensing … weighs in favor of a conclusion that [the PhishMe's in-house counsel] participates in competitive decisionmaking."); *Blackbird Tech LLC,* 2016 WL 2904592, at *2, *4 (in-house counsel were "competitive decisionmakers" where they, *inter alia,* "are essentially the officers and principals of [plaintiff], a business whose main practice is acquiring patents and asserting them in litigation.").

While courts must balance this potential harm against the potential burden and hardship of not allowing a party's in-house attorneys to have unfettered access to an adversary's highly confidential materials, "[w]here [as here] parties are represented by outside counsel, courts have little trouble balancing the harms in protective order disputes, often readily concluding that the

5

outside counsel of a party's choice can adequately represent its interests even if in-house counsel is precluded from viewing confidential information." *Blackbird Tech LLC*, 2016 WL 2904592, at *1 (citing *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.,* 2008 WL 5634214, at *6 (E.D. Tex. Mar. 14, 2008) ("Courts have found time and again that requiring a party to rely on its competent outside counsel does not create an undue or unnecessary burden.") and *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) (same).

Because the potential harm to Defendants of giving BT's in-house counsel access to Defendants' Highly Confidential" technical materials substantially outweighs the potential burden and harm to BT if BT's in-house counsel were denied access to such materials, BT's proposal should not be adopted.

**Issue No. 2:   Sec. 8.1 – Participation in Post-Grant Administrative Proceedings:**

**BT's Position:**

BT has agreed that any person having access to Highly Confidential Information would be barred from participating in any prosecution of any original patent application, and/or continuation, divisional, continuation-in-part, or foreign counterpart thereof.  This is fair because such patent applications have the potential to seek patent claims of (potentially) unlimited scope. But BT contends that its litigation counsel in this case should be able to participate in all phases of any IPR (or other post-grant review) proceeding that defendants may pursue with respect to the patents-in-suit.  IPR proceedings are now a routine part of U.S. patent litigation, a defensive tactic available at the option of the accused infringer.  And claim amendments are now a more routine part IPR proceedings.  *See, e.g.*, *Aqua Prod., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) (en banc).  It is overly-burdensome, inefficient, and wrong to hold that a defendant can elect to shift the issues of district court patent litigation into a forum wherein BT's choice of

6

counsel, its litigation counsel, is handicapped from full participation. *See, e.g.*, *Koninklijke Philips N.V. v. Iguzzini Lighting USA, Ltd.*, 311 F.R.D. 80 (S.D.N.Y. 2015); *PPC Broadband, Inc. v. Times Fiber Communications, Inc.,* N.D.N.Y. No. 13-CV-0460, 2014 WL 85911 (2014). The ground rules of IPR proceedings are already laid out to establish a level playing field, even with respect to possible claim amendments. These rules include the statutory provisions that: (i) the patent owner can only pursue narrowing (not broadening) claim amendments (35 U.S.C. § 316(d)); and (ii) if the patent owner succeeds in salvaging an amended claim, i.e., a *substantively* amended claim, the defendant will enjoy intervening rights with respect to that claim (35 U.S.C. § 318(c)). The court should not tip the scales further in favor of defendants by compromising BT's choice of counsel when defendants elect to pursue IPR; such action would allow defendants to choose a litigation tactic and then alter the balance of activity for that tactic in Defendants favor, further from what Congress had established as a balanced forum.

**Defendants' Position:**

Defendants' objections to granting BT's IPR counsel access to Defendants' technical materials are grounded in the same concern – it would be improper for BT's IPR counsel to develop claim amendments with knowledge of the "Highly Confidential" details of Defendants' systems.

Again, Defendants' pre-suit exchanges with BT demonstrate a serious risk that, if BT can fashion claim amendments that circumvent prior art yet capture Defendants' products, it will do so. Defendants do not object to BT's litigation counsel's participating in post grant review proceedings involving BT's patents, but only so long as BT's litigation counsel who have accessed Defendants' "Highly Confidential" technical materials do not advise or participate in amending claims in those proceedings. But a basic unfairness arises if BT is permitted to amend

7

its claims armed with proprietary knowledge taken from Defendants' Highly Confidential design materials produced in this litigation. BT's refusal to agree to such restriction suggests it intends to do just that should the opportunity arise.

There are numerous decisions in this District prohibiting a plaintiff's trial attorneys who have access to the defendant's confidential information from participating in any way in post-grant review proceedings of the patents in suit. *See, e.g.*, Hearing Tr. at 49:6-51:20, *Intellectual Ventures v. AT&T et al.*, C.A. No. 12-193-LPS (D. Del. June 5, 2014) (adopting defendants' proposal for a prosecution bar that precluded the plaintiff's trial counsel from participating in IPR proceedings of the patents in suit and from conferring with IPR counsel on claim construction and prior art); Hearing Tr. at 36:7-41:4, *Callwave Commc'ns, LLC v. AT&T Mobility, LLC*, No. 12-1701-RGA (D. Del. Apr. 9, 2014) (imposing a prosecution bar that prevented Callwave's litigation counsel from participating to in IPR proceedings because of the risk of inadvertent disclosure for attorneys who both get the confidential information and who participate in the post-grant-type proceedings outweighed the potential harm to Callwave); Hearing Tr. at 31:16-34:4, *ReefEdge Networks, LLC v. Aruba Networks, Inc.*, No. 12-1042-LPS (D. Del. Aug. 23, 2013) (precluding the plaintiff's litigation counsel from representing plaintiff in any PTO proceedings involving the asserted patents and from advising plaintiff's counsel involved those proceeding); *cf. Versata Software, Inc. v. Callidus Software, Inc.,* No. 12-931-SLR, 2014 WL 1117804, at *1–2 (D. Del. June 19, 2014) (permitting plaintiffs to designate trial team attorneys to coordinate with counsel handling post-grant proceedings, but prohibiting such designated trial team attorneys from reviewing defendant's highly confidential source code, from discussing such code with co-counsel or witnesses, and from reading any reports containing information relating to it).

Defendants' proposal strikes a fair balance between the parties' interests. It would permit BT's trial counsel to represent BT in post-grant review proceedings involving the asserted patents – thereby minimizing any burden or hardship on BT – subject to the limitation that trial counsel who access Defendants' "Highly Confidential" materials do not participate in amending patent claims in those proceedings. BT's proposal, in contrast, would allow BT's trial counsel to use their knowledge of Defendants' highly confidential documents in such proceedings to strategically narrow BT's patent claims in an effort to avoid the prior art while still covering aspects of Defendants' services. There is no justification for allowing BT to use Defendants Highly Confidential information in post-grant review proceedings, which would be prejudicial to Defendants. Accordingly, Defendants' proposal should be adopted.

| | |
|---|---|
| POTTER ANDERSON & CORROON LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| By: /s/ *Philip A. Rovner*<br>Philip A. Rovner (#3215)<br>Jonathan A. Choa (#5319)<br>Hercules Plaza<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>(302) 984-6000<br>provner@potteranderson.com<br>jchoa@potteranderson.com | By: /s/ *Jack B. Blumenfeld*<br>Jack B. Blumenfeld (#1014)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@mnat.com |
| Of Counsel:<br><br>Daniel A. Boehnen<br>Grantland G. Drutchas<br>Jeffrey P. Armstrong<br>McDonnell Boehnen Hulbert &<br>    Berghoff LLP<br>300 South Wacker Drive<br>Chicago, IL 60606<br>(312) 913-0001<br><br>*Attorneys for Plaintiff* | Of Counsel:<br><br>Robert L. Hails<br>T. Cy Walker<br>Baker & Hostetler LLP<br>Washington Square – Suite 1100<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5403<br>(202) 861-1500<br><br>*Attorneys for Defendants* |