IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|   |   |   |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. 18-366-WCB |
| v. | ) ) | |
| IAC/INTERACTIVECORP, MATCH GROUP, INC., MATCH GROUP, LLC, and VIMEO, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

### Declaration of Neil Hobbs, Esq.

I, Neil Hobbs, declare as follows:

    A.    I am currently employed as the Head of Litigation & Employment for the Americas, BT Legal. I am employed by BT Americas, Inc. a wholly owned subsidiary of British Telecommunications plc ("BT plc"). In that role, I advise both BT Americas, Inc. and BT plc in connection with U.S. litigations.

    B.    I am admitted to the practice of law both in the U.S., as an attorney in the States of California and Illinois, and in the U.K., as a solicitor.

    C.    As part of my role at BT, I am expected to perform a similar role to that of outside counsel. This includes, among other things, advising and supporting BT (and its outside counsel) in U.S. litigations, including reviewing all briefs, assessing the parties' respective positions, and making informed settlement recommendations.

    D.    I understand that, as part of an exercise to determine whether I should have access to Defendants' Highly Confidential materials in this litigation, I have been asked to respond to a number of questions posed by Defendants and revised by the Court. This declaration sets forth my responses below.

    E.    The current proposed Protective Order has two categories of designations for "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" information – one that covers any "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be

avoided by less restrictive means" (§ 2.8) and one that covers only "source code," that is, "computer instructions and data definitions expressed in a form suitable for input to an assembler or compiler, along with associated comments found within the source code files" (§§ 2.9 and 2.18).

   F.  I believe that it is worth noting at the outset that I do not intend to review any source code in this case, and thus do not require access for any source code material under §§ 2.9 and 2.18 of the proposed Protective Order.

   G.  Further, counsel for Defendants in this litigation have represented that they will not mark general confidential information or financial information under the "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" designations. Teleconference Transcript (March 6, 2019), p. 24 ("Just to be clear on one other point, Your Honor, we are not trying to deny their in-house counsel access to general confidential information or even financial information. We're really just wanting to restrict their access to the highly confidential technical details of the way our products and systems operate.") Without knowing in advance the extent to which Defendants will comply with this representation, or what Defendants will seek to designate as "highly confidential technical details of the way our products and systems operate," I do not know in advance whether I will need access to such information under § 2.8 of the proposed Protective Order, and will rely on my outside counsel to assist me with that decision once they have reviewed the IAC Defendants' productions of specific documents.

   H.  Nevertheless, I hereby confirm that if (and when) at any future point I choose to review any materials designated "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," I will not thereafter participate in any identification, selection or infringement analysis of any additional patents for assertion against the IAC Defendants, whether from third parties or already in BT's possession.

  **1. Name, title, employer, and scope of responsibilities of Messrs. Hobbs and Ratcliffe;**

   A.  As noted above, my name is Neil Hobbs, and I am the Head of Litigation & Employment for the Americas, BT Legal. I am employed by BT Americas, Inc. a wholly owned subsidiary of BT plc.

   B.  My main responsibility is to manage the conduct and effective resolution of all contentious commercial and employment matters in North, South and Central America. I actively support BT Legal in the provision of litigation services to its internal customers as necessary. I advise BT companies in the region on legal disputes and litigation issues relevant to their business activities (including identifying issues on which advice is needed).

   C.  I lead and manage a small team of lawyers or professionals supporting complex cases/issues or those with a sensitive or strategic nature.

2. **Name, title, employer, and scope of responsibilities of each person to whom Messrs. Hobbs and Ratcliffe reports;**

    A.    In my position as the Head of Litigation & Employment for the Americas, BT Legal, I report to Richard Nohe, the general counsel for the Americas. He is based in the BT Americas' headquarters in Dallas, TX.

    B.    I also have an unofficial "dotted line" reporting obligation to Michael Isaacs, Director of Litigation, BT plc who is based in BT Centre in London, England.

3. **Name, title, employer, and scope of responsibilities of each person who reports to Messrs. Hobbs and/or Ratcliffe or whose activities Messrs. Hobbs and/or Ratcliffe oversees, whose responsibilities fall within the scope of responsibilities identified in items 6–10 below;**

    A.    None. I currently have only two direct reports (based in New York, NY and Sao Paulo, Brazil), both of whom perform employment litigation-related functions. Neither of these individuals have responsibilities which fall within the scope of responsibilities identified in items 6–10 below.

4. **Name, makeup, and scope of responsibilities of any of BT's boards, committees, associations and/or other business groups that Messrs. Hobbs and/or Ratcliffe report or provide advice to, or are members of or participants in, the responsibilities of which fall within the scope of responsibilities identified in items 6–10 below;**

    A.    With respect to any BT boards, committees, etc. having the responsibilities identified in items 6–10 below, I advise and support the BT Intellectual Property Rights Licensing team headed by Nigel Lecky, Intellectual Property Licensing Director, on its patent enforcement, assertion, and litigation activity.

    B.    My role with respect to item 4(A) above includes evaluating the legal risks associated with U.S. litigation against target companies for BT's licensing and/or enforcement programs but does not include identifying those targets nor the identification or evaluation of the patents to acquire, assert, or license. I am not involved in identifying which specific patents are to be asserted against specific targets.

5. **The name, title, and employer of other BT personnel who work or collaborate with Messrs. Hobbs and/or Ratcliffe and whose responsibilities fall within the scope of responsibilities identified in items 6–10 below.**

    A.    I work or collaborate with the following members of the BT Intellectual Property Rights Licensing Team, a division of BT plc:

        Lecky, NW Mr (Nigel) (Technology, TUC)
        BT Plc Employee
        Intellectual Property Licensing Director

        McLaughlin, KJ Mr (Kevin) (Technology, TUC)
        BT Plc Employee

Senior Specialist, Research, IPR Licensing

Tateson, J Dr (Jane) (Technology, TUC)
BT Plc Employee
Senior Manager, Research, IPR Case Development

Bappu, B Mr (Benjamin) (Technology, TUC)
BT plc Employee
Patent Licensing Case Development Specialist

Nash, R Mr (Roger)   (Technology, TUH)
BT Legal (Patent Prosecutions)
BT Plc Employee
Head of Patents
(Mr. Nash has several patent attorneys in his Patents Team who report into him as well.)

    B.    In contrast to my position, this IPR team is exclusively responsible for identifying opportunities for BT's patent enforcement, licensing, and acquisitions, including, identifying or evaluating target companies for BT's licensing and/or enforcement programs (6(a)); identifying or evaluating patents to assert or license (6(b)); and (occasionally) identifying or evaluating BT's acquisition of companies and/or patent portfolios (6(c)).

**With respect to the scope of responsibilities, the declarations should address the extent of involvement in each of the following:**

6. **Participating or advising with respect to BT's patent enforcement, licensing, and acquisitions, including:**
   a. **Identifying or evaluating target companies for BT's licensing and/or enforcement programs;**
   b. **Identifying or evaluating patents to assert or license;**
   c. **Identifying or evaluating BT's acquisition of companies and/or patent portfolios;**

    A.    In my role as an adviser to the IPR team, as I noted above, I am expected to perform the same types of functions as outside counsel would, including evaluating the legal risks associated with U.S. litigation against target companies for BT's licensing and/or enforcement programs. But my responsibilities do not include identifying those targets (6(a)).

    B.    Further, neither I nor any member of my team are involved in identifying or evaluating patents to assert or license (6(b)) or identifying or evaluating BT's acquisition of companies and/or patent portfolios (6(c)).

7. **Identifying or evaluating technological areas for BT's patent program;**

    A.   Neither I nor any members of my team are involved in any of these activities.

8. **Participating or advising with respect to BT's original patent prosecution activities;**

    A.   Neither I nor any members of my team are involved in any of these activities.

9. **Participating or advising with respect to post grant proceedings involving BT patents; and**

    A.   Neither I nor any members of my team are normally involved these types of activities. If, however, the IAC Defendants were to file one or more *inter partes reviews* ("IPRs") against any patents related to this litigation, I would review the filings, consult with outside counsel, and advise my clients with respect to such IPRs as an adjunct to my role in connection with this litigation.

10. **Participating or advising with respect to BT's sales, marketing, pricing, or product development efforts.**

    A.   Neither I nor any members of my team are involved in any of these activities.

I declare under penalty of perjury that the foregoing is true and correct.

Neil Hobbs, Esq.