**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 18-366-WCB |
| IAC/INTERACTIVECORP, MATCH | § | |
| GROUP, INC., MATCH GROUP, LLC, and | § | |
| VIMEO, INC., | § | |
| | § | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is <u>The Parties' Joint Submission Regarding Proposed Protective Order</u>. Dkt. No. 69. In the submission, the parties explain that they have been unable to reach agreement on all the terms of the proposed protective order in this case and that they require the Court's intervention to resolve the two remaining issues between them.

In the joint submission, the parties each made brief factual presentations and legal arguments with respect to the two issues. Following receipt of the submission, the Court conducted a telephonic conference on March 6, 2019, and directed that plaintiff British Telecommunications PLC ("British Telecom") submit declarations addressing certain points raised during the conference. At the conclusion of the conference, both sides stated that they did not wish to offer additional evidence bearing on the protective order issues. Pursuant to the Court's direction, British Telecom submitted a declaration, to which it added further argument. *See* Dkt. No. 77. The defendants filed a response to that submission. Dkt. No. 79. Based on the parties' written presentations and the arguments made by the parties during the telephonic conference, the Court makes the following rulings on the two issues in dispute.

**1. Access to Highly Confidential Information**

**a. Factual Background**

The first issue that the parties presented in their joint submission was whether two in-house attorneys for British Telecom should be allowed access to the defendants' information designated as "highly confidential—outside attorneys' eyes only" (section 2.8 of the proposed protective order) and the defendants' information designated as "highly confidential—attorneys' eyes only—source code" (section 2.9 of the proposed protective order). In its supplemental submission, British Telecom withdrew its request with respect to one of the two in-house attorneys and limited its request as to the remaining in-house attorney to the materials covered by section 2.8 of the proposed protective order.

British Telecom argues that its in-house attorney will be working on the litigation and needs to have access to the discovery information in the case in order to represent his client adequately. The defendants, on the other hand, argue that the in-house attorney is regularly engaged in patent enforcement on behalf of British Telecom and that his access to the defendants' highly confidential information could result in prejudice to the defendants in the event of any future patent disputes between the parties.

The facts that bear on this issue, as summarized by the parties, are as follows: The in-house lawyer in question is Neil Hobbs, who is responsible for managing litigation for British Telecom in the United States. British Telecom takes the position that Mr. Hobbs is not involved in any competitive business decision-making for the company and is not involved in patent prosecution. His responsibilities, according to British Telecom, "involve management of the litigation and related settlement discussions, if any." Dkt. No. 69, at 3. In his declaration, Mr. Hobbs states that as part of his responsibilities he is expected "to perform a similar role to that of

outside counsel," including "reviewing all briefs, assessing the parties' respective positions, and making informed settlement recommendations." Dkt. No. 77-1, at 1.

The defendants argue that although British Telecom represents that Mr. Hobbs has limited roles and responsibilities within the British Telecom organization as a whole and that he does not prosecute patents, he clearly has a role in British Telecom's patent enforcement program. Based on their experience prior to the filing of this action, the defendants assert that Mr. Hobbs has participated actively in patent enforcement and licensing activities for British Telecom. During pre-filing meetings attended by Mr. Hobbs, according to the defendants, British Telecom presented not only the patents that were ultimately asserted in this action, but also numerous other patents that British Telecom represented were relevant to the defendants' commercial activities. The message from British Telecom, the defendants argue, was that the defendants "should pay license fees notwithstanding a weak case of infringement because [British Telecom] will use the size of its portfolio to harass IAC with more and more patent assertions." Dkt. No. 69, at 4. The defendants contend that allowing Mr. Hobbs to have access to the details of the defendants' proprietary technical materials and source code "would be a significant tool in this process." *Id.* at 5.

British Telecom represents that Mr. Hobbs has no responsibilities within the organization outside of patent enforcement, assertion, and litigation activity, that he does not engage in patent prosecution, and that his portfolio is limited to the management of patent litigation and settlement negotiations. Dkt. No. 77-1, at 3–4. Although the defendants point out that Mr. Hobbs acknowledged working or collaborating with members of the British Telecom Intellectual Property Rights Licensing Team, which is responsible for "identifying opportunities for [British Telecom's] patent enforcement, licensing, and acquisitions," Dkt. No. 77-1, at 4, he stated in his declaration

that his role in advising that team is limited to "evaluating the legal risks associated with U.S. litigation against target companies for [British Telecom's] licensing and/or enforcement programs but does not include identifying those targets nor the identification or evaluation of the patents to acquire, assert, or license," and that he is "not involved in identifying which specific patents are to be asserted against specific targets." *Id.* at 3.

In its supplemental submission, British Telecom agreed that Mr. Hobbs would not seek or obtain access to the defendants' source code referred to in section 2.9 of the Proposed Protective Order, Dkt. No. 69-1, which is entitled "Highly Confidential—Outside Attorneys' Eyes Only— Source Code." British Telecom also agreed that if Mr. Hobbs actually reviews any of the material referred to in section 2.8 of the Proposed Protective Order, which is entitled "Highly Confidential—Attorneys' Eyes Only," he would "thereafter be barred, going forward, from participating in any way with any consideration of any additional [British Telecom] patents for assertion against these Defendants." Dkt. No. 77, at 3.

The Court accepts the representations in the parties' submissions as the factual basis for the Court's rulings.

### b. Analysis

The parties do not disagree about the legal principles that apply to whether Mr. Hobbs should be allowed access to the defendants' highly confidential information produced during discovery. As a general matter, a party has a "strong interest in choosing its own counsel, particularly in the complex and technical realm of patent litigation." *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 185 (D. Del. 2010); *Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd.*, 311 F.R.D. 80, 87 (S.D.N.Y. 2015). An attorney's representation, moreover, generally comes with a right of access to all of the materials in the case, including confidential materials produced by the

other side in discovery. That principle, however, must give way under various circumstances, such as when there is an unacceptably high risk of harm to a party from giving a particular individual access to that party's confidential materials.

Federal Circuit cases set out the basic rules that apply here. In *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), the court ruled that, as a general matter, a lawyer's access to confidential materials should not be determined based simply on whether the lawyer in question is in-house or retained. *Id.* at 1468. In particular cases, however, such as "where in-house counsel are involved in competitive decisionmaking," the court noted that "it may well be that a party seeking access should be forced to retain outside counsel or be denied the access recognized as needed." *Id.* The court explained that the term "competitive decisionmaking" is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor," and that a protective order could enforce appropriate limitations on access to an opposing party's confidential materials. *Id.* at 1467, 1468 n.3; *see also Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991).

The leading case from the Federal Circuit dealing with such protective orders is *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1375 (Fed. Cir. 2010). *Deutsche Bank* involved a request for a protective order that would prohibit plaintiff's trial counsel, who were given access to the defendant's confidential information, from participating in certain related patent

prosecutions. In that setting, the court held that the party seeking the protective order bore the burden of showing good cause for its issuance. *Id.* at 1378.

The *Deutsche Bank* court noted that protective orders normally provide that designated confidential information may be used only for purposes of the current litigation, but that "there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *Id.* For some attorneys, the court explained, "competitive decisionmaking may be a regular part of their representation, and the opportunity to control the content of patent applications and the direction and scope of protection sought in those applications may be significant. The risk of inadvertent disclosure of competitive information learned during litigation is therefore much greater for such attorneys." *Id.* at 1380. In fashioning a protective order, the court stated, a balance must be struck between the perceived risk of inadvertent disclosure or competitive use of the confidential information and "the potential harm to the opposing party from restrictions on that party's right to have the benefit of counsel of its choice." *Id.* In making that determination, the court added, the district court "has broad discretion to decide what degree of protection is required." *Id.*

The *Deutsche Bank* court explained that when a party seeks to bar opposing counsel who is afforded access to the party's confidential information from engaging in certain activities, the party must show that the bar is reasonable in light of the risk of improper disclosure or use of that information. In the case of a bar on litigation counsel's future activity in prosecuting patents on behalf of the same client, the court held that a party seeking an exemption from such a patent prosecution bar must show, on a counsel-by-counsel basis, (1) that counsel's representation of the client in matters before the PTO is not likely to implicate competitive decision-making related to

the subject matter of the litigation, and (2) that the potential burden flowing from restrictions on the party's choice of litigation counsel and prosecution counsel outweighs the potential injury to the opposing party caused by the inadvertent use of confidential material. *Id.* at 1381.

The principles of *Deutsche Bank* have been applied not only in cases involving wholesale patent prosecution bars, but also in cases involving more limited restrictions on the activities of litigation attorneys or the access of particular attorneys to the opposing party's confidential information. Both parties in this case treat the principles of *U.S. Steel Corp.* and *Deutsche Bank* as governing the two disputes over the protective order in this case.

In determining whether Mr. Hobbs should be allowed access to the defendants' highly confidential information, the first step is to determine whether Mr. Hobbs occupies a position of competitive decision-making with British Telecom, which would increase the risk of inadvertent disclosure and improper use of the defendants' confidential information. The Court must then balance that risk against the prejudice to British Telecom that would result from prohibiting Mr. Hobbs from having access to the defendants' confidential materials.

In support of their contention that Mr. Hobbs is engaged in competitive decision-making, the defendants rely on two decisions from this court: *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, Civil Action Nos. 15-53 *et al.*, 2016 WL 2904592 (D. Del. May 18, 2016), and *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, Civil Action No. 16-403, 2017 WL 4138961 (D. Del. Sept. 18, 2017). In both of those cases, the court ruled that in-house lawyers with patent enforcement and licensing responsibilities were engaged in competitive decision-making and that

a protective order limiting their access to the opposing party's confidential information was appropriate.

In *Blackbird*, three Blackbird employees sought access to the defendants' highly confidential information produced in discovery. One of them, Sean Thompson, was the senior litigation counsel for Blackbird and the lead counsel in the cases before the court. The court noted that Mr. Thompson was responsible for handling all aspects of Blackbird's patent litigation and was involved in patent licensing in the context of litigation, although he was not involved in patent acquisition or prosecution. *Blackbird*, 2016 WL 2904592, at *3.

The court found that all three Blackbird employees, including Mr. Thompson, were "competitive decisionmakers" and that the disclosure of the defendants' highly confidential material to them presented "a concrete particularized risk of inadvertent disclosure and misuse." *Id.* at *5. The court concluded, however, that "the only competitive harm Blackbird realistically poses to any of the Defendants arises out of litigation," and that "if the threat of future litigation is taken off the table, there is significantly less likelihood of harm to Defendants." *Id.*

In balancing the interests of the patent holder against the accused infringer, the *Blackbird* court noted that when parties are represented by both in-house and outside counsel, "courts have little trouble balancing the harms in protective order disputes, often readily concluding that the outside counsel of a party's choice can adequately represent its interests even if in-house counsel is precluded from viewing confidential information." *Id.* (citing *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*, Civil Action No. 6:07-cv-346, 2008 WL 5634214, at *8 (E.D. Tex. Mar. 14, 2008), and *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000)). The court concluded that it could properly balance the competing interests of the parties by imposing a prosecution bar against the Blackbird officers and requiring Blackbird to execute a covenant not

to sue the defendants on any after-acquired patents in the industry at issue in the case. Subject to those restrictions, the court ruled that Blackbird's in-house counsel could have access to the defendants' confidential materials.

In the *PhishMe* case, the court held that an in-house attorney who had a significant, active role in the direction of patent litigation and licensing would be barred from having access to highly confidential materials of the opposing party. In making that determination, the court considered a number of factors, including the small size of the plaintiff company, the fact that the attorney participated in patent prosecution, and the close relationship between the attorney and the company decisionmakers. The court further inquired whether denying access to in-house counsel would impede the plaintiff's ability to litigate through outside counsel, and concluded that although the plaintiff would suffer some harm from the in-house counsel's not having access to the confidential materials at issue, that harm did not overcome the serious risk of inadvertent disclosure or competitive misuse of the opposing party's confidential information. 2017 WL 4138961, at *9.

In other cases, district courts have permitted in-house counsel to have access to highly confidential information, where the circumstances have made inadvertent disclosure unlikely and the need for in-house counsel to have access to confidential information was great. For example, in *Affymetrix, Inc. v. Illumina, Inc.*, No. Civ. A 04-901, 2005 WL 1801683 (D. Del. July 28, 2005), the court found that giving plaintiff Affymetrix's in-house counsel access to confidential material was critical, as Affymetrix intended to use its in-house litigation unit as trial counsel in the case. The court further found that Affymetrix's in-house litigation unit was not involved in management or competitive decision-making for the company. *Id.* at *2. By contrast, the court found that defendant Illumina's in-house counsel had "a role that is linked to competitive decision-making," in that she was "part of Illumina's management team and [was] involved with settling patent

litigation and licensing." Based on her role at Illumina, which the court characterized as "cross[ing] over into the competitive decision-making at Illumina," the court denied Illumina's in-house attorney access to Affymetrix's confidential materials. *Id.*

Similarly, in *R.R. Donnelly & Sons Co. v. Quark, Inc.*, No. CivA 06-32, 2007 WL 61885 (D. Del. Jan. 4, 2007), the court allowed the plaintiff's Chief Patent Counsel to have access to the defendant's "attorneys' eyes only" confidential information on the grounds that (1) the attorney's responsibilities were limited to supervising decision-making related to the company's intellectual property portfolio and its enforcement, and (2) the attorney did not report directly to any business person with direct responsibility for competitive decision-making. By contrast, the court denied access to the plaintiff's President of Corporate Strategic Initiatives, whose responsibilities included advising the plaintiff "on company-wide business initiatives and opportunities for growth," and serving a supervisory role in the company's "research and development and applications engineering and other strategic initiatives." In light of that individual's routine involvement in "strategic and competitive decision-making," the court concluded that "the reasons offered for access are insufficient to overcome the risk of inadvertent disclosure inherent in permitting access." *Id.* at *2.

Other courts have similarly found that in-house counsel whose roles were limited to litigation were not engaged in competitive decision-making. The more their roles have been limited to the conduct and settling of litigation, and the less they have been engaged in regular direct contact with the company's decisionmakers, the more likely the courts have been to find that the attorneys could have access to confidential information without undue risk of inadvertent disclosure. *See, e.g.*, *Koninklijke Philips N.V. v. Amerlux, LLC*, 167 F. Supp. 3d 270, 272–73 (D. Mass. 2016); *Sanofi-Aventis U.S. LLC v. Breckenridge Pharm., Inc.*, Civil Action Nos. 15-289 *et*

*al.*, 2016 WL 308795, at \*4–5 (D.N.J. Jan. 25, 2016); *Mad Catz Interactive, Inc. v. Razor USA, Ltd.*, No. 13CV2371, 2014 WL 4161713, at \*3–6 (S.D. Cal. Aug. 19, 2014); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 274 F.R.D. 576, 580–84 (E.D. Va. 2010); *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 763–66 (N.D. Ill. 2010); *Merial Ltd. v. Virbac SA*, Civil Action No. 4:10-cv-181, 2010 WL 11534378, at \*2–7 (N.D. Tex. June 10, 2010); *Gen-Probe Inc. v. Becton, Dickinson & Co.*, 267 F.R.D. 679, 685–86 (S.D. Cal. 2010); *Intervet, Inc. v. Merial Ltd.*, 241 F.R.D. 55, 56–58 (D.D.C. 2007); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, Nos. 04 C 5312 *et al.*, 2006 WL 1994541, at \*2 (N.D. Ill. July 13, 2006).

In this case, in addition to the limited scope of Mr. Hobbs's responsibilities, British Telecom has agreed (1) that Mr. Hobbs will not review source code materials covered by section 2.9 of the proposed protective order, and (2) that if Mr. Hobbs reviews any of the defendants' highly confidential information governed by section 2.8 of the proposed protective order, he "will not thereafter participate in any identification, selection or infringement analysis of any additional patents for potential assertion against Defendants, whether from third parties or already in [British Telecom's] possession." Dkt. No. 77, at 3. Those two representations significantly reduce the risk of prejudicial inadvertent disclosure of the defendants' confidential information. The first removes the most sensitive materials (the defendants' source code) from Mr. Hobbs's access, and the second means that in the future Mr. Hobbs will not be in the position of participating in a decision whether to assert new patent claims against the defendants while having knowledge of the defendants' confidential information that could affect his decision-making.[1]

During the March 6, 2019, telephonic conference, the Court asked British Telecom whether it would agree to a covenant like the covenant that the court required in the *Blackbird* case. That

---

[1] The defendants argue (Dkt. No. 79 at 3) that British Telecom's proposed restriction on

covenant barred the plaintiff from suing any of the defendants for infringement of patents involving the subject matter of the patents-in-suit that were acquired during the time between the entry of the protective order and one year after the conclusion of the litigation. British Telecom has not agreed to such a covenant. The Court does not regard British Telecom's unwillingness to agree to such a covenant to be fatal to its position, however, particularly in light of the other limitations that British Telecom has proposed on Mr. Hobbs's activities in the event he is granted access to information designated as highly confidential under section 2.8 of the proposed protective order.

The *Blackbird* case, in which such a covenant was required, was unusual in that the plaintiff was a very small company that acquired patents and used its own in-house attorneys to conduct the litigation. In this case, British Telecom does not follow that business model. It is a very large and diversified company; Mr. Hobbs's responsibilities are limited to patent enforcement, with no role in patent prosecution or acquisition; and British Telecom has agreed to conditions surrounding Mr. Hobbs's access to the defendants' confidential information that substantially reduce the risk

Mr. Hobbs's activities has two flaws: (1) it "would allow Mr. Hobbs to continue to consider patents for assertion against Defendants"; and (2) it "implicitly admits that Mr. Hobbs's responsibilities include consideration of additional patents that BT can assert against Defendants." As to the first point, the Court does not agree with the defendants' interpretation of the restriction proposed by British Telecom. The language of the proposed restriction would bar Mr. Hobbs, following his receipt of any materials designated as "highly confidential—attorneys' eyes only," from participating in the identification, selection, or infringement analysis of any additional patents for potential assertion against the defendants. That language would explicitly prohibit Mr. Hobbs from being involved in the consideration of patents other than those at issue in this case for possible assertion against the defendants. As to the second point, Mr. Hobbs's declaration states that he evaluates the legal risks associated with U.S. litigation against target companies for British Telecom's licensing and enforcement programs, but that his responsibilities do not include "identifying those targets nor the identification or evaluation of the patents to acquire, assert, or license." Dkt. No. 77-1, at 3. The Court does not interpret the proposed restriction on Mr. Hobbs's activities going forward as implying that he has engaged in identification, selection, or infringement analysis of patents for potential assertion against target companies in the past. Instead, his declaration states the opposite.

of inadvertent disclosure or misuse of that information. The combination of Mr. Hobbs's limited role and the proposed limitations on his future activities, should he obtain access to the defendants' confidential information in this case, distinguishes this case from *Blackbird*.

Nor is this case similar to the *PhishMe* case. Unlike the plaintiff in *PhishMe*, British Telecom is a large company. Unlike the attorney in *PhishMe*, Mr. Hobbs does not engage in patent prosecution. And, as indicated in Mr. Hobbs's declaration, a different team at British Telecom is responsible for "identifying opportunities for [British Telecom's] patent enforcement, licensing, and acquisitions, including, identifying or evaluating target companies for [British Telecom's] licensing and/or enforcement programs . . . identifying or evaluating patents to assert to license . . . and (occasionally) identifying or evaluating [British Telecom's] acquisition of companies and/or patent portfolios." Dkt. No. 77-1, at 4.

In light of the evidence before the Court, it appears that Mr. Hobbs's status is more like that of the litigation unit in *Affymetrix* and the Chief Patent Counsel in *R.R. Donnelly* than it is like the attorneys in *Blackbird* and *PhishMe* or Illumina's in-house counsel in *Affymetrix* and the President of Corporate Strategic Initiatives in *R.R. Donnelly*. In both *Affymetrix* and *R.R. Donnelly*, the courts found that the attorneys whose responsibilities were limited to litigation did not have a role in the management or competitive decision-making of the company, and that the risk of inadvertent disclosure was outweighed by the party's need for the attorneys in question to have access to the materials at issue in the litigation in order to represent their client effectively.

Inasmuch as Mr. Hobbs's role is limited to supervising litigation and evaluating the legal risks associated with U.S. litigation, the Court finds that Mr. Hobbs is not significantly involved in competitive decision-making for British Telecom. For that reason, the Court finds that the risk

of inadvertent disclosure and improper use of the defendants' confidential information resulting from his access to that information is low.

As for British Telecom's need for Mr. Hobbs to have access to the defendants' confidential information, the Court finds that Mr. Hobbs's role in supervising patent litigation and settlement makes it important for him to have broad access to the litigation materials in order to manage the litigation and make strategic decisions in the course of the case. *See Avery Dennison Corp. v. Minn. Mining & Mfg. Co.*, No. Civ. A 01-125, 2001 WL 1339402, at *2 (D. Del. Oct. 26, 2001); *Boehringer Ingelheim Pharms., Inc. v. Hercon Labs. Corp.*, Civ. A. No. 89-484, 1990 WL 160666, at *2 (D. Del. Oct. 12, 1990).

The Court therefore concludes that the balance of interests bearing on Mr. Hobbs's access to the defendants' confidential information (but not their source code) should be struck in favor of allowing Mr. Hobbs to have access to that material. His access will be subject to the representation by British Telecom that, if any of the defendants' materials designated as highly confidential is disclosed to him, he will not participate in the future in the consideration or selection of patents to assert against any of the defendants. The parties are directed to submit a revised version of section 7.3 of the proposed protective order that incorporates the Court's ruling on this issue.

## 2. Participation in Post-Grant Administrative Proceedings

### a. Factual Background

The second issue in dispute is whether the protective order should bar any of British Telecom's attorneys who obtain access to the defendants' confidential materials from drafting or amending claims in any post-grant review of the patents in suit. British Telecom has agreed that any person having access to the defendants' highly confidential information will be barred "from participating in any prosecution of any original patent application, and/or continuation, divisional,

14

continuation-in-part, or foreign counterpart" of such an application.  Dkt. No. 69, at 6.  However, British Telecom contends that its litigation counsel in this case should be able to participate in all phases of any inter partes review or other post-grant review proceeding that the defendants may pursue with respect to the patents-in-suit.  For their part, the defendants do not object to British Telecom's litigation counsel participating in post-grant administrative proceedings, including inter partes review, so long as British Telecom's litigation counsel who have had access to the defendants' highly confidential information do not participate in any way in drafting or amending claims in those proceedings.

### b.  Analysis

The defendants contend that to permit litigation counsel in possession of highly confidential information to participate in amending claims would allow them to use that confidential information to amend the patents so as to avoid prior art but still capture the defendants' products.  Such a result, the defendants contend, would constitute an improper use of the defendants' confidential materials.  The defendants further assert that the burden on British Telecom of having to assign different counsel to the claim drafting or amendment process, if any, in the post-grant review proceedings would be minimal.

The Court recognizes that limiting the participation of litigation counsel in any way in any post-grant proceedings that may arise would impose an inconvenience on British Telecom. However, the Court is not persuaded that the inconvenience would rise to the level of severe prejudice.  The burden on British Telecom would be mitigated to a great extent by (1) the absence of any restriction on litigation counsel participating in the post-grant review proceedings, except for the drafting and amendment of claims, and (2) the fact that any counsel, including litigation

counsel, who have not had access to the defendants' confidential materials can participate in drafting or amending claims, if that proves necessary, in the post-grant proceedings.

This issue has arisen in many cases, and courts have frequently fashioned protective orders that prohibit the participation by litigation counsel in any post-grant review proceedings, in any capacity. The defendants' proposal is much less restrictive, as it would permit British Telecom's litigation counsel who have had access to confidential materials to participate in post-grant review proceedings, subject only to the proviso that they would not be allowed to participate in drafting and amending claims.

Courts have noted that post-grant proceedings do not present the same risk of competitive misuse as does involvement in patent prosecution, because post-grant proceedings all involve assessing the patentability of existing claims, and only narrowing claim amendments are permitted in such proceedings. *See Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, Civil Action No. 15-691, 2016 WL 447794, at *2 (D. Del. Feb. 4, 2016) ("the magnitude of th[e] risk [of prejudicial disclosure] is far less pronounced with respect to an IPR proceeding (in which TSST-Ks patent claims may only be narrowed, not enlarged) as compared to the prosecution of a new patent before the PTO"); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, Civil Action Nos. 14-1006 *et al.*, 2015 WL 7257915, at *2 (D. Del. Nov. 17, 2015) (same); *Xerox Corp. v. Google, Inc.*, 270 F.R.D. at 184 (same). There is therefore less risk that confidential information obtained in litigation will be competitively used to draft claims that read on the defendants' products.

Other courts have pointed out, however, that even though claims may only be narrowed in post-grant proceedings, the risk associated with the improper use of confidential information is that the patent prosecutors can arrange to "strategic[ally] narrow" claims to avoid prior art while

still capturing the defendants' products.  In that setting, the courts have noted that there is a potentially significant risk of prejudice from the plaintiff's attorneys' exposure to the defendants' confidential materials.  *See Boston Sci. Corp. v. Cook Grp. Inc.*, Civil Action No. 15-980, 2017 WL 547903, at *2 (D. Del. Feb. 10, 2017) ("even if BSC's counsel is formally excluded from the claim drafting or amendment process, there remains a risk of BSC (even inadvertently) strategically narrowing the scope of its claims based on information that it learns (about currently accused products, or products under development) from Cook's confidential information"); *Trans Video Elecs. Ltd. v. Time Warner Cable Inc.*, Nos. 12-1740 *et al.*, Dkt. No. 38 (D. Del. Jan. 22, 2015) ("the bar should apply to reexaminations etc. as Plaintiff could otherwise pursue narrowing amendments of claims with confidential knowledge as to the impact such amendment would have on its allegations of infringement"); *M/A-COM Tech. Sols. Holdings, Inc. v. Laird Techs., Inc.*, Civil Action No. 14-181, Dkt. No. 166 (D. Del. July 31, 2014) ("Good cause for the requested protection exists, at least to deal with the risk of the patentee strategically narrowing the scope of its claims based on (even inadvertently) information it learns from Laird's highly confidential information."); *Intellectual Ventures I LLC v. AT&T Mobility, LLC*, Civil Action No. 12-193 *et al.*, Dkt. No. 255, Tr. 49 (D. Del. June 13, 2014) ("I still do have this concern about the risk of strategic narrowing amendments, even in the context of a post-grant review here in IPR, and I just think that there is—even under the circumstances here—there is a risk that those conversations that litigation counsel wish to have the freedom to have with IPR counsel could be informed by confidential information of defendants that litigation counsel have had access to, which could

ultimately lead to that type of strategic narrowing that I am concerned with. And so I think there is that risk, and I think that warrants the protection the defendants have proposed.").

Based on that analysis, courts in this district have frequently resolved disputes over protective orders by prohibiting litigation counsel who have had access to the opposing party's confidential information from participating in any way in post-grant proceedings regarding the same patents that were at issue in the litigation. *See, e.g.*, *Boston Sci. Corp.*, 2017 WL 547903, at *3; *Inventor Holdings, LLC v. Wal-Mart Stores Inc.*, Civil Action Nos. 1:13-cv-96 *et al.*, 2014 WL 4370320, at *2–3 (D. Del. Aug. 27, 2014) (dealing with source code); *Callwave Commc'ns, LLC v. AT&T Mobility, LLC*, Civil Action Nos. 12-1701 *et al.*, Tr. 38–40 (D. Del. Apr. 9, 2014); *AIP Acquisition LLC v. Level 3 Commc'ns LLC*, Civil Action Nos. 12-617 *et al.*, Dkt. No. 48, Tr. 11 (D. Del. Oct. 15, 2013); *ReefEdge Networks, LLC v. Aruba Networks, Inc.*, Civil Action Nos. 12-1042 *et al.*, Dkt. No. 49, Tr. 33 (D. Del. Aug. 23, 2013); *Clouding IP, LLC v. Google Inc.*, Civil Action Nos. 12-639 *et al.*, Dkt. No. 44, Tr. 30–33 (D. Del. Mar. 12, 2013); *Bear Creek Techs. Inc. v. Verizon Servs. Corp.*, Civil Action No. 12-cv-600, 2012 WL 3190762, at *2 n.6 (D. Del. July 25, 2012); *Edwards Lifesciences AG v. CoreValve, Inc.*, C.A. No. 08-91, 2011 WL 10565589, at *1 (D. Del. Feb. 23, 2011).

Courts in other districts have ruled similarly. *See, e.g.*, *Found. Med., Inc. v. Guardant Health, Inc.*, 2:16-cv-523, Dkt. No. 98, at 1 (E.D. Tex. June 5, 2017); *Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-cv-1677, 2014 WL 5804334, at *6 (W.D. Wash. July 7, 2014); *buySAFE, Inc. v. Google, Inc.*, Civil Action No. 3:13-cv-781, 2014 WL 2468553, at *3 (E.D. Va.

June 2, 2014); *Datatrak Int'l, Inc. v. Medidata Sols., Inc.*, No. 1:11-cv-458, 2011 WL 3652444, at *3 (N.D. Ohio Aug. 19, 2011).

In other cases, courts in this district and others have adopted less preclusive measures, allowing counsel who have had access to confidential information to participate in post-grant proceedings, but prohibiting them from participating in drafting or amending claims in those proceedings. The cases adopting that approach include a case from this district in which British Telecom made the same argument it is making here, and in which the court rejected British Telecom's argument. *See British Telecommc'ns PLC v. Google Inc.*, No. 11-1249, Dkt. No. 46, Tr. 19–20 (D. Del. Aug. 31, 2012). The rationale underlying the cases that permit litigation counsel to participate in post-grant review but not to participate in drafting or amending claims (or consulting with those who do) is that the act of drafting and amending claims presents the greatest risk of misuse of the litigation opponent's confidential information, while the burden on the patentee of that less restrictive bar is significantly reduced, as compared to a wholesale bar against participation in the post-review grant proceedings in any way. *See Finjan, Inc. v. ESET, LLC*, Case No. 17CV183, 2017 WL 6557760, at *6 (S.D. Cal. Dec. 21, 2017); *Mirror Worlds Techs., LLC v. Facebook, Inc.*, No. 17-cv-3473, 2017 WL 5969334, at *3 (S.D.N.Y. Nov. 20, 2017); *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 3:15-cv-64, 2017 WL 1217157, at *4 (D. Or. Apr. 3, 2017); *X One, Inc. v. Uber Techs., Inc.*, Case No. 16-cv-6050, 2017 WL 1020982, at *3 (N.D. Cal. Mar. 16, 2017); *Valencell, Inc. v. Apple, Inc.*, 5:16-CV-1-D, 2016 WL 7217635, at *9 (E.D.N.C. Dec. 12, 2016); *Digital Ally, Inc. v. Taser Int'l, Inc.*, Case No. 16-cv-2032, 2016 WL 3365440, at *6 (D. Kan. June 17, 2016); *Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:15-cv-111, 2015 WL 9307952, at *2 (S.D. Ind. Nov. 13, 2015); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, Case No. 14-cv-876, 2014 WL 662943, at *3 (N.D. Cal.

Nov. 21, 2014); *Voice Domain Techs., LLC v. Apple, Inc.*, Civil Action No. 13-40138, 2014 WL 5106413, at *9 (D. Mass. Oct. 8, 2014); *Endo Pharms. Inc. v. Actavis Inc.*, No. 12 Civ. 8985, 2014 WL 3950900, at *4 (S.D.N.Y. Aug. 13, 2014); *Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-cv-1677, 2014 WL 5804334, at *6 (W.D. Wash. July 7, 2014); *Paice, LLC v. Hyundai Motor Co.*, No. 12-499, 2014 WL 4955384, at *4 (D. Md. Sept. 29, 2014); *Evolutionary Intelligence, LLC v. Foursquare Labs*, No. C 13-4203, 2014 WL 1311970, at *3–4 (N.D. Cal. Mar. 29, 2014); *Grobler v. Apple Inc.*, Case No. C 12-1534, 2013 WL 3359274, at *2 (N.D. Cal. May 7, 2013); *EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306, 2013 WL 2181584, at *3-4 (N.D. Cal. May 20, 2013); *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, Case No. 11-cv-4494, 2013 WL 5935005, at *5 (N.D. Cal. Nov. 4, 2013); *Prolitec Inc. v. ScentAir Techs., Inc.*, 945 F. Supp. 2d 1007, 1012 (E.D. Wis. 2013); *Howmedica Osteonics Corp. v. DePuy Orthopaedics, Inc.*, Civil Action Nos. 11-6498 *et al.*, 2012 WL 12914684, at *4–5 (D.N.J. Dec. 20, 2012); *Pragmatus AV, LLC v. Facebook, Inc.*, Case No. 5:11-cv-2168, 2012 WL 12355858, at *1 (N.D. Cal. July 5, 2012); *Hochstein v. Microsoft Corp.*, Civ. A. No.04-73071, 2008 WL 4387594, at *3 (E.D. Mich. Sept. 24, 2008) ("litigation counsel has pledged that it will not draft new claims or amend existing claims during the reexamination"); *see generally* Robert Green Sterne, Jon E. Wright, Lori A. Gordon, *Reexamination Practice With Concurrent District Court Litigation or Section 337 USITC Investigations*, 10 Sedona Conf. J. 115, 123 (2009) ("As a general matter, no party having access to another party's highly confidential technical information under a protective order should be allowed to amend or supervise the amendment of pending claims in applications or claims under reexamination in the same technical space, nor should they be allowed to draft new claims. In-

depth knowledge of a competitor's highly confidential technical information, combined with the ability to amend or draft claims, may convey a dangerously unfair advantage to the claim drafter.").

To be sure, there are numerous cases to the contrary, including in this district, in which courts have permitted litigation counsel to participate fully in post-grant proceedings. *See Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, Civil Action No. 15-691, 2016 WL 447794, at *2 (D. Del. Feb. 4, 2016); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, Civil Action No. 14-1006, 2015 WL 7257915, at *2 (D. Del. Nov. 17, 2015); *United Access Techs., Inc. v. Frontier Commc'ns Corp.*, No. 11-341, Dkt. No. 34, Tr. 9 (D. Del. May 31, 2012); *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 184 (D. Del. 2010); *Kenexa Brassring Inc. v. Taleo Corp.*, Civil Action No. 07-521, 2009 WL 393782, at *2 (D. Del. Feb. 18, 2009); *see also, e.g., Front Row Techs., LLC v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260, 1290–91 (D.N.M. 2015); *Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd.*, 311 F.R.D. at 86-87; *PPC Broadband, Inc. v. Times Fiber Commc'ns, Inc.*, Civil Action No. 5:13-CV-460, 2014 WL 859111, at *3 (N.D.N.Y. Mar. 5, 2014); *Software Rights Archive, LLC v. Facebook, Inc.*, Case Nos. 5:12-cv-3970 *et al.*, 2014 WL 116366, at *3 (N.D. Cal. Jan. 13, 2014); *Sanders v. Mosaic Co.*, Civil Action No. 09-16, 2012 WL 640159, at *3–4 (W.D. Mo. Feb. 27, 2012); *Ameranth, Inc. v. Pizza Hut, Inc.*, Civil No. 3:11-cv-1810, 2012 WL 528248, at *6–7 (S.D. Cal. Feb. 17, 2012); *NeXedge, LLC v. Freescale Semiconductor, Inc.*, 820 F. Supp. 2d 1040, 1044 (D. Ariz. 2011); *Shared Memory Graphics, LLC v. Apple, Inc.*, No. C-10-2475, 2010 WL 4704420, at *3–4 (N.D. Cal. Nov. 12, 2010); *Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp.*, No. C09-5897, 2010 WL 3629830, at *3-4 (N.D. Cal. Sept. 14, 2010); *Pall Corp. v. Entegris, Inc.*, 655 F. Supp. 2d 169, 173 (E.D.N.Y. 2008); *Mirror Worlds, LLC v. Apple, Inc.*, 2009 WL 2461808, at *2 (E.D. Tex. Aug. 11, 2009); *Crystal Image Tech., Inc. v. Mitsubishi Elec. Corp.*, Civil Action No. 08-307, 2009 WL 1035017,

at *3-4 (W.D. Pa. Apr. 17, 2009); *Document Generation Corp. v. Allscripts, LLC*, Civil Action No. 6-08-cv-479, 2009 WL 1766096, at *2 (E.D. Tex. June 23, 2009).

Most of the cases in the latter category antedate the more recent cases that have taken a more preclusive approach to the participation of litigation counsel in post-grant proceedings. Some turn on their unique facts, such as that the patents had expired (*Software Rights Archive*), or that litigation counsel had already done extensive work on the inter partes review (*Toshiba Samsung*) or had a longstanding relationship with the client (*PPC Broadband* and *Koninklijke Philips*). Significantly, most of the cases that have permitted litigation counsel to participate fully in post-grant review proceedings have not addressed whether to adopt the limited bar against participating in claim drafting and amendment that is at issue in this case.

While the courts are divided in their approach to this issue, this Court finds the approach taken by the courts that have imposed a bar on participation in drafting and amending claims to strike an appropriate balance between the parties' competing interests, at least on the facts of this case. It is true that the risk inherent in amending claims is mitigated by the fact that claims cannot be broadened in inter partes review. Nonetheless, there is still some risk entailed in permitting litigation counsel who have had access to confidential information to participate in drafting and amending claims in post-grant review proceedings. That is because claims can be narrowed in a way that preserves their validity but still covers products of the defendants. That risk, while not grave, is still great enough to warrant the modest protection of barring litigation counsel from participating in the amendment process. In this case, British Telecom has not pointed to any circumstances that would indicate that the burden of the restriction proposed by the defendants would be unusually heavy, as was true in some of the cases that rejected proposals to limit

counsel's participation in post-grant review proceedings. Nor has British Telecom suggested any reason to believe that the risk of "strategic narrowing" is not presented in this case.

As noted, the trend of recent decisions by courts in this district as well as elsewhere has been to adopt some form of restriction on the activity of patentees' litigation counsel in post-grant review proceedings. In light of the limited nature of the restriction proposed by the defendants, which addresses the risks without unduly burdening British Telecom, the Court will adopt the defendants' proposal with respect to the amendment issue. Accordingly, the parties are directed to submit a revised version of section 8.1 of the proposed protective order that incorporates the defendants' proposal, as reflected in the Court's ruling on this issue.

The proposed protective order, as revised by the parties, should be filed by March 22, 2019. A copy of that version of the proposed protective order in Microsoft Word format should be submitted to the Court at that time by email to chambers.

IT IS SO ORDERED.

SIGNED this 18th day of March, 2019

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE