# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 18-366-WCB |
| IAC/INTERACTIVECORP, MATCH GROUP, INC., MATCH GROUP, LLC, and VIMEO, INC., | § § § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is <u>Plaintiff's Motion for Entry of Final and Appealable Judgment as to Count II</u>, Dkt. No. 71. In the motion, plaintiff British Telecommunications PLC ("British Telecom") moves the Court to direct entry of a final judgment as to Count II of the First Amended Complaint pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. In the alternative, British Telecom moves the Court to sever Count II under Rule 21 of the Federal Rules of Civil Procedure and to enter final judgment on that claim so that British Telecom can take an immediate appeal from the Court's disposition of that claim. The defendants oppose the motion.

1. British Telecom's First Amended Complaint contains three counts against defendants Vimeo, Inc., and IAC/InterActiveCorp. Those are Counts I, III, and V. It also contains three counts against defendants Match Group, Inc., Match Group, LLC, and IAC/InterActiveCorp. Those are Counts II, IV, and VI. Each of the six counts is based on a separate patent.

In response to the defendants' motion to dismiss all claims in the First Amended Complaint, this Court granted the motion as to Counts I, II, III, and VI, but denied the motion as to Counts IV and V. Dkt. No. 61. This Court subsequently severed Counts I, III, and V from

1

Counts II, IV, and VI for purposes of trial, and will proceed with separate trials on the counts remaining after the dismissals, i.e., Count IV against defendants Match Group, Inc., Match Group, LLC, and IAC/InterActiveCorp., and Count V against defendants Vimeo, Inc., and IAC/InterActiveCorp.

Following the Court's order on the defendants' motion to dismiss, British Telecom filed the present motion seeking to appeal from the Court's dismissal of Count II of the First Amended Complaint. British Telecom argues that it would be in the interest of justice for the Court to permit an immediate appeal from the dismissal of Count II by entering a final judgment as to that count under Rule 54(b). In the alternative, British Telecom argues that the Court should sever Count II from the remaining counts and enter a final judgment of dismissal on that count, giving British Telecom the opportunity to take an immediate appeal from the dismissal of Count II. British Telecom represents that if the Court follows either of those courses, it will agree to a final dismissal with prejudice of the other three dismissed counts—Counts I, III, and VI—and will forgo its right to any appeal of those other three counts, "both now and in the future." Dkt. No. 72, at 2, 4.

2. There is a strong policy in the federal court system against piecemeal appeals; the requirement that there be a final judgment disposing of all the claims in a case before an appeal is taken is very much the rule, to which there are only narrowly circumscribed exceptions. *See Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981). One of those exceptions is embodied in Rule 54(b), which provides that "when an action presents more than one claim for relief," or when multiple parties are involved, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties," but that it may do so "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

2

In a patent case, the question whether an order entered by a district court under Rule 54(b) is sufficient to confer appellate jurisdiction on the court of appeals is a question of Federal Circuit law. *iLor, LLC v. Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008); *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 830 (Fed. Cir. 2003). The Federal Circuit has explained that a bare recitation that there is "no just reason for delay" is not sufficient, by itself, to properly certify an issue for immediate appeal. *iLor*, 550 F.3d at 1072. The rule calls for the district court's exercise of its discretion, "and if that exercise is to be subject to meaningful appellate review, the court of appeals must be informed of the basis for the court's certification of the judgment." *Id.* (quoting 10 James Wm. Moore et al., Moore's Federal Practice § 54.23[2] (3d ed. 2008)). The Court will therefore undertake to explain the basis for its ruling on the instant motion.

As the Supreme Court has explained, the decision to certify a final decision for appeal under Rule 54(b) requires the district court to make two findings: (1) that there has been a final judgment on the merits with respect to the claim at issue; and (2) that there is "no just reason for delay." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980). The latter inquiry requires the district court to take into account "judicial administrative interests as well as the equities involved." *Id.* at 8. The question whether there has been a final judgment on the merits with regard to the claim at issue is a legal issue; the question whether there is "no just reason for delay" entails an exercise of discretion by the district court. *Id.* at 10; *see also Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956).

There is no question that the Court's ruling dismissing Count II is a final judgment on the merits. The Court held the asserted claims of the sole patent identified in that count to be directed to ineligible subject matter under 35 U.S.C. § 101, and it therefore dismissed the infringement

claim raised in that count.  The more difficult question is whether the "no just reason for delay" standard has been satisfied.

The parties dispute whether this case is an appropriate one in which to allow an immediate appeal under the certification procedure set forth in Rule 54(b).  British Telecom argues that an immediate appeal is justified because the issue presented in Count II is unrelated to any issue presented in the remaining undismissed counts—Counts IV and V—and thus no issue relating to Count II will be affected by any developments in the pretrial or trial proceedings regarding Counts IV and V.  In addition, British Telecom argues, because of the differences between the claims at issue, it is unlikely that the Federal Circuit would have to deal with any issues relating to either set of claims more than once.  Nor, according to British Telecom, do the remaining claims raise any issue that could result in a set-off against a judgment that might be entered under Counts IV or V.

The defendants respond that allowing an immediate appeal would disserve the interests of judicial economy because it would require an additional proceeding before the court of appeals, instead of limiting the number of appeals to potentially a single appeal following the entry of final judgment as to all the claims.  They also contend that allowing an immediate appeal of Count II would be inequitable, as it would require them to respond to an appeal at the same time they are preparing for trials on the unappealed counts.

As the defendants point out, certification of a claim for immediate appeal under Rule 54(b) is intended to serve as a limited exception to the final judgment rule.  *See, e.g.*, *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 220 (3d Cir. 2012) ("Certification of a judgment as final under Rule 54(b) is the exception, not the rule, to the usual course of proceedings in a district court."); *Taco John's of Huron, Inc. v. Bix Produce Co.*, 569 F.3d 401, 402 (8th Cir. 2009) ("Our cases are uniform in holding that we will not assume jurisdiction over a case certified to us under rule 54(b)

as a routine matter or as an accommodation to counsel and that we will not do so unless there is some danger or hardship or injustice which an immediate appeal would alleviate."); *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986) ("Rule 54(b) is not to be used routinely . . . or as a courtesy or accommodation to counsel."); *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) (Kennedy, J.) ("Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.").

In *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360 (3d Cir. 1975), a frequently cited Third Circuit case, the court set forth a number of factors that a district court should consider in determining whether to issue a Rule 54(b) certification. The court's non-exclusive list of factors for district courts to consider in determining whether to issue a Rule 54(b) certification is as follows:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* at 364.

In this case, several of those factors cut in favor of certification of the final judgment as to Count II for immediate appeal. First, the substance of the claim in Count II has little to do with Counts IV and V, the remaining undismissed counts in the case. Count V is directed to a different patent, entirely different technology, and a different principal defendant, Vimeo, Inc. The only commonality between Counts II and V is that defendant IAC/InterActiveCorp, the parent

corporation of Vimeo, Inc., Match Group, Inc., and Match Group, LLC, is named as a defendant in both counts. Counts II and IV have common sets of defendants: IAC/InterActiveCorp, Match Group, Inc., and Match Group, LLC, are the named defendants in both counts. But the two counts involve different patents, and the allegedly infringing functionality is entirely different in the two counts. That factor cuts in favor of certification. *See W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Res. Assocs., Inc.*, 975 F.2d 858, 862, 864 (Fed. Cir. 1992); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1336 (Fed. Cir. 2017).

As to the likelihood that the need for review of Count II might be mooted by future developments in the trial court, that possibility seems remote (setting aside the possibility of settlement), as the two respective claims have little in common. Similarly, it does not appear likely that the reviewing court would be required to address the same issue twice, as the only common issue between Count II and Counts IV and V is the issue of the liability of defendant IAC/InterActiveCorp as the parent corporation of Vimeo, Inc., and the two Match Group defendants. That issue seems unlikely to arise in the proposed appeal of Count II, which presumably will be directed solely to the issue of patent eligibility under 35 U.S.C. § 101.

Although there are potentially other claims in the case that could raise section 101 issues, British Telecom has agreed that if an immediate appeal is authorized, either by a Rule 54(b) certification or as a result of severing Count II from the remaining counts, it will waive its right to appeal from the dismissals of the patents asserted in Counts I, III, and VI, which were dismissed under section 101. That would leave Count II as the only count in which section 101 is an issue, thus minimizing the likelihood that the Federal Circuit would have to deal with the same issue more than once in appeals arising from this case.

As to whether there is a counterclaim that could result in a set-off among the claims, there is no apparent likelihood of that occurring. The defendants' counterclaims all simply seek declaratory judgments of invalidity of the certain of the patents asserted against them. No affirmative monetary relief is sought under those counterclaims other than costs and attorneys' fees.

In support of its argument for certification, British Telecom contends that its appeal from the dismissal of Count II raises what it refers to as an issue "of first impression," that is of "potential importance to the industry." Dkt. No. 72, at 10. In particular, British Telecom argues that "the rationale underpinning this Court's conclusion that the Titmuss '040 Patent [U.S. Patent 6,297,040, the patent that is at issue in Count II] claims are directed to patent ineligible subject matter is important to the broader telecommunications industry." *Id.* at 10–11. The Court does not regard that argument as providing support for certification.

British Telecom's argument is that the '040 patent made "improvements in the operational efficiency of a telecommunication system that 'necessarily reduce the amount of data that is communicated between a source and a recipient, and thus reduce the amount of data that a recipient must view' are <u>constitutionally</u> worthy of patent protection." *Id.* at 11 (emphasis in original). British Telecom further contends that because many other patents in the telecommunications industry "are based on similar improved operational efficiencies resulting from specific combinations of steps that reduce the amount of processing resources, storage capacity, and/or network bandwidth needed for providing communications services to subscribers over telecommunications networks," the application of the Court's analysis "may have far-reaching consequences for the broader telecommunications industry." *Id.*

7

That argument is unconvincing, as it is based on a misunderstanding of this Court's decision regarding the '040 patent. The '040 patent, in essence, provides for the delivery of location-specific information to users of a telecommunications system. The asserted method entails tracking the location of a system user and then sending a "shortlist" of information sources (such as restaurants or other attractions) based on the user's location. The amount of information sent to the user is reduced because the system does not send information that is not pertinent to the user's location.

Contrary to British Telecom's characterization, the Court's order dismissing Count II did not hold that "improvements in the operational efficiency of a telecommunication system" that reduce the amount of data that is sent to a recipient are not entitled to patent protection. The point of the Court's observation was that all the invention of the '040 patent achieves is to discern a characteristic of the user—in this case location—and then limit the information sent to the user to information pertinent to that location. That is not a technological solution that reduces the amount of data transmitted in a telecommunications system; it is no more inventive than a system that identifies the sex of its users and then limits the data transmitted to the users by not sending advertisements for women's bathing suits to men.

The '040 patent does not disclose or claim any novel means of identifying the location (or any other characteristic) of users of the system. Instead, it treats as a given that communications systems can identify the location of system users. The patent is simply directed to the abstract idea of directing information to users based on their location, and it does so by employing conventional computer technology. Contrary to British Telecom's suggestion, the patent does not claim or disclose a clever way to reduce the bandwidth of a transmission while still transmitting the same amount of data. It is simply an application of the principle that if you choose to send less data,

you will have less data to transmit. The Court is thus unpersuaded that this case presents an issue of "first impression" and of any importance to the telecommunications industry.

Another factor cutting against certification under Rule 54(b) is that allowing an immediate appeal from the dismissal of Count II will increase the likelihood that the court of appeals will have to deal with this case twice, rather than just once at the end of the proceedings on all the claims in the district court. That is because the resolution of the appeal of Count II is unlikely to have an effect on the disposition of the counts that are to be tried, and vice versa. That factor is mitigated to some extent by the fact that the issue the appellate court would have to deal with in the first appeal would likely remain in the case in the absence of a Rule 54(b) certification and need to be resolved in a later appeal. Nonetheless, a separate appeal carries with it an additional burden on the appellate court, even if there is no net increase in the number of issues the court must address. This factor thus cuts against certification.

Upon consideration of the various factors applicable to the issue, and assigning substantial weight to the strong policy against interlocutory appeals, the Court concludes that this case is not an appropriate candidate for certification under Rule 54(b). The Court therefore does not find that British Telecom has satisfied its burden to show, under the exacting standard applied by the courts in Rule 54(b) proceedings, that "there is no just reason for delay" of British Telecom's appeal from the dismissal of Count II. However, as indicated below, the Court concludes that, based on some of the same considerations that the parties discussed in connection with the Rule 54(b) issue, the Court should grant a severance of Count II, which under the circumstances of this case will allow British Telecom to pursue an immediate appeal from the Court's final judgment in the newly-severed Count II.

3. With respect to British Telecom's alternative request that the Court sever Count II from the remaining unrelated claims in this case and enter final judgment as to severed Count II, the Court grants that request.

In a separate order entered today, the Court has granted a severance of Counts I, III, and V of the First Amended Complaint (and the related counterclaims), which are asserted against defendants Vimeo, Inc., and IAC/InterActiveCorp, from Counts II, IV, and VI, which are asserted against defendants Match Group, Inc., Match Group, LLC, and IAC/InterActiveCorp. Accordingly, the Court's order severing Count II will result in severing that count from Counts IV and VI, and from the counterclaims asserted in <u>Defendant Match Group, Inc.'s Answer to the First Amended Complaint and Counterclaims</u>, Dkt. No. 67, and from the counterclaims asserted in <u>Defendant IAC/InterActiveCorp's Answer to the First Amended Complaint and Counterclaims</u>, Dkt. No. 64. British Telecom has agreed that it will waive its right to appeal from the dismissals of Counts I, III, VI if the Court grants a severance allowing an immediate appeal of Count II. Accordingly, the consequence of granting a severance at this time is that Counts I, III, and VI are dismissed with prejudice; Counts IV and V and their related counterclaims will proceed to trial separately; and a final judgment of dismissal will be separately entered as to Count II. As a consequence of the severance and final judgment with respect to Count II, British Telecom will be entitled to take an immediate appeal from the dismissal of Count II. *See Kitchen v. Heyns*, 802 F.3d 873, 874–75 (6th Cir. 2015); *Hofmann v. DeMarchena & Asociados*, 642 F.3d 995, 998 (11th Cir. 2011); *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 441 n.17 (7th Cir. 2006); *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 560 (1st Cir. 2003); *Reinholdson v. Minnesota*, 346 F.3d 847, 850 (8th Cir. 2003); *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 231 n.3 (3d Cir. 1998); *Sidag Aktiengesellschaft v. Smoked Foods Prods. Co.*, 813

F.2d 81, 84 (5th Cir. 1987); *Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358, 361 (2d Cir. 1974); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1689, at 514–15 (2001).

The claims asserted against Match Group, Inc., Match Group, LLC, and IAC/InterActiveCorp (Counts II, IV, and VI) were properly joined under Rules 18 and 20 of the Federal Rules of Civil Procedure. The joinder of multiple claims against Match Group, Inc., and Match Group, LLC, was permissible under the liberal joinder provision of Rule 18, and the joinder of IAC/InterActiveCorp was permissible because British Telecom's theory is that IAC/InterActiveCorp is liable for acts of infringement by Match Group, Inc., and Match Group, LLC, based on its status as a parent company of the Match Group subsidiaries and its alleged control over the activities of those subsidiaries. Thus, there is no misjoinder of those defendants with respect to Counts II, IV, and VI. However, even in the case of multiple claims that are properly joined, the district court enjoys broad discretion under Rule 21 of the Federal Rules of Civil Procedure to sever the claims in appropriate cases. *See* Charles Alan Wright, Arthur R. Miller & May Kay Kane, Federal Practice & Procedure § 1689, at 515–16 ("Questions of severance are addressed to the broad discretion of the district court.").

In this case, the Court is persuaded that a severance is appropriate. First, in their opposition to British Telecom's Rule 54(b) motion, the defendants made no separate argument against the granting of a severance, but only stated, in a footnote, that if the Court grants the motion to permit an immediate appeal from the dismissal of Count II, it should sever Count II "from the remaining unadjudicated Counts IV and V under Rule 21, rather than [certifying Count II] for appeal under Rule 54(b)." Dkt. No. 78, at 11 n.7.

Second, as noted earlier, the subject matter of Count II is entirely different from the subject matter of Count IV, the only remaining claim to which Count II was still joined. While the two claims could be presented together, the interests in simplification and reducing of the risk of confusing the jury provide support for a severance.

Third, British Telecom has agreed that if a severance of Count II is granted and a final judgment is entered on that count, British Telecom "agrees to stipulate to a waiver of any appeal with respect to Counts I, III, and VI." Dkt. No. 72, at 13. That undertaking strengthens the case for severing Count II from the two remaining counts, in that it results in simplifying this case both for purposes of proceedings in the district court and, potentially, for purposes of appeal.

For the reasons given, the Court orders the following: First, the Court denies British Telecom's motion to issue a final judgment as to Count II under Rule 54(b). Second, the Court grants British Telecom's motion in the alternative to sever Count II from the remaining claims in the First Amended Complaint and the respective counterclaims . Because the Court has previously severed Counts I, III, and V from Counts II, IV, and VI, and because the Court has previously dismissed Count VI, the practical effect of the Court's severance order is to sever Count II from Count IV. Third, the Court will enter a final judgment as to severed Count II. The Court's orders severing Count II and entering final judgment of dismissal as to Count II are predicated on British Telecom's representation that it will not appeal the dismissal orders with respect to Counts I, III, and VI, and that it will permanently waive its right to appeal from the dismissal of those counts.

IT IS SO ORDERED.

SIGNED this 22d day of April, 2019.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE