# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 18-366-WCB |
| IAC/INTERACTIVECORP, MATCH GROUP, INC., MATCH GROUP, LLC, and VIMEO, INC., | § § § § § | |
| *Defendants*. | | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is a motion by defendants IAC/InterActiveCorp and Vimeo, Inc., (collectively, "the Vimeo defendants") to stay the action in which plaintiff British Telecommunications PLC ("British Telecom") has accused them of infringing claims 1 and 3–12 of U.S. Patent No. 7,974,200 ("the '200 patent"). Dkt. No. 125.

On August 27, 2019, the Patent Trial and Appeal Board ("PTAB") instituted *inter partes* review ("IPR") of claims 1–7 and 10–12 of the '200 patent. The Vimeo defendants have asked the Court to stay the action against them until the conclusion of that *inter partes* review proceeding, including any appeals. The Court will GRANT the request for a stay, but only until the completion of the proceedings before the PTAB. It is not necessary at this point to decide whether the stay should be extended beyond that date.

## BACKGROUND

On March 8, 2018, British Telecom filed a complaint alleging that Vimeo and several other parties (referred to as the "Match defendants") infringed six patents owned by the British Telecom, including the '200 patent. On February 4, 2019, the Court granted the defendants' motions to

1

dismiss with respect to four of the patents at issue: U.S. Patent Nos. 6,240,450; 6,397,040; 6,578,079; and 9,177,297. *See* Dkt. No. 61. The Court subsequently issued an order severing the case against the Match defendants from the case against the Vimeo defendants for purposes of trial, but continuing to treat the cases as consolidated for purposes of pretrial proceedings. Dkt. No. 96. At the same time, the Court granted British Telecom's motion to sever Count II of the first amended complaint and to enter final judgment on that claim so that British Telecom could take an immediate appeal from the disposition of that claim, which involved U.S. Patent No. 6,397,040. Dkt. No. 97; *see* Dkt. No. 98. British Telecom noticed an appeal from the dismissal of that claim, Dkt. No. 104, and that appeal is now pending before the Federal Circuit as No. 19-1917 (Fed. Cir. docketed May 24, 2019).

Although the parties in the Vimeo case have served preliminary infringement and invalidity contentions, completed initial document production, and filed claim construction briefs, much of the pretrial process remains undone. Document discovery and fact discovery has not closed; no interrogatories have been responded to; no depositions have been taken; expert reports have not been submitted; and dispositive motions have not been filed. Trial is not scheduled to begin until an as-yet-unspecified date in November 2020.

On March 22, 2019, the Vimeo defendants filed a petition seeking *inter partes* review of claims 1–7 and 10–12 of the '200 patent. The Vimeo defendants contend that they did not seek *inter partes* review of asserted claims 8 and 9 because their position is that those claims are indefinite, and *inter partes* review is not available to adjudicate claims of indefiniteness. Dkt. No. 126, at 3. In its institution decision, the PTAB found that it was likely that claims 1–3, 5–7, and 10–12 would be found invalid. *Vimeo, Inc. v. British Telecomm. PLC*, No. IPR2019-00833, 2019

WL 4050160, at *18 (P.T.A.B. Aug. 27, 2019). A decision in the *inter partes* review proceeding is expected within one year of the date of institution (i.e., by late August 2020).

Shortly after the institution of the *inter partes* review proceeding, the Vimeo defendants filed this motion to stay the proceedings in the district court pending the resolution of the *inter partes* review.

## DISCUSSION

The question whether a stay of district court proceedings should be granted when *inter partes* review is instituted on some or all the claims at issue in the district court litigation has arisen frequently since the enactment of the Leahy-Smith America Invents Act ("AIA") in 2011. The principles governing the answer to that question have been developed by courts in numerous decisions since then.

A district court has inherent power to control its own docket, including the power to stay the proceedings before it. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In particular, the question whether to stay proceedings pending review by the Patent and Trademark Office ("PTO") of the validity of the patent or patents at issue in the lawsuit is a matter committed to the district court's discretion. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). A stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC v. HTC Am., Inc.*, Case No. 2:13-cv-1058, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015) (citing cases).

District courts typically consider three factors when determining whether to grant a stay pending *inter partes* review of the patent in suit: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial

date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, No. CV 12-1461, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) (citing cases); *St. Clair Intellectual Property v. Sony Corp.*, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003).

The related context of Covered Business Methods ("CBM") review proceedings provides guidance as to the principles that apply to stay applications in the IPR setting. In the uncodified portion of the AIA that was directed to CBM review proceedings, Congress set forth four factors that govern whether a stay should be granted pending CBM review proceedings before the PTAB. Those four factors are:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Pub. L. No. 112-29, § 18(b)(1), 125 Stat. 284, 331 (2011). Those statutory factors largely track the three factors traditionally used by courts in determining whether to grant stays pending post-grant review proceedings, with a fourth factor added. The fourth factor, which requires an inquiry into whether a stay will reduce the burden of litigation on the parties and the court, indicates that the "burden of litigation" factor should be given special attention.

While the four-factor test that Congress enacted for stays in CBM proceedings does not expressly extend to IPR cases, the policy considerations that apply in the two contexts are similar, and the Federal Circuit has held that the fourth factor set forth in the CBM statute may properly be applied to stays in IPR cases as well. *See Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357,

4

1362 (Fed. Cir. 2016); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, Civil Action No. 18-452, 2019 WL 3943058, at *3 (D. Del. Aug. 21, 2019); *Neuro Cardiac Techs., LLC v. LivaNova, Inc.*, Civil Action No. H-18-1517, 2018 WL 4901035, at *2 (S.D. Tex. Oct. 9, 2018); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346, 2013 WL 6044407, at *2 (W.D. Wis. Nov. 14, 2013). The Court will therefore address the "burden of litigation" factor as part of the factor directed to "simplifying the issues."

The legislative history of the AIA makes it apparent that Congress intended for district courts to be liberal in granting stays pending CBM review. As Senator Schumer observed regarding the CBM review provision, Congress intended to place "a very heavy thumb on the scale in favor of a stay being granted" once the PTAB instituted CBM review proceedings. 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Chuck Schumer).

Congress's desire to enhance the role of the PTO and limit the burden of litigation on courts and parties was not restricted to the CBM review context. The legislative history indicates that Congress recognized that the same underlying policy considerations that apply to CBM review apply to *inter partes* review as well. *See* H. Rep. No. 112-98, Part I, at 48 (2011) (statutory post-grant review procedures were designed to be "quick and cost effective alternatives to litigation"); 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (*inter partes* review was intended to provide a "faster, less costly alternative[] to civil litigation to challenge patents") (statement of Sen. Chuck Grassley); *id*. at S5319 (daily ed. Sept. 6, 2011) (post-grant review of patents, including *inter partes* review, was meant to be "an inexpensive substitute for district court litigation" that "allows key issues to be addressed by experts in the field") (statement of Sen. Jon Kyl). In light of the parallel policies underlying the CBM and *inter partes* review proceedings, it is not surprising that courts have applied similar analyses to requests for stays in both settings.

The benefits of *inter partes* review are the same as those served by CBM review. Both give the PTO an opportunity to reconsider patents that have become the focus of litigation, relieving the courts of some of the burdens of deciding issues of obviousness and anticipation, and saving the courts from having to adjudicate infringement claims based on patents of questionable validity. For those reasons, courts have concluded that the "liberal policy" in favor of stays in CBM cases also applies to stays pending instituted IPR proceedings. *IOENGINE*, 2019 WL 3943058, at *4; *Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2:13-cv-04160, 2014 WL 2511308, at *2 (W.D. Mo. June 4, 2014) ("Although the decision to grant a stay remains firmly in the district court's discretion, the interests of judicial economy and deference to the PTO's expertise have given rise to a 'liberal policy in favor of grant stays.'"); *see also Parsons Xtreme Golf LLC v. Taylor Made Golf Co.*, No. CV-17-03125, 2018 WL 6242280, at *3–8 (D. Ariz. Nov. 29, 2018); *Nautilus, Inc. v. ICON Health & Fitness, Inc.*, Case No. 1:17-cv-154, 2018 WL 4215095, at *2 (D. Utah Sept. 4, 2018); *Qualcomm Inc. v. Apple Inc.*, Case No. 3:17-cv-2403, 2018 WL 4104966, at *1 (S.D. Cal. Aug. 29, 2018); *Canfield Sci., Inc. v. Drugge*, Civil Action No. 16-4636, 2018 WL 2973404, at *2 (D.N.J. June 13, 2018); *Chrimar Sys. Inc. v. Ruckus Wireless, Inc.,* Case No. 16-cv-186 et al., 2016 WL 5403595, at *3 (N.D. Cal. Sept. 26, 2016); *Drink Tanks Corp. v. GrowlerWerks, Inc.*, Case No. 3:16-cv-410, 2016 WL 3844209, at *2 (D. Or. July 15, 2016); *Gatearm Techs., Inc. v. Access Masters, LLC*, Civil Action No. 14-62697, 2015 WL 13752667, at *1 (S.D. Fla. July 13, 2015); *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. C-14-1575, 2014 WL 3107447, at *3 (N.D. Cal. July 3, 2014). Summarizing the state of the law on this issue, the court in the *NFC Tech.* case stated that "after the PTAB has instituted review proceedings, the parallel district court litigation ordinarily should be stayed." *NFC Tech.*, 2015 WL 1069111, at *7.

Although the three-factor test informs the Court's inquiry, that test is not a prescriptive template. The district court retains the "discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata*, 830 F.3d at 1362. "[U]ltimately the Court must decide stay requests on a case-by-case basis." *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, Case No. 6:13-cv-384, 2014 WL 5035718, at *2 (E.D. Tex. Oct. 8, 2014); *see also IOENGINE,* 2019 WL 3943058, at *4; *Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, Case No. SACV 17-1914, 2019 WL 116784, at *2 (C.D. Cal. Jan. 2, 2019) ("the totality of the circumstances governs" (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. 2013))); *Qualcomm Inc.,* 2018 WL 4104966, at *1; *Image Processing Techs., LLC v. Samsung Elecs. Co.*, Case No. 2:16-cv-505, 2017 WL 7051628, at *1 (E.D. Tex. Oct. 25, 2017) ("motions to stay are highly individualized matters"); *Realtime Data LLC v. Actian Corp.*, Case No. 6:15-cv-463, 2016 U.S. Dist. LEXIS 187446, at *7 (E.D. Tex. Nov. 29, 2016); *Drink Tanks Corp.*, 2016 WL 3844209, at *2; *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-1153, 2015 WL 1809309, at *2 (C.D. Cal. Apr. 20, 2015); *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014).

The court now turns to an assessment of each of the factors in deciding whether to grant the motions to stay.

### I. The State of the Proceedings

In the case before the Court, most aspects of fact and expert discovery have not begun. No interrogatories have been answered, no depositions have been taken, and expert reports have not been served. Although claim construction briefing has been completed, the Court has not yet entered a claim construction order. Thus, much of the work in the case—and in particular the most burdensome stages of the case—completing discovery, preparing expert reports, filing and

responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie ahead. *IOENGINE*, 2019 WL 3943058, at *5; *CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, D.I. 331, at 13 (E.D. Tex. Feb. 14, 2019); *see Smartflash LLC v. Apple Inc.*, 621 Fed. Appx. 995, 1005 (Fed. Cir. 2015) (holding that the district court abused its discretion when it denied a stay prior to trial, because "[d]espite the substantial time and effort already spent in this case, the most burdensome task is yet to come."). The state of the litigation thus cuts in favor of a stay. *See CallWave Commc'ns, LLC v. AT&T Mobility LLC*, Civil Action Nos. 12-1702 et al., 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (stage of the litigation favored a stay where "[d]iscovery is more advanced than would be ideal, but . . . few depositions have been taken and expert discovery has not yet begun"); *ACQUIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356–57 (D. Mass. 2015) (finding that the "stage of the litigation" factor weighed in favor of a stay where no depositions had been taken and expert discovery had not begun, "[n]otwithstanding the fact that substantial document and written discovery ha[d] already occurred, and a claim construction opinion ha[d] been issued").

While this case is not "in its infancy," it nonetheless appears likely "that the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future." *IOENGINE,* 2019 WL 3943058, at *5 (quoting *NFC Tech.*, 2015 WL 1069111, at *3). Therefore, the Court believes that "denying a stay because of the progress of the case to this point would impose significant expenses on the parties that might be avoided if the stay results in the simplification of further court proceedings." *IOENGINE*, 2019 WL 3943058, at *5; *NFC Tech.*, 2015 WL 1069111, at *3.

Importantly, the IPR proceeding has already been instituted in this case, so there is no uncertainty as to whether the PTAB will grant the Vimeo defendants' petition for review. In that

respect, this case is fundamentally different from several of the cases on which British Telecom relies, in which courts relied on the fact that *inter partes* review had not yet been instituted. *True Position, Inc. v. Polaris Wireless, Inc.*, C.A. No. 12-646, 2013 WL 5701529, at *6 (D. Del. Oct. 21, 2013); *Realtime Data LLC v. Actian Corp.*, Civil No. 6:15-cv-463, 2016 WL 3277259, at *2 (E.D. Tex. June 14, 2016); *Otto Bock HealthCare LP v. Össur hf*, No. SACV 13-891, 2013 WL 12313020, at *2 (C.D. Cal. Dec. 16, 2013). In short, the state of the proceedings factor favors a stay in this case.

## II. Prejudice

In analyzing whether a plaintiff would suffer undue prejudice (and relatedly whether a defendant would gain an unfair tactical advantage) if a stay were granted, courts in this district have examined four factors: (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *IOENGINE*, 2019 WL 3943058, at *5; *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019); *Contour IP Holding, LLC v. GoPro,Inc.*, No. CV 15-1108, 2016 WL 4474340, at *4 (D. Del. July 14, 2016); *Princeton Dig. Image Corp.*, 2014 WL 3819458, at *4. In light of those factors, British Telecom makes several arguments about why granting a stay of its action against the Vimeo defendants would be unduly prejudicial.

First, British Telecom argues that the Vimeo defendants could have filed their IPR petition challenging British Telecom's patent immediately after this action was filed in March 2018. Instead, the Vimeo defendants waited until shortly before the statutory deadline to file their petition for *inter partes* review. In response, the Vimeo defendants noted that following the filing of the lawsuit, they and their co-defendants filed two motions to dismiss, which resulted in a February 4, 2019, order dismissing four of the six asserted patents, and leaving only the '200 patent remaining

9

against the Vimeo defendants. The Vimeo defendants filed their petition for *inter partes* review approximately seven weeks later, on March 22, 2019.

The Court concludes that the Vimeo defendants acted with reasonable dispatch in filing their petition for *inter partes* review. While their motion to dismiss was pending, it was possible that the action would be dismissed altogether and that the work involved in filing an IPR petition (not to mention the burden on British Telecom and the PTAB) could be avoided altogether. After this Court entered its order dismissing two of the patents in suit against the Vimeo defendants but denying the motion to dismiss the '200 patent (the remaining patent asserted against the Vimeo defendants), the dispute had narrowed, and an IPR petition limited to the '200 patent could be filed. Under those circumstances, it was reasonable for the Vimeo defendants to wait for the Court's ruling on the motion to dismiss before filing their IPR petition.

Second, with respect to the timing of the stay request, the Vimeo defendants filed their motion for a stay within ten days after the IPR institution decision on the '200 patent was published. An earlier request for a stay would have been premature, as courts almost invariably deny requests for stays pending IPR proceedings when the stay requests are filed before the IPR is instituted. *See, e.g.*, *Invensas Corp. v. Samsung Elecs. Co.*, Civil Action No. 17-1363, 2018 WL 4762957, at *6 (D. Del. Oct. 2, 2018); *Universal Secure Registry, LLC v. Apple Inc.*, Civil Action No. 17-585, 2018 WL 4486379, at *4–5 (D. Del. Sept. 19, 2018); *454 Life Scis. Corp. v. ION Torrent Sys., Inc.*, No. 15-595, 2016 WL 6594083, at *4 (D. Del. Nov. 7, 2016) (stay motion filed shortly after PTAB issued its institution decisions, "which is generally the ideal time at which to file such a request."). The Court finds that the Vimeo defendants were diligent in moving for the requested stay soon after the institution decision was made.

British Telecom also argues that the Vimeo defendants' request for a stay "came only after this Court's solicitation." Dkt. No. 127, at 13. That is a misleading characterization of the sequence of events. The IPR was instituted on August 27, 2019, three days before the scheduled hearing on claim construction. The following day, the Court noted that decision and requested that the parties be prepared to discuss the effect of the PTAB's action at the hearing. *See id.* at 4. On August 29, the defendants advised British Telecom that they intended to seek a stay. *Id.* at 5. At the hearing, the Court asked the Vimeo defendants whether they intended to seek a stay pending the IPR proceeding, and they responded that they did. The Court then directed that the briefing of the stay motion be expedited in light of the pre-trial schedule. Dkt. No. 128-1, at 6–7 (The Court: "Are you planning to move for a stay pending the disposition of that IPR, or what are your plans? Mr. Walker: Yes, Your Honor. We hope to get that on file next week."). British Telecom's suggestion that this Court "solicit[ed]" the motion for a stay is inaccurate; the Court inquired as to the defendants' intentions and they advised the Court as to their intentions. The defendants filed their motion for a stay a week after the claim construction hearing, which was 10 days after the PTAB instituted *inter partes* review. That period of delay is not unreasonable and not prejudicial to British Telecom. Indeed, the Court's direction that the briefing of the issue of the stay be expedited was intended to reduce the possible prejudice to the parties by minimizing the expenses the parties might otherwise have incurred if the Court's decision on the stay motion were postponed.

Third, with respect to the status of the review proceeding, the IPR on the '200 patent was instituted in August of this year and will presumably be completed by August 2020. *See* 37 C.F.R. § 42.100(c). Thus, while the IPR is not at an advanced stage, the potential for the IPR to affect the litigation is high. If a stay is not granted, a decision as to the validity of various claims of the '200

patent could come shortly before the trial in this case. The prospect that a contemporaneous IPR decision will have a significant effect on the issues presented in the litigation counsels in favor of a stay. *See IOENGINE*, 2019 WL 3943058, at *6; *Huvepharma Eood v. Associated British Foods, PLC*, Civil Action No. 18-129, 2019 WL 3802472, at *1 (D. Del. Aug. 13, 2019) ("Plaintiffs contemplate having anticipation and obviousness tried twice, whereas a stay will mean that those issues will only need to be tried once.").

Fourth, as to the relationship between the parties, it appears that British Telecom does not compete with Vimeo with regard to the activities as to which British Telecom has alleged infringement. To be sure, British Telecom's interest in the prompt enforcement of its patent rights is entitled to weight. *See IOENGINE*, 2019 WL 3943058, at *6; *CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, D.I. 331, at 7; *NFC Tech.*, 2015 WL 1069111, at *2. However, that factor is present in every case in which a patentee resists a stay, and it is therefore insufficient, standing alone, to defeat a stay motion. *See BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-cv-133, 2013 WL 2462105, at *1 n.1 (D. Del. June 6, 2013); *see also CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, D.I. 331, at 7; *CyWee Grp. Ltd. v. Huawei Device Co.*, Case No. 2:17-cv-495, 2018 WL 4002776, at * 3 (E.D. Tex. Aug. 22, 2018); *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:12-cv-855, 2018 WL 398433, at *3 (E.D. Tex. Jan. 12, 2018); *NFC Tech.*, 2015 WL 1069111, at *2. That is especially true for entities such as British Telecom, that "do[] not participate in the relevant market and will not suffer any loss of market share or erosion of goodwill due to a stay." *Princeton Dig. Image Corp.*, 2014 WL 3819458, at *6; *see also SZ DJI Tech. Co. v. Autel Robotics USA LLC*, C.A. No. 16-706, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019) ("[T]he stay of proceedings with respect to a patent Autel does not practice will not greatly harm Autel."); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, C.A. No. 12-cv-1107 et

al., 2014 WL 1369721, at *5 (D. Del. Apr. 7, 2014) (holding that the plaintiff's status "as a non-practicing entity, rather than a market participant, suggests there is little risk that it will lose sales or goodwill in the market" if a stay is granted); *Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 09-865, 2010 WL 5149351, at *5 (D. Del. Dec. 3, 2010) ("Courts are reluctant to stay proceedings where the parties are direct competitors.") (citing cases). The relationship of the parties therefore does not cut against issuance of a stay.[1]

Finally, British Telecom argues that it will incur additional expenses if a stay is granted. Dkt. No. 127, at 15. While the IPR proceeding will no doubt lead to additional expenses for the parties, those expenses will be incurred without regard to whether the Court issues a stay of the district court litigation. The prospect that the IPR proceeding may result in simplification of the district court proceedings, on the other hand, has every likelihood of reducing the burdens of the litigation on the parties, as discussed below. British Telecom's "additional expense" argument therefore is not persuasive. The Court therefore finds that granting a stay of the Vimeo action will not unduly prejudice British Telecom, and that the prejudice factor does not favor denying a stay of the Vimeo litigation.

---

[1] The Vimeo defendants asserted that "Vimeo and BT are not competitors in respect of the subject matter of the '200 patent, and indeed are not competitors at all." Dkt. No. 126, at 10. British Telecom did not deny that assertion, but simply stated in response that "any delay in resolving BT's ability to enforce the '200 Patent necessarily also harms its business interests in the same," by "undermin[ing] BT's reputation and good will," which has "damaged BT and caused damage to BT's rights." Dkt. No. 127, at 15. That very generic characterization of the injury asserted by British Telecom lacks the specificity of a claim of injury caused by an infringer to a direct competitor in the field of the patent.

Several of the cases relied upon by British Telecom involved requests for stays by defendants that were direct competitors of the plaintiffs. *See True Position*, 2013 WL 5701529, at *5; *Otto Bock Healthcare*, 2013 WL 12313020, at *3. Those cases are distinguishable on that ground, among others.

13

### III. Simplification of the Issues

The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial. As this Court explained in *NFC Technology*,

> Congress's purpose in creating an inter partes review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed. Giving the agency the authority to consider the validity of patents in the inter partes review process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation.

*NFC Tech.*, 2015 WL 1069111, at *4; *see In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985) ("When the patent is concurrently involved in litigation [one function of reexamination] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration.").

British Telecom argues that the issues will not be simplified by postponing further action in the district court until after the IPR has been concluded. Principally, British Telecom points out that the Vimeo defendants did not seek *inter partes* review of two of the claims that have been asserted in the district court litigation, claims 8 and 9 of the '200 patent. For that reason, British Telecom argues, even if the PTAB should cancel all of the claims pending before it, the district court litigation will not be wholly mooted.

While it is true that the IPR will not address all of the claims at issue in the district court litigation, the Court nonetheless believes it is highly likely that the IPR will result in simplification of the district court proceedings. The PTAB's construction of the '200 patent and its assessment of the pertinent prior art will likely be instructive in the district court litigation. *See Contour IP Holding, LLC v. GoPro, Inc.*, 2016 WL 4474340, at *3; *ACQUIS, LLC*, 109 F. Supp. 3d at 357–58 (stay granted even though only two of 11 patents-in-suit and only three of the 22 asserted claims were challenged in IPRs, but there was "significant overlap among the patents-in-suit."); *SMT*

14

*Sols., Inc. v. ExpoEvent Supply LLC*, No. 11-6225, 2012 WL 3526830, at *4 (D.N.J. Aug. 15, 2012) (case would be simplified, even though "not all of the patents-in-suit are under reexamination," because "the patents-in-suit all share nearly identical disclosures"); *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, No. C 08-0930, 2008 WL 3833576, at *1 (N.D. Cal. Aug. 15, 2008) (staying case because a "closely related" and "sufficiently similar" patent was undergoing reexamination); *Alloc, Inc. v. Unilin Decor N.V.*, No. 03-cv-253, 2003 WL 21640372 (D. Del. July 11, 2003) (stay issued where "there is a sufficient correlation among all of the patents," even though the asserted patent was not undergoing review).

More generally, district courts have frequently issued stays in cases in which IPR proceedings have been instituted on fewer than all the claims asserted in the related litigation. *See, e.g.*, *IOENGINE*, 2019 WL 3943058, at *9; *Parsons*, 2018 WL 6242280, at *5; *Clinicomp Int'l, Inc. v. Cerner Corp.*, Case No. 17-cv-2479, 2018 WL 5617694, at *4–5 (S.D. Cal. Oct. 30, 2018); *Canfield*, 2018 WL 2973404, at *2; *Stingray Music USA, Inc. v. Music Choice*, No. 2:16-cv-586, 2017 WL 9885167, at *2 (E.D. Tex. Dec. 12, 2017); *Image Processing Techs.*, 2017 WL 7051628, at *1; *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case Nos. 2:16-cv-642 et al., 2017 WL 9885168, at *1 (E.D. Tex. June 13, 2017); *Realtime Data, LLC v. Hewlett Packard Enter. Co.*, Civil Action Nos. 6:16-cv-86 et al., 2017 WL 3712916, at *3 (E.D. Tex. Feb. 3, 2017); *Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*, Case Nos. 6:15-cv-59 et al., 2016 WL 4394485, at *3 (E.D. Tex. May 12, 2016); *e.Digital Corp. v. Arcsoft, Inc.*, Case No. 15-cv-56, 2016 WL 452152, at *1–2 (S.D. Cal. Feb. 3, 2016); *Personal Audio LLC v. Google, Inc.*, Civil Action No. 1:15-cv-350, 2015 WL 12915558, at *3 (E.D. Tex. Nov. 3, 2015); *NFC Tech.*, 2015 WL 1069111, at *7; *PersonalWeb Techs.*, 69 F. Supp. 3d at 1027–28 (citing cases). As those cases make clear, even when IPRs are instituted on fewer than all the asserted claims, the policies favoring simplification

and the reduction of litigation burdens on the parties and the court are often applicable, particularly when the claims that are before the PTAB in an IPR are similar to those that are not. That is true in this case, for several reasons.

First, if the PTAB invalidates all of the claims before it, the case will unquestionably become simpler. The removal of up to nine of the eleven asserted claims will make the task of dealing with the remaining claims significantly easier.

Second, even if the PTAB does not cancel all (or even any) of the asserted claims of the '200 patent, any conclusion that the PTAB reaches will have a likely effect on the litigation by limiting the arguments the Vimeo defendants can make regarding validity. The statutory estoppel provision, 35 U.S.C. § 315(e)(2), will bar the defendants from seeking to invalidate the claims that were included in the IPR on any ground that was raised in the IPR petition or could have been raised in that petition.

Third, and relatedly, even if the PTAB does not invalidate any of the claims in the pending IPR proceeding, the Court will benefit from the PTAB's guidance on the construction of certain claim terms. More generally, the expertise of the PTAB judges in this complex field of art is likely to be of considerable assistance to the Court. *See PersonalWeb Techs., LLC v. Facebook, Inc.*, Case Nos. 5:13-cv-1356 et al., 2014 WL 116340, at *2 (N.D. Cal. Jan. 13, 2014) ("IPR provides a path to receive expert guidance from the PTO"); *Evolutionary Intelligence, LLC v. Apple, Inc.*, No. C 13-4201, 2014 WL 93954, at *2–3 (N.D. Cal. Jan. 9, 2014); *E-Watch, Inc. v. Lorex Can., Inc.*, Civil Action No. H-12-3314, 2013 WL 5425298, at *2 (S.D. Tex. Sept. 26, 2013) ("At a minimum, even assuming that all the patents-in-suit survive the reexamination intact, the USPTO's insight and expertise regarding the validity of the patents would be of invaluable assistance to this court."); *TimeBase Pty Ltd. v. Thomson Corp.*, Civil No. 07-1687, 2008 WL 1959061, at *2 (D. Minn. May

6, 2008); *see generally Ethicon, Inc.*, 849 F.2d at 1428 (even if reexamination does not lead to claim amendment or cancellation, "it could still provide valuable analysis to the district court"); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).").

Fourth, the IPR proceeding may produce additional prosecution history that could assist the Court in addressing the issues of claim construction and validity. *See Ethicon LLC*, 2019 WL 1276029, at *2 ("There will be additional prosecution history relating to all of the claims in this case. Some claims may be cancelled. There may be amendments.").

Fifth, as alluded to earlier, allowing the PTO to adjudicate the validity of the claims before it in the IPR proceeding reduces what otherwise could be duplication of effort and possibly inconsistent results between the administrative agency and this Court. *See Evolutionary Intelligence, LLC v. Apple, Inc.*, 2014 WL 93954, at *3 (a stay "will minimize the risk of inconsistent results and conserve resources"; there is "little benefit to be gained from having two forums review the validity of the same claims at the same time"); *Evolutionary Intelligence LLC v. Yelp Inc.*, No. C-13-3587, 2013 WL 6672451, at *6 (N.D. Cal. Dec. 18, 2013); *Microsoft Corp. v. Tivo Inc.*, No. 10-cv-240, 2011 WL 1748428, at *5 (N.D. Cal. May 6, 2011).

Sixth, on the particular facts of this case, although *inter partes* review was not sought, and has not been instituted on claims 8 and 9 that are asserted in the litigation, review has been instituted on two other claims—claims 5 and 6—that are very similar to claims 8 and 9. It appears likely that any decision of the PTAB with regard to the validity of claims 5 and 6 will have a significant impact on the issue of the validity of claims 8 and 9 in the court litigation. Because

IPR review has been instituted with regard to most of the claims that are pending before this Court, and because the remaining two claims are likely to be affected by the outcome of the IPR proceedings, this case is quite different from *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345 (D. Del. 2016), on which British Telecom relies. In that case, the court pointed out that most of the claims at issue in the court proceeding were not at issue in the IPR proceeding, so the "simplification of issues" factor did not favor a stay.

For the foregoing reasons, the Court concludes that the likelihood that the IPR proceeding will simplify this litigation and reduce the burden on the parties and on the Court is sufficiently high that the Court regards the "simplification/burden" factor as cutting strongly in favor of granting a stay.

## IV. A Partial Stay

In the alternative, British Telecom argues that if the Court is inclined to stay this action in part or in full, it should either (1) not stay the action with respect to claims 8 and 9, or (2) construe the claims of the '200 patent before entering the stay.

The Court is not inclined to adopt either of British Telecom's suggestions. Proceeding with the litigation on claims 8 and 9 would largely disserve the efficiencies that would flow from a stay, as it would require discovery and other pretrial proceedings in the litigation not very different from what would be required in the absence of a stay. What is more, as noted earlier, claims 8 and 9 are quite similar to claims 5 and 6, which are at issue in the IPR proceeding. Any decision of the PTAB regarding claims 5 and 6 is likely to be instructive with respect to the analysis of claims 8 and 9 as well. The interests of conserving the resources of the parties and the Court thus do not favor a partial stay of the district court litigation.

The Court is also not inclined to adopt British Telecom's suggestion that the Court construe the claims of the '200 patent before staying the case. To the extent that the PTAB finds it useful to construe the instituted claims of the '200 patent, those constructions will be instructive to the Court. While the Court is free to adjust its claim constructions at any time, it would be beneficial to have the PTAB's constructions at the time the Court adopts its initial claim constructions. For its part, the PTAB is not generally bound by a district court's claim constructions, *see Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015); 83 Fed. Reg. 51340, 51355 (Oct. 11, 2018), so the interests of efficiency would not be served by the Court's construing those claims in advance of the PTAB's decision in the IPR proceeding. Moreover, the claims are subject to amendment in IPR proceedings, and the possibility of such an amendment could moot the Court's claim construction efforts.

For the foregoing reasons, the Court exercises its discretion to stay the proceedings in the Vimeo case pending the disposition of IPR2019-0083. The stay does not, of course, affect the proceedings in the related case of *British Telecommunications PLC v. IAC/InterActiveCorp, Match Group, Inc., and Match Group, LLC,* No. 18-366, in which British Telecom has accused the three defendants of infringing U.S. Patent No. 7,243,105.

IT IS SO ORDERED.

SIGNED this 27th day of September, 2019.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE