# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITISH TELECOMMUNICATIONS PLC,<br><br>*Plaintiff*,<br><br>v.<br><br>IAC/INTERACTIVECORP, MATCH GROUP, INC., MATCH GROUP, LLC, and VIMEO, INC.,<br><br>*Defendants*. | Civil Action No. 18-366-WCB |

## MEMORANDUM OPINION AND ORDER

Before the Court is <u>Defendant Match Group Inc. and Match Group, LLC's Motion for Protective Order</u>, Dkt. No. 169. The motion is GRANTED IN PART and DENIED IN PART.

Plaintiff British Telecommunications PLC ("BT") has served seven notices of deposition, under Federal Rule of Civil Procedure 30(b)(6), on defendants Match Group Inc. and Match Group, LLC (collectively, "Match Group") that contained 134 deposition topics. Match Group has objected to the number of topics as "facially excessive," and in some instances to the subject matter of particular topics set forth in the notices. In addition, Match Group has objected to BT's Rule 30(b)(1) notices of deposition for Match Group Inc.'s (now-former) chief executive officer, Amanda Ginsberg, and Match Group America's chief executive officer, Amarnath Thombre.

**1. The Rule 30(b)(6) Topics**

The seven Rule 30(b)(6) notices of deposition set forth a number of topics for examination. Pursuant to the provisions of the Rule, Match Group is required to designate one or more persons to testify on its behalf about each topic. The persons so designated "must testify about information

1

known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The topics designated by BT can be broken down into six general categories:

(1) The operation of Match Group's accused products: Match.com, Tinder, and OK Cupid;

(2) The source code for the three products;

(3) The way in which each witness prepared for the deposition;

(4) The efforts made by Match Group to collect documents for the document production demanded by BT;

(5) Topics relating to damages; and

(6) Two topics that Match Group characterizes as "contention deposition topics."

### a. The number of topics

Match Group's principal complaint is that BT has identified a total of 134 Rule 30(b)(6) deposition topics, which Match Group characterizes as a facially unreasonable number. Dkt. No. 169, at 3–5 (citing *Apple Inc. v. Samsung Elecs. Co.*, No. C11-1846, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) ("The court finds that under the circumstances, Samsung's 229-topic notice is facially excessive.")). BT responds that the number of deposition topics, although large, is attributable to the complexity of the case, BT's obligation to identify the deposition topics with "painstaking" specificity, and Match Group's alleged lack of source code documentation. Dkt. No. 173, at 6–8. In light of the nature of most of the inquiries, there is considerable merit to BT's response.

Most of BT's deposition topics deal with technical aspects of the operation of the three "Accused Products/Services." Fifteen of the topics address how and why Match.com is designed as it is, including various details of its operation. Another 7 topics are directed to how and why

2

Tinder is designed as it is, including various details of its operation. Another 13 topics are directed to how and why OkCupid is designed as it is, including various details of its operation.

In addition, 17 of the topics address details of the source code relating to various aspects of Match.com. Another 9 topics are directed to details of the source code relating to various aspects of Tinder. And another 15 topics are directed to details of the source code relating to various aspects of OkCupid.

BT could have consolidated those 76 topics into significantly fewer and more general topics. On the facts of this case, BT's decision to set out the 76 topics separately served to provide greater specificity as to the proposed deposition topics and should not be held against it. Rule 30(b)(6) requires that a deposition notice under the rule must describe the matters for examination "with reasonable particularity." Courts have strictly enforced that requirement, sometimes characterizing the "reasonable particularity" requirement as mandating that the topics be designated "with painstaking specificity." *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1057 n.5 (7th Cir. 2000) (quoting *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000) ("[T]he requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.")); *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015) (quoting *Sprint Commc'ns Co. L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006) (To allow Rule 30(b)(6) "to effectively function, the requesting party must take care to designate, *with painstaking specificity*, the particular subject areas that are intended to be questioned.") (emphasis in original)).

The majority of the 134 topics focus on closely related, technical aspects of the operation of Match.com, Tinder, and OkCupid. Those topics, although numerous, do not encompass wide-

ranging fields of inquiry, but are directed with great specificity to the technical aspects of the three allegedly infringing dating services. For that reason, even though those separately listed topics are numerous, the number of those topics is not, by itself, abusive.

Curiously, Match Group argues that BT's notices "include topics that are not narrowly tailored and fail to identify with reasonable particularity the matters on which examination is sought." Dkt. No. 169, at 3. In fact, the deposition topics—particularly those directed to the various specific technical functions of Match.com, Tinder, and OkCupid—are each quite narrowly tailored, which is one of the reasons there are so many topics listed in those deposition notices. Aside from that contention and the contentions discussed below, Match Group has not raised any objection to the individual topics in the first, third, and fifth deposition notices. Instead, Match Group rests its case for a protective order as to those topics mainly on the large number of topics listed. For the reasons set forth above, the objection to the number of topics in those three deposition notices is not enough, by itself, to justify a protective order as to those notices.

### b. Topics dealing with source code

Match Group also objects to the topics set forth in the second, fourth, and sixth deposition notices, which are directed to inquiries about the source code for each of the three Match Group products. BT has already been given access to the relevant source code, but in its Rule 30(b)(6) deposition notices, it seeks to have a corporate representative or representatives testify on a variety of topics relating to the source code, such as the following illustrative example: "Details of source code related to the algorithm(s) or other software program(s) used to determine OkCupid users' Personality Traits data based on OkCupid users' answers to quiz questions." Dkt. No. 169-1, Exh. 6, at Topic 5.

The three "source code" deposition notices also require the Rule 30(b)(6) witness or witnesses to identify all source code relevant to each of the features or algorithms described in the other source code topics "by filename and line number"; to identify all revisions to the source code; and to identify "all persons who prepared or revised [the relevant] source code and their involvement." *See, e.g.*, Dkt. No. 169-1, Exh. 2, at Topic 16. Match Group argues that those demands are unreasonably burdensome, particularly in light of the fact that BT has already been given access to the relevant source code.

There is force to Match Group's argument. Several decisions from this district have ruled that a defendant, once having produced the source code for its accused products, is not required to identify the accused features in the source code if that process would be unduly burdensome. *See Int'l Business Machines Corp. v. The Priceline Group Inc.*, Civil Action No. 15-137, 2016 WL 6305981, at *1 (D. Del. Sept. 29, 2016) ("[W]here a plaintiff has access to the source code and the task of requiring a defendant to sift through its source code to identify accused features would be unduly burdensome, courts have denied requests like IBM's here."); *Callwave Commc'ns LLC v. AT&T Mobility LLC*, Civil Action Nos. 12-1701 et al., 2015 WL 4039813, at *1 (D. Del. June 29, 2015) (agreeing with the defendant that "to compel the 30(b)(6) witness to testify regarding the functionality of a source code would inappropriately shift the burden of analyzing and interpreting the code to the defendants"); *CIF Licensing, LLC v. Agere Sys. Inc.*, Civil Action No. 07-170, 2009 WL 187823, at *2 (D. Del. Jan. 23, 2009) ("Defendants have produced the complete source code where [the requested] information would be contained, if it exists, and Plaintiff is asking Defendants to take the further step of mapping specific lines of code to specific claim terms interpreted in specific ways. . . . Plaintiff already has access to the information it seeks. The source

5

code is available to Plaintiff's experts . . . . Defendants' and Plaintiff's experts would undertake essentially the same process to glean the requested information from the source code.").

Courts in other districts have reached varying results in cases involving requests that the defendant supplement its source code with additional documentation or testimony providing detailed information about the source code. The results in those cases typically turn on their specific facts.

For example, in *Apple Inc v. Samsung Elecs. Co.*, No 12-cv-630, 2013 WL 1563253, at *2 (N.D. Cal. Apr. 12, 2013), Apple "sought to have Samsung match its source code to Apple's contentions." The court held that request to be "unduly burdensome to Samsung and outside of its obligations." *Id.* Similarly, in *Trading Techs. Int'l, Inc. v. CQG, Inc.*, the plaintiff asked that the defendant be ordered to provide a Rule 30(b)(6) witness to identify the specific lines of code that controlled particular features of its product. Case No. 1:05-cv-4811, Minute Entry (N.D. Ill. May 16, 2013). The court rejected that request, noting that the defendant had already provided the plaintiff "with the source code as well as identified the filenames associated with the various functionalities described in the Notice of Deposition." *Id.* The court explained that "[n]othing in the Federal Rules of Civil Procedure requires a corporate witness to prepare in the manner which [the plaintiff] seeks and the burden of proof remains with the plaintiff to investigate and prove its claims." *Id.*

On the other hand, some courts have resolved such discovery disputes involving interrogatory responses or Rule 30(b)(6) witnesses, by requiring the defendant to do more than simply provide access to its source code. For example, in *Facedouble, Inc. v. Face.com, Inc.*, No. 12-cv-1584, 2014 WL 585868 (S.D. Cal. Feb. 13, 2014), the plaintiff served an interrogatory on the defendant asking for a narrative account of how the accused technology provides facial

6

recognition.  In response, the defendant relied on Fed. R. Civ. P. 33(d) and argued that it had satisfied its discovery obligations by producing a copy of its source code to the plaintiff.  The court held the mere production of the source code to be insufficient, commenting that the plaintiff "bears a substantially greater burden in determining how Defendant's software works by examining Defendant's source code than does Defendant."  *Id.* at *2.

Accordingly, the court required the defendant "to provide a guide or road map to its source code to Plaintiff.  That guide may be narrative, may be an index or may be something akin to a detailed table of contents."  *Id.*; *see also Personal Audio, LLC v. Apple, Inc.*, Civil Action No. 9:09-cv-111, 2010 WL 9499679, at *3 (E.D. Tex. June 1, 2010) (requiring the defendant to respond to interrogatories about how its products work because the production of the source code alone did not satisfy the defendant's obligation to answer the interrogatories); *LaserDynamics, Inc. v. Asus Computer Int'l*, No. 2:06-cv-348, 2009 WL 153161, at *2 (E.D. Tex. Jan. 21, 2009) (rejecting defendants' contention that they have no obligation to provide a narrative description of how their accused disc drives work because they have produced the source code:  "It is implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate."); *Timeline, Inc. v. Proclarity Corp.*, No. C 05-1013, 2007 WL 2193598, at *1 (W.D. Wash. July 31, 2007) (requiring Microsoft to produce a Rule 30(b)(6) witness to testify about the source code that relates to specified functions and features of its own product, and to at least "generally point to modules within the code which contain certain features" but that "[i]f the location of the specified source code cannot be identified by Microsoft's designee(s) despite reasonably thorough and good faith preparation efforts, the designated witness or witnesses may testify why that is so at the deposition." (internal cites and quotes omitted)).

The court in *Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, Case No. CV 12-1971, 2013 WL 3361241 (N.D. Cal. July 3, 2013), similarly noted that for a disclosure to be sufficient to show the operation of an accused function, "it must be accompanied by the tools necessary to allow the receiving party to decipher the documents and discern which documents refer to which elements or aspects of the accused instrumentalities." *Id.* at *5 (citing cases). The court ruled that the defendant was not required to provide source code citations to identify where its product allegedly infringes, because it had made its source code available for inspection and had "identified specific bates-references to documents" responding to all of the plaintiff's interrogatories. *Id.* at *6.

As indicated by the representative cases described above, courts addressing the scope of a party's responsibilities under Rule 30(b)(6) have looked to the underlying principle of Rule 30(b)(6), which is to require a defendant organization to provide a witness who can testify to matters known to the organization or "reasonably available" to the corporation. Fed. R. Civ. P. 30(b)(6). As also indicated by the cases described above, the concept of reasonable availability requires the court to weigh the parties' respective knowledge, including the relative abilities of the parties to develop the information, the burden that preparing a witness on the particular topic would impose on the organization, and the importance of the requested information. *See also* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2103 (3d ed. 2010).

Applying those principles to the circumstances of this case is challenging because the parties have not offered much specificity about the degree to which the materials that Match Group has already produced provide guidance to the source code, or the extent to which information regarding the specifics of the source code is known to, or reasonably available to, persons within Match Group.

BT contends that in its discussions with Match Group regarding the source code topics, Match Group has taken the position that it has no obligation to produce a Rule 30(b)(6) witness on those topics because Match Group "allegedly [has] no one who knows how the source code for any of their three products at issue works." Dkt. No. 173, at 14. BT asserts that it finds that representation implausible.

Match Group responds that "literal enforcement of BT's topics" would be "impossible" because it would "require Match Group witnesses to develop knowledge of . . . all source code (by filename and line number) that is relevant to each of the features and algorithms described in the notices, all revisions of that source code over seven years, and all persons who prepared the source code and the nature of their involvement." Dkt. No. 176, at 3, 5. Match Group adds that it has already produced "24,000 pages of technical documents relating to the algorithms identified in BT's infringement contentions," including documents "that describe various aspects of the accused source code algorithms," samples of which Match Group has provided as exhibits to its reply brief. *Id.* at 5–6 (citing Dkt. No. 176-1, Exhs. 2, 3, and 4).

I have examined the exhibits provided by Match Group, which Match Group says is a representative sample of the documents it has produced to BT describing the operation of Match Group's algorithms. The exhibits span about 400 pages of descriptive material, some portions of which provide information at a high level of generality, but other portions of which appear to address the detailed operation of the algorithms in dispute.

Without a detailed explanation of that material, it is difficult to assess Match Group's claim that the information provides a satisfactory explanation of the operation of the accused systems. Based on the parties' presentations, however, I am satisfied that Match Group has provided BT with adequate access to Match Group's source code and has provided at least some supplemental

information explaining how the source code implements the algorithms for the three accused systems. I also find that the Rule 30(b)(6) topics set forth in the second, fourth, and sixth deposition notices, which pertain to the source code, demand more by way of detail than is reasonable under the circumstances, such as the requirement that Match Group's designated witness or witnesses identify all source code for each accused system "by filename and line number, relevant to each of the features or algorithms" listed in the deposition notices.

Accordingly, I will not require Match Group to produce a Rule 30(b)(6) witness or witnesses to address the source code topics in the detail demanded in the source code deposition notices. Match Group's obligation under Rule 30(b)(6) will be satisfied if it produces one or more Rule 30(b)(6) witnesses to testify as to whatever knowledge there is within the organization, or reasonably available to the organization, regarding the source code. Based on the information that the parties have provided to me in connection with the present motion, it is my expectation that Match Group should be able to produce a witness or witnesses who can provide at least a general description of which portions of the source code implement particular functionalities.

If there is knowledge on Match Group's part on how the source code implements various features of the system, either in light of the materials that have already been produced or from other reasonably available sources, Match Group should provide a witness or witnesses to testify to that knowledge. But Match Group is not required to generate information not already in Match Group's possession, or reasonably available to Match Group, to assist the plaintiffs in their examination of the source code. If the requested information cannot be identified by Match Group's designee(s) despite reasonably thorough and good faith preparation efforts, the designated witness or witnesses may testify why that is so at the deposition.

### c. Topics relating to damages

As for the 40 deposition topics directed to damages, Match Group objects that the topics seek testimony "regarding a vast range of detailed financial and business information relating to the three services." Dkt. No. 169, at 2. Other than that broad and generalized complaint, Match Group's motion raises only two specific objections to the damages-related topics: (1) that the topics extend to information pertaining to operations outside the United States, and (2) that they seek information about "'features or services that are paid for by subscribers' regardless of whether the feature is accused." *Id.*

Beyond those complaints, Match Group's only other objections to the damages topics are set forth in a single paragraph in its reply brief, consisting of four sentences. The first sentence asserts, without supporting detail, that the damages topics are unduly burdensome. The next two sentences argue that BT has not shown that Match Group's documentary production regarding damages has been insufficient. Dkt. No. 176, at 7. That observation, however, is largely irrelevant to the scope of BT's inquiries regarding damages. That is because BT is not restricted to assembling its damages case based on Match Group's documentary production, no matter how complete that production may have been. To the extent that knowledge as to the topics relating to damages is reasonably available to Match Group, BT is entitled to probe that knowledge through a Rule 30(b)(6) deposition. The final sentence on the damages topics in Match Group's reply brief consists of Match Group's conclusory assertion that "BT fails to justify its excessive damages deposition topics." *Id.*

The general assertion that the damages topics are "excessive" is of very little help in assessing the legitimacy of a large set of deposition topics. In essence, such an assertion calls for the judge to conduct an unguided, itemized examination of every topic, without the context of

specific argument and evidence as to why any topic is inappropriate for a Rule 30(b)(6) deposition. The court rejects that sweeping claim for lack of specificity.

Notwithstanding the lack of specificity in Match Group's complaint, I have reviewed the topics directed to damages to determine whether they seem excessive or unduly burdensome on their face. I conclude that they are not. To be sure, those topics call for a great deal of information relating to the costs and revenues directly and indirectly related to the accused systems. Nonetheless, the topics are generally directed to information that could be relevant to BT's damages case, so the general claim of excessiveness is not persuasive.

With respect to topics seeking information about foreign operations and systems that are not accused, however, BT has not explained why that information is pertinent to its damages case. Accordingly, to the extent that the damages topics call for information about revenues and expenses relating to foreign operations or features that are not accused in this case, Match Group will not be required to produce a Rule 30(b)(6) witness to testify on those subjects. Match Group will otherwise be required to provide a witness or witnesses to testify on the topics set forth in the Seventh Rule 30(b)(6) Notice of Deposition, except as to the further limitations discussed below.

### d. Topics regarding witness preparation

Each of BT's Rule 30(b)(6) deposition notices includes topics regarding the steps taken by each designated witness to acquire knowledge about the topics for which they were designated. Match Group contends that those topics are improper because they seek information protected by the work product doctrine or attorney-client privilege. Dkt. No. 169, at 5.

In support of its objection, Match group cites the Third Circuit's decision in *Spork v. Peil*, 759 F.2d 312 (3d Cir. 1985), which held that the trial court committed clear error by ordering an inquiry into the selection and compilation of documents by counsel that are used to prepare a

witness for deposition in pretrial discovery because that inquiry "falls within the highly-protected category of opinion work product." *Id.* at 316–19. Match Group also relies on a statement in The Sedona Conference, *Commentary on Patent Litigation Best Practices: Discovery Chapter*, at 42 (Dec. 2015), that deposing counsel should not inquire into which specific documents, if any, were identified or provided to and discussed with the witness by counsel, as such an inquiry would invade the attorney-client privilege. BT responds that it offered to limit that topic to communications other than communications with counsel or documents identified, selected, or provided by counsel, but that Match Group declined the offer.

The rationale of the *Sporck* decision and the *Sedona Conference* statement is based on the assumption that the identification and selection of documents will be performed in consultation with counsel. If that is not the case, the reasons for the prohibition against inquiry do not apply. Thus, to the extent that counsel have participated in the selection and compilation of documents for the Rule 30(b)(6) witness or otherwise directed the witness's preparation for the deposition, BT will not be permitted to inquire into those subjects. Otherwise, BT's counsel may inquire into the steps taken by each witness to acquire knowledge in preparation for the deposition.

### e. Topics relating to Match Group's efforts to respond to discovery requests

Match Group also objects to topics, found in each of the seven deposition notices, inquiring about all efforts to locate, collect, organize, and produce documents in response to any discovery requests in the litigation, and the authenticity of any documents produced by Match Group in the litigation. BT responds that Match Group's failure to produce supporting documentation relating to the source code and Match Group's damages production has raised "serious concerns" about the thoroughness of Match Group's compliance with its discovery obligations. Dkt. No. 173, at

13. For that reason, BT argues, the topics that are directed to the efforts made to locate and produce documents should be permitted in this case. *See* Dkt. No. 173, at 13–14.

Match Group argues that a Rule 30(b)(6) deposition generally "should not be used to inquire into the opposing party's discovery process absent a threshold showing that significant, relevant, and non-cumulative information has been withheld or overlooked." Dkt. No. 169, at 6 (quoting *Sedona Conference*, at 43); *see also Freedman v. Weatherford Int'l Ltd.*, No. 12 Civ. 2121, 2014 WL 4547039, at *2–3 (S.D.N.Y. Sept. 12, 2014); *Miller v. York Risk Servs. Grp.,* No. 13-cv-1419, 2014 WL 1456349, at *2 (D. Ariz. Apr. 15, 2014); *Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*, No. 11-cv-3684, 2014 WL 1494517, at *4 (D.N.J. Apr. 16, 2014) (granting motion for protective order against deposition of discovery witness where the moving party failed to show a "material[] deficiency" in the responding party's e-discovery process); *Orillaneda v. French Culinary Inst.*, No. 07-cv-3206, 2011 WL 4375365, at *6 (S.D.N.Y. Sept. 19, 2011); *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) ("Courts supervising discovery are often confronted by the claim that the production made is so paltry that there must be more that has not been produced or that was destroyed. Speculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end. Instead of chasing the theoretical possibility that additional documents exist, courts have insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed.").

BT's complaints about Match Group's document production are not sufficiently supported to justify the kind of discovery on discovery that is proposed in the topics directed to document production. The court grants Match Group's request for a protective order as to those topics.

### f. Topics relating to Match Group's legal contentions regarding a reasonable royalty

Match Group argues that topics 31 and 33 of the Seventh Rule 30(b)(6) Notice of Deposition call for testimony "on Match Group's contentions regarding a reasonable royalty" and that questions inquiring about Match Group's legal contentions are improper. Dkt. No. 169, at 7. The problem with Match Group's position on that issue is that those topics do not actually call for testimony about Match Group's contentions. Topic 31 seeks information about any studies Match Group may have conducted "relating to a reasonable royalty to be paid for clearance under the '105 patent," and topic 33 calls for testimony "regarding customary royalty rates or royalty structures in the industry for patent rights." Dkt. No. 169-1, Exh. 7, at Topics 31 & 33.

To be sure, topic 31 calls for information that might include Match Group's analysis of the extent of its potential liability in this case, since topic 31 is directed to materials related to any analysis of a reasonable royalty for the '105 patent. As such, it seems likely that topic 31 would call for the disclosure of materials subject to the attorney-client or work-product privileges. However, that is not an issue that can be resolved simply on the basis of Match Group's objection that the topic calls for contention information. To the extent that topic 31 calls for the disclosure of privileged information, Match Group can object on that ground and decline to produce the information in question.

Topic 33 is even more remote from seeking contention information. It simply asks about analyses "regarding customary royalty rates or royalty structures in the industry for patent rights." While that line of inquiry seems likely to be of only marginal relevance, it is not impermissible on the ground that it calls for testimony about Match Group's contentions in the litigation. I will therefore not extend the protective order to that topic.

## 2. The Depositions of Ms. Ginsberg and Mr. Thombre

Match Group seeks a protective order regarding the noticed depositions of Ms. Ginsberg and Mr. Thombre. Match Group has consented to a deposition of Mr. Thombre, as long as the deposition is limited to two hours. Match Group resists the deposition of Ms. Ginsberg altogether. In so doing, Match Group relies on the so-called apex doctrine, under which courts have held that depositions of high-ranking corporate and governmental officers will be allowed only upon a showing that those officers have particularly relevant information to offer that is not equally available from other, less burdensome sources. *See In re Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litig.*, Civil Action No. 14-mc-72, 2014 WL 3035791, at *2–3 (E.D. Pa. July 1, 2014); *see also id.* at *2 n.8 (citing cases); *Ford Motor Co. v. Edgewood Properties, Inc.*, Civil Action No. 06-1278, 2011 WL 677331, at *2 (D.N.J. Feb. 15, 2011) (citing cases within the Third Circuit); *Federal Practice & Procedure* § 2037.

Normally, courts will not allow an apex deposition if the high-ranking official does not have first-hand knowledge of relevant information, or if there are others equally well (or better) situated to provide such information. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681–82 (7th Cir. 2002); *Thomas v. Int'l Business Machines*, 48 F.3d 478, 482–84 (10th Cir. 1995); *Reif v. CNA*, 248 F.R.D. 448, 451–55 (E.D. Pa. 2008).

In this case, BT bases its argument for deposing Ms. Ginsberg on two articles, one containing information about Ms. Ginsberg and the other written by Ms. Ginsberg. The statements in the articles on which BT focuses are Ms. Ginsberg's statements about Match Group's strategy of focusing on users' actual behavior rather than their stated preferences. *See, e.g.*, Dkt. No. 169-1, Exh. 14, at 161 ("For example, if people say they prefer to date tall blondes but they're sending messages to short brunettes, our algorithm should recognize that and send them matches that reflect

actual activity patterns."). That distinction is an important component of BT's theory of infringement.

However, I am not convinced at this point based on those materials that Ms. Ginsberg has unique or personal knowledge as to relevant information, and that the information cannot be obtained through less burdensome means, in particular, the deposition of Mr. Thombre. For now, the court grants without prejudice Match Group's request to quash the deposition of Ms. Ginsberg.

As for Mr. Thombre, it appears that his involvement in the actual implementation of the programs was considerably greater than Ms. Ginsberg's. Although Match Group has agreed to submit him for a deposition of two hours, I believe that covering the larger amount of ground that will be required based on the subjects on which BT wishes to question him may take more than two hours. I therefore conclude that a deposition of up to four hours is justified. Of course, these time periods are predicated on the assumption that the depositions will proceed in a cooperative and efficient manner; if that assumption proves wrong, I will revisit the issue of the length of the depositions.

If the deposition of Mr. Thombre materially alters the factual landscape relevant to the request to depose Ms. Ginsberg, BT may request the Court to revisit its order regarding Ms. Ginsberg's deposition. For now, however, the Court believes it more prudent to exhaust other, less burdensome avenues of obtaining the information. *See, e.g.*, *Patterson*, 281 F.3d at 681–82; *Thomas*, 48 F.3d at 482–84; *Reif*, 248 F.R.D. at 451–55; *Affinity Lab of Texas v. Apple, Inc.,* No. C 09–4436, 2011 WL 1753982, at *10 (N.D. Cal. May 9, 2011); *Personal Audio*, 2010 WL 9499679, at *4; *Performance Sales & Mktg. LLC v. Lowe's Companies, Inc.*, No. 5:07-CV-00140, 2012 WL 4061680, at *3 (W.D.N.C. Sept. 14, 2012); *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282

F.R.D. 259, 264 (N.D. Cal. 2012); *United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. CV 06-3213, 2015 WL 4973626, at *3 (E.D. Pa. Aug. 20, 2015).

* * *

In sum, I grant Match Group's motion for a protective order in part and deny it in part. Specifically, I order the following:

(1) The request for protection against the deposition topics set forth in the first, third, and fifth deposition notices is denied except with respect to specific topics addressed below.

(2) The request for protection against the deposition topics set forth in the second, fourth, and sixth deposition notices is granted, except that Match Group will be required to provide a Rule 30(b)(6) witness or witnesses to testify about the pertinent source code to the extent that Match Group has knowledge, or can reasonably acquire knowledge, regarding the relationship between the source code and the accused functionalities.

(3) The request for protection against the deposition topics set forth in the seventh deposition notice is denied, except with respect to topics addressed below.

(4) The request for protection against the deposition topics directed to witness preparation for the deposition will be denied, except that BT will not be permitted to inquire into that subject to the extent that counsel have participated in the selection and compilation of documents for the Rule 30(b)(6) witness or otherwise directed the witness's preparation for the deposition.

(5) The request for protection against the deposition topics relating to Match Group's responses to discovery requests is granted.

(6) The request for protection against questions under topics 31 and 33 of the Seventh Rule 30(b)(6) Notice of Deposition is denied.

(7) The request to quash the deposition of Ms. Ginsberg is granted without prejudice. Mr. Thombre will be required to appear for a deposition of no more than four hours.

IT IS SO ORDERED.

SIGNED this 4th day of March, 2020.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE