IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRITISH TELECOMMUNICATIONS PLC,  )
  )
         Plaintiff,  )
  )
       v.  )         C.A. No. 18-366 (WCB)
  )
IAC/INTERACTIVECORP, MATCH  )
GROUP, INC., MATCH GROUP, LLC  )
and VIMEO, INC.,  )
  )
         Defendants.  )
  )

**MATCH GROUP, INC., MATCH GROUP, LLC, AND IAC/INTERACTIVECORP'S
OPENING BRIEF IN SUPPORT OF THEIR
<u>MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS</u>**

OF COUNSEL:

James S. Renard
Robert Greeson
Erik O. Janitens
Jacqueline G. Baker
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-2784
(214) 855-8000

Robert L. Hails
T. Cy Walker
Cassandra J. Simmons
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403
(202) 861-1500

April 30, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
ccucuzzella@mnat.com

*Attorneys for Defendants Match Group, Inc., Match
Group, LLC, and IAC/InterActiveCorp*

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDING.................................................... 1

II.   SUMMARY OF ARGUMENT ................................................................................ 1

III.  STATEMENT OF FACTS ...................................................................................... 3

IV.   LEGAL STANDARD .............................................................................................. 5

V.    ARGUMENT ........................................................................................................... 6

     A.    Welsh And Zhou Are Highly Material References.............................. 6

     B.    Defendants Acted Diligently................................................................ 8

     C.    Defendants' Supplement Will Not Unfairly Prejudice BT ................ 10

     D.    Defendants' Supplement Should Be Allowed As A Matter Of Policy ............... 13

     E.    The Pennypack Factors Weigh In Defendants' Favor ........................ 14

VI.   CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Lupin Ltd.*,
    No. CIV.A. 09-152-LPS, 2011 WL 1897322 (D. Del. May 19, 2011) ...................................15

*Abraxis BioScience, LLC v. Actavis, LLC*,
    No. CV 16-1925 (JMV), 2017 WL 2079647 (D.N.J. May 15, 2017)...............................12, 13

*Bayer Cropscience AG v. Dow AgroSciences LLC*,
    No. 10-1045 (RMB/JS), 2012 WL 12904381 (D. Del. Feb. 27, 2017) ............................5, 6, 8

*Digital Ally, Inc. v. Taser Int'l, Inc.*,
    No. 16-CV-2032-CM-TJJ, 2018 WL 1138283 (D. Kan. Mar. 2, 2018)..................7, 8, 10, 14

*In re Fetzima*,
    No. 2:17-CV-10230-ES-SCM, 2020 WL 468438 (D.N.J. Jan. 29, 2020) ..............................12

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
    No. C 03-1431, 2006 WL 1329997 (N.D. Cal. May 15, 2006) ...............................................13

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    No. 13-1668-LPS, 2017 WL 658469 (D. Del. Feb. 14, 2017)....................................................6

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
    No. 14-CV-00876-RS (JSC), 2016 WL 2855260 (N.D. Cal. May 13, 2016).........................10

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
    559 F.2d 894 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens
    Steel Co.*, 777 F.2d 113 (3d Cir. 1985) .........................................................................6, 14, 15

*O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006).....................................................................................5, 8, 10

*In re Papst Licensing GMBH & Co. KG Patent Litig.*,
    279 F. Supp. 3d 28 (D.D.C. 2017) .........................................................................................13

*Regents of the Univ. of Cal. v. Affymetrix, Inc.*,
    No. 17-CV-01394-H (NLS), 2018 WL 4053318 (S.D. Cal. Aug. 24, 2018)............................9

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
    No. 4:16-CV-00119-HSG (KAW), 2018 WL 5619743 (N.D. Cal. Oct. 29,
    2018) ......................................................................................................................................13

*Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*,
    No. 13-CV-05184-SBA (MEJ), 2014 WL 5499511 (N.D. Cal. Oct. 30, 2014) .....................14

*TFH Publications v. Doskocil Mfg. Co., Inc.*,
    705 F. Supp. 2d 361 (D.N.J. 2010) ........................................................................................10

*TQ Delta, LLC v. 2Wire, Inc.*,
    No. CV 13-1835-RGA, 2019 WL 1529952 (D. Del. Apr. 9, 2019) ........................................14

*U.S. v. Glaxo Group Ltd.*,
    410 U.S. 52 (1973).................................................................................................................15

*Yodlee, Inc. v. CashEdge, Inc.*,
    No. C05-01550 SI, 2007 WL 1454259 (N.D. Cal. May 17, 2007)...........................6, 9, 12, 14

*Zoltar Satellite Alarm Sys., Inc. v. Motorola, Inc.*,
    No. C06-00044 JW (HRL), 2008 WL 913326 (N.D. Cal. Apr. 2, 2008) ...............................13

**Rules and Statutes**

35 U.S.C. § 102.......................................................................................................................1, 2, 7

Fed. R. Civ. P. 26(e) ...................................................................................................................6, 14

Federal Rule of Civil Procedure 26(a) .............................................................................................6

**I.**
## NATURE AND STAGE OF THE PROCEEDING

Pursuant to the Court's January 17, 2020, oral order explaining that Defendants could seek leave to amend their invalidity contentions upon a showing of good cause, Defendants Match Group, Inc.; Match Group, LLC; and IAC/InterActiveCorp (collectively, "Defendants") respectfully request that the Court grant them leave to supplement their invalidity contentions served on February 28, 2020, to include claim charts corresponding to two anticipatory prior art references:  (1) European Patent Publication No. 2,354,089, entitled "Artificial Intelligence User Profiling" ("Zhou"); and (2) U.S. Patent No. 6,757,691, entitled "Predicting Content Choices By Searching A Profile Database" ("Welsh").  There is good cause to supplement because Zhou and Welsh are highly material to Defendants' defenses to Plaintiff British Telecommunications PLC's ("BT") infringement allegations, Defendants were diligent in identifying the need to supplement and in bringing the issue to BT's attention, and allowing Defendants to supplement will not cause BT undue prejudice.

**II.**
## SUMMARY OF ARGUMENT

First, Zhou and Welsh are highly material references because – from any reasonable viewpoint – and particularly in view of the Court's claim construction – each anticipates the asserted claims of the '105 Patent under 35 U.S.C. § 102.  Therefore, their inclusion is a case-dispositive issue.

Second, Defendants were diligent in searching for and identifying prior art to be charted in their contentions.  Once Defendants determined that they should supplement their contentions, they immediately disclosed on April 2, 2020, their intent to do to so by sending to BT copies of Zhou and Welsh and requesting to confer on the issue.  *See* Greeson Decl., Ex. A, ¶¶ 6-8.  After

the parties conferred on April 7, 2020, Defendants worked diligently to develop detailed Zhou and Welsh claim charts and to draft this Motion. *Id.* ¶¶ 8-9.

Third, BT will not suffer undue prejudice because Defendants' request is modest—BT is already quite familiar with Zhou – so only Welsh is new. In fact, BT has long known that Zhou is prior art: (1) it was cited in an office action during prosecution of the '105 Patent's European counterpart,[1] which BT subsequently abandoned; and (2) Defendants have already raised Zhou as prior art in this litigation. Defendants provided a claim chart based on Zhou in combination with other prior art in their contentions served on November 27, 2019, and explained that Zhou describes several claim features in their contentions served on February 28, 2020. *See* Ex. O19 to Final Invalidity Contentions (Nov. 27, 2019), Ex. B; Revised Final Invalidity Contentions (Feb. 28, 2020), Ex. C, at 51-72. As such, Defendants will rely upon Zhou as anticipatory prior art in their expert report and dispositive motions. However, Defendants now seek leave only to include a revised chart that clearly maps Zhou to the asserted claims on an element-by-element basis in order to demonstrate its individual significance. Doing so is important because this litigation should not continue if BT objectively evaluates Zhou's application to the asserted claims. Regarding Welsh, Defendants' counsel continued to search for prior art during this litigation and recently identified Welsh as anticipatory prior art. Thereafter, on the same day Defendants notified BT's counsel of Zhou, they also notified BT's counsel of Welsh and of their intent to supplement their contentions with a claim chart corresponding to same. Like Zhou, Welsh constitutes invalidating prior art under 35 U.S.C. § 102.

Moreover, BT will not be unfairly prejudiced because expert discovery has not begun: opening reports are due June 5th, rebuttal reports are due June 26th, reply reports are due July

---

[1]  Published as European Patent Publication GB 2,396,934 prior to abandonment.

17th, and expert depositions will run into August.  *See* D.I. 197.  Therefore, Defendants'
supplementation will not disrupt the case schedule and BT will have ample time to conduct
discovery regarding the new clam charts and address them in its expert report.  In view of the
foregoing, good cause exists for Defendants to supplement their contentions with charts
corresponding to Zhou and Welsh.

### III.
### STATEMENT OF FACTS

To date, BT and Defendants have each served three sets of contentions.  BT served its
Preliminary Infringement Contentions in March 2019, its First Supplemental Infringement
Contentions in September 2019, and its Final Infringement Contentions in October 2019.
Defendants served their Preliminary Invalidity Contentions in April 2019 and their Final
Invalidity Contentions in November 2019.  On January 17, 2020, the Court ordered Defendants
to revise their November 2019 invalidity contentions to include a maximum of 15 references.
*See* Transcript of Telephonic Hearing (Jan. 17, 2020), Ex. C, at 55:8-56:2.  At that time, the
Court also noted that Defendants could subsequently seek to modify that limit to include
additional references upon a showing of good cause.  *Id*.  On February 28, 2020, Defendants
served their Final Revised Invalidity Contentions.  *See* D.I. 180.[2]  Defendants' Final Revised
Contentions were accompanied by claim charts based on the following eight primary prior art
references (alone or in combination with other prior art):

---

[2]    *See* Revised Final Invalidity Contentions (Feb. 28, 2020), Ex. D (excluding exhibit charts
originally attached to the Revised Final Invalidity Contentions) (noting that "Defendants'
discovery and investigation in connection with this lawsuit and the '105 Patent are continuing,
and thus . . . Defendants reserve the right, to the extent permitted by the Court and the
applicable statutes and rules, to revise, amend, and/or supplement the information provided
herein, including identifying and relying on additional prior art references should Defendants'
further search and analysis yield additional information or references, consistent with the
Court's orders, the Civil and Patent Local Rules of the District Court of Delaware, and the
Federal Rules of Civil Procedure").

- Amazon.com's Recommendation Algorithm ("Amazon.com System");

- Azvine, B., Azarmi, N., and Tsui, K.C., *Soft computing - a tool for building intelligent systems*, BT Technology Journal, vol. 14, no. 4 (1996) ("Azvine");

- Bogonikolos, N., Makris, C., Tsakalidis, A. and Vassiliadis, B., *Adapting information presentation and retrieval through user modelling*, In Information Technology: Coding and Computing, 2001 Proceedings International Conference (pp. 399-404) (2001) ("Bogonikolos")

- Burke, R., *Hybrid Recommender Systems: Survey and Experiments*, in User modeling and user-adapted interaction (pp, 331-370) (2001) ("Burke II");

- Claypool, M., et al., *Combining content-based and collaborative filters in an online newspaper*, In ACM SIGIR Workshop on Recommender Systems – Implementation and Evaluation (1999) ("Claypool");

- Pazzani, M., *A framework for collaborative, content-based and demographic filtering*, In Artificial Intelligence Review 13 (pp. 393-408) (1999) ("Pazzani-1999");

- U.S. Patent No. 6,266,649 to Linden *et al.* (2001) ("Linden"); and

- U.S. Patent App. No. 2002/0040310 to Lieben *et al.* (2002) ("Lieben").

Defendants engaged Norton Rose Fulbright US LLP ("NRF") to represent them in this litigation around the time they served their most recent contentions. And NRF appeared the same day Defendants served those contentions. *See* D.I. 179 (granting *pro hac vice* motions for counsel from NRF on February 28, 2020, the same day Defendants served their Final Revised Invalidity Contentions). Although NRF was not involved in researching or drafting the contentions served on February 28, 2020, it began reviewing those contentions, the accompanying claim charts, and the prior art references discussed therein on that same day. *See* Greeson Decl., Ex. A, ¶ 4. On February 28, 2020, Defendants' new counsel hired a third-party service to search for additional prior art and commenced its own search. *Id.* It also began reviewing the '105 Patent, its file history, the Court's claim construction order, and BT's infringement contentions to develop its understanding of BT's infringement theories and what it alleges is covered by the '105 Patent. *Id.* Defendants' new counsel continued to search for and

- 4 -

identify relevant prior art based on its own, independent understanding of the '105 Patent's claims, as construed by the Court, as well as BT's infringement theories.  *Id.*

As a result of this work, Defendants' counsel identified Zhou and Welsh as anticipatory prior art on or about March 14, 2020.  *Id.* ¶ 5.  In the two weeks that followed, counsel continued to study Zhou's and Welsh's relevance, along with other prior art, and began comparing both Zhou and Welsh to the asserted claims in more detail.  *Id.*

After determining that Zhou and Welsh should be included in its contentions, Defendants' counsel promptly notified BT's counsel of their intent to supplement their contentions and provided BT's counsel with copies of Zhou and Welsh.  Specifically, on or about March 31, 2020, Defendants determined that it was necessary to supplement their contentions.  *Id.* ¶ 6.  And two days later, on April 2, 2020, Defendants' counsel notified BT's counsel of their intent to file this Motion, requested a meet and confer, and sent copies of Zhou and Welsh for consideration.  *Id.* ¶ 7.  The parties met and conferred on April 7, 2020, and BT's counsel indicated that it would oppose this Motion.  *Id.* ¶ 8.  Defendants then drafted this Motion and continued to develop detailed claim charts based on Zhou and Welsh.  *Id.* ¶ 9; *see* Zhou Claim Chart, Ex. E; *see* Welsh Claim Chart, Ex. F.

## IV.
## LEGAL STANDARD

A cornerstone of a motion for leave to amend invalidity contentions is good cause.  *See O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006); *Bayer Cropscience AG v. Dow AgroSciences LLC*, No. 10-1045 (RMB/JS), 2012 WL 12904381, at *1 (D. Del. Feb. 27, 2017) (applying case law from New Jersey district court to interpret the definition of "good cause" because there is a "dearth of Delaware cases interpreting what 'good cause' means" in the context of amending contentions).  To show good cause, a party seeking to

amend its contentions ordinarily must show: (1) its diligence; and (2) lack of unfair prejudice to the non-movant. *Bayer Cropscience AG*, 2012 WL 12904381, at \*2-\*3. Courts have also considered additional factors, such as the materiality of the newly discovered prior art. *Yodlee, Inc. v. CashEdge, Inc.,* No. C05-01550 SI, 2007 WL 1454259, at \*2 (N.D. Cal. May 17, 2007). Finally, Rule 26(e) may require supplementation,[3] in which case the Court should consider the *Pennypack* factors, which also weigh in favor of granting Defendants leave to supplement their contentions.[4]

## V.
## ARGUMENT

As demonstrated below, good cause exists for Defendants to supplement their contentions because: (1) Zhou and Welsh are anticipatory and therefore highly important to the outcome of this litigation; (2) Defendants acted diligently in discovering and notifying BT of the need to supplement; and (3) BT will not be unfairly prejudiced by Defendants' proposed supplement. Finally, to the extent the Court considers the *Pennypack* factors, they weigh in favor of granting Defendants leave to supplement their contentions.

### A.    Welsh And Zhou Are Highly Material References.

In considering good cause, in addition to diligence and unfair prejudice—discussed in detail below—courts may examine other factors, like the "the relevance of the newly discovered

---

[3]  In addition, Rule 26 imposes an affirmative obligation on defendants to serve amended contentions. *See* Fed. R. Civ. P. 26(e)(1) (a party must "supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete . . . .").

[4]  At least one judge in this District has construed infringement contentions as akin to "'initial disclosures' under Federal Rule of Civil Procedure 26(a)," which Rule 26(e) requires a party to supplement. *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 13-1668-LPS, 2017 WL 658469, at \*1 (D. Del. Feb. 14, 2017) (applying "*Pennypack*" factors in deciding whether to strike plaintiff's amended infringement contentions). Defendants also include an analysis of the *Pennypack* factors in Section V.E. below.

prior art, the difficulty in obtaining such prior art, and whether the motion appears to be motivated by gamesmanship." *Digital Ally, Inc. v. Taser Int'l, Inc.*, No. 16-CV-2032-CM-TJJ, 2018 WL 1138283, at *3 (D. Kan. Mar. 2, 2018) (internal citations omitted). From any reasonable viewpoint, Zhou and Welsh anticipate the asserted claims under 35 U.S.C. § 102 giving them their "broadest reasonable interpretation"[5] and as construed by the Court. And the attached claim charts speak for themselves.

Zhou explicitly describes every element of the asserted claims. Notably, Zhou describes a method and system that solves the problem identified in the '105 Patent in the same way as the invention embodied in the '105 Patent's claims. That is, both Zhou and the '105 Patent's clams update a user profile using two sets of rules, as opposed to one set of rules. As the Court recognized, "according to the inventors, this two-rule method for updating user profiles was an improvement over prior art systems, . . . ." D.I. 131 at 2. And according to Zhou, its first set of rules (i.e., fact evidential logic rules) is weighted according to a set of personalized rule weightings (i.e., common sense support values, $Sup_n$), which are generated according to its second set of rules (i.e., common sense rules) and user preference data (i.e., activity data, which is described as representing user likes / dislikes). Zhou's inference engine (i.e., artificial intelligence engine) infers and outputs updates to a user profile according to its fact evidential logic rules and user activity.

Both Zhou and the '105 Patent, in their respective specifications, describe personalizing the user profile update process in the same way. It is not surprising, then, that the claims of the '105 Patent also closely track the claims of Zhou. In other words, not only does Zhou describe

---

[5]    Defendants will soon file an ex parte request reexamination of the '105 Patent, where the U.S. Patent & Trademark Office will afford the claims their broadest reasonable interpretation.

each element of the '105 Patent's claims, but it actually claims the same invention. *Compare, e.g.*, '105 Patent claim 10 to Zhou claim 1.

Welsh also explicitly describes every element of the asserted claims. And it also uses two sets of rules to update a user profile. According to Welsh, it (1) stores a first set of rules (i.e., rules 914 expressed as rule set 916); (2) applies personalized rule weightings to rule set 916 according to a second set of rules (i.e., meta-rules that are stored in a meta-rule database) and user preference data (i.e., preference information provided by or gathered from the user); and (3) receives information reflecting user activity at its monitor agent 724, which monitors user sessions 725 to capture use patterns. Welsh's inference engine (i.e., predictive content system 722) infers and outputs a user profile according to rule set 916 that is re-weighted according to the personalized rule weightings (e.g., the output of some rules 914 in set 916 are set to zero and the output of some rules 914 in set 916 are set to 1) and using the user pattern information received at monitor agent 724. Updating the user's profile allows Welsh's system to present customized content to the user.

## B. Defendants Acted Diligently.

A primary consideration in determining whether good cause exists is the moving party's diligence. *O2 Micro*, 467 F.3d at 1363-68; *Bayer Cropscience AG*, 2012 WL 12904381, at *1. And diligence has two components: (1) whether the moving party acted diligently to discover that a supplement or amendment was appropriate; and (2) whether the moving party promptly moved to amend its contentions after it learned an amendment was necessary. *Bayer Cropscience AG*, 2012 WL 12904381, at *2. But a movant "does not have to demonstrate perfect diligence in order to show good cause for an amendment." *Id*. at *2. Rather, only "reasonable" diligence is required. *Id*.; *Digital Ally, Inc.*, 2018 WL 1138283, at *5 (explaining

same and finding that although "[d]efendant admittedly failed to find the [new] reference in its earlier prior art searches, [that fact] does not, by itself, demonstrate a lack of diligence").

As explained above, Defendants acted diligently in both respects.  <u>First</u>, Defendants' counsel was diligent in determining whether a supplement to the contentions was necessary. NRF began reviewing the invalidity contentions and related documents the same day it entered this litigation and the contentions were served.  *See* Greeson Decl., Ex. A, ¶ 4.  NRF promptly identified Zhou and Welsh as anticipatory prior art in mid-March and continued studying their relevance, comparing both to the asserted claims in more detail.  *Id*. ¶ 5.  <u>Second</u>, Defendants' counsel was diligent in notifying BT's counsel of their intent to supplement their contentions. When Defendants determined that it was necessary to supplement their contentions, Defendants' counsel quickly notified BT's counsel of their intent to file this Motion, requested a meet and confer, and sent copies of Zhou and Welsh to BT's counsel for consideration.  *Id*. ¶ 7.  After the parties conferred, NRF drafted this Motion and continued to develop detailed claim charts based on Zhou and Welsh.  *Id*. ¶ 9; s*ee* Exs. D and E.

Motions for leave to amend final invalidity contentions have been granted where new counsel, appointed after final invalidity contentions are served, identifies new prior art.  For example, in *Yodlee, Inc. v. CashEdge, Inc.*, No. C05-01550 SI, 2007 WL 1454259, at *1 (N.D. Cal. May 17, 2007), the court found that good cause existed to amend defendant's final invalidity contentions where—just one month after serving its final invalidity contentions—defendant appointed new counsel who, two weeks after appearing in the case, discovered significant new prior art that had not been included in defendant's final invalidity contentions.  After discovering the new prior art, defendant's new counsel investigated its findings for nearly a month before

filing a motion for leave to amend its final invalidity contentions.  *Id.*[6]  Defendants do not claim that hiring new counsel alone constitutes good cause; however, considering both the timing of NRF's engagement and the overall case schedule, a finding of reasonable diligence is appropriate.

Defendants' diligence contrasts with the situation in *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006), where the plaintiff waited *three months* after its discovery that its infringement theory was flawed to seek leave of the court to amend its final infringement contentions.  Here, Defendants' counsel promptly investigated the '105 Patent and informed BT's counsel that Zhou and Welsh were highly material and that Defendants intended to supplement their contentions to include charts corresponding to both.

## C. Defendants' Supplement Will Not Unfairly Prejudice BT.

To determine whether a proposed amendment would unfairly prejudice an opposing party, courts generally consider whether the proposed amendments will (1) significantly delay resolution of the dispute or (2) require the opposing party to expend significant additional resources.  *See, e.g.*, *TFH Publications v. Doskocil Mfg. Co., Inc*., 705 F. Supp. 2d 361, 366 (D.N.J. 2010).  Here, Defendants' proposed amendments will do neither.

---

[6]  Other courts have allowed amendments to occur several months after the grounds for amendment are discovered.  *See Regents of the Univ. of Cal. v. Affymetrix, Inc.*, No. 17-CV-01394-H (NLS), 2018 WL 4053318, at *3 (S.D. Cal. Aug. 24, 2018) ("The less than two months period between the time Defendants discovered the references at issue and the time Defendants gave Plaintiffs notice of their intent to amend their invalidity contentions is reasonable and establishes Defendants' diligence in seeking leave to amend."); *Digital Ally*, 2018 WL 1138283, at *6 (finding that defendant was diligent in seeking leave to amend its invalidity contentions where it discovered the new reference on September 20, 2017 and notified plaintiff's counsel of the reference and provided plaintiff's counsel with a copy of its proposed supplemental invalidity contentions on October 31, 2017); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2016 WL 2855260, at *7 (N.D. Cal. May 13, 2016) (finding diligence where the defendant moved for leave to amend within two months of discovering the references at issue and within one month of filing its IPR petition).

First, as mentioned, Defendants' request is modest—BT is already familiar with Zhou – so only Welsh is new.  As such, BT cannot reasonably argue that it will expend significant additional resources in addressing a single new prior art reference.  Second, BT has long known about Zhou: the European patent office cited it in an office action during prosecution of the '105 Patent's European counterpart application,[7] which BT subsequently abandoned.[8]  It appears that Zhou was the *only* additional prior art reference cited against the European counterpart after substantive examination began (i.e., after a request for substantive examination was filed) and before it was abandoned.[9]  BT even submitted Zhou to the U.S. Patent and Trademark Office in an Information Disclosure Statement ("IDS") during prosecution of the '105 Patent, although it was never made of record because the Examiner did not review the IDS until two months <u>after</u> the claims were allowed.  *See* May 9, 2007, IDS, Ex. J.  Moreover, Defendants charted Zhou in combination with other prior art in their November 27, 2019, invalidity contentions, and discussed it at length in their February 28, 2020, invalidity contentions. *See* Exs. B and C.[10]

---

[7]  *See* Applicant's Amendment dated January 3, 2006 ("The Examiner's attention is also directed to . . . GB 2,354,089 (Sony) cited in an Office Action relating to a corresponding UK application."), Ex. G at 11.

[8]  *See* Online Patent Information and Document Inspection Service (showing GB 2,396,934 was abandoned prior to grant), Ex. H.

[9]  On April 8, 2020, Defendants served their Second Set of Requests for Production (Ex. I), seeking documents related to the prosecution of any foreign counterparts, including GB 2,396,934, which is not publicly available.  Defendants will have a better understanding of the file history once produced by BT.

[10]  *See* Ex. C at 50-51 (Zhou and other "Event Statistics References" "teach the receipt, retrieval, observation, and/or monitoring of a user's activity or other information . . . reflecting user activity"); *id.* at 54, 56 (Zhou and other "Rule Sets References" "teach a first set of rules that is used to update a user profile and a second set of rules used to adjust personalized rule weightings"); *id.* at 59, 61 (Zhou and other "Inference Engine References" "teach an inference engine or other software program that employs first rules and weightings to those first rules and infers an update to a user profile"); *id.* at 65-66 (Zhou and other "User Preferences References" "teach user preferences or other data reflecting user preferences that is used to personalize a part of the process for updating the user profile"); *id.* at 70, 72 (Zhou and other

Additionally, no deadlines will be affected by the supplementation.  BT will have sufficient time to address any new claim charts before the close of expert discovery and before the issues are decided on their merits.  Fact discovery is ongoing and closes on May 22, 2020, and expert discovery does not close until August 7, 2020.  *See* D.I. 197.  No expert depositions have occurred and initial expert reports are due on June 5, 2020, rebuttal reports are due on June 26, 2020, and reply reports are due on July 17, 2020.  *Id*.  As such, BT will have several weeks to address the new charts in its invalidity rebuttal report (due on June 26, 2020).  *Id*.  Further, dispositive motions are not due until August 14, 2020, and trial is almost seven months away. *Id*.

Courts have allowed amendments to invalidity contentions where the proposed amendment occurs before the close of fact and expert discovery.  *See In re Fetzima*, No. 2:17-CV-10230-ES-SCM, 2020 WL 468438, at *5 (D.N.J. Jan. 29, 2020) (granting leave to amend invalidity contentions where leave was sought "before fact discovery closed, and [where] there [was] still several months before expert discovery will close"); *Abraxis BioScience, LLC v. Actavis, LLC*, No. CV 16-1925 (JMV), 2017 WL 2079647, at *4 (D.N.J. May 15, 2017) (granting leave to amend where "discovery [was] still in the early stages, despite the scheduling order", "[f]act depositions h[ad] not yet commenced", opening expert reports were not due for three months, and "no pending claim construction motion or dispositive motion . . . would be impacted by the amendments."); *Yodlee*, 2007 WL 1454259, at *3 (allowing amendment where defendant notified plaintiff of the new prior art over two months before the fact discovery cutoff and explaining that "should [plaintiff] require more time to conduct discovery related to the

---

"Rule Weighting References" teach personalized rule weightings or weights that are derived from the user preference data and are applied to the output of the first set of rules to determine and output the update to the user profile").

newly discovered prior art, the Court w[ould] consider a request . . . for an appropriate extension of the discovery cutoff to do so").

Defendants' proposed amendments will not require BT to expend any additional resources because expert discovery has not yet begun, and any supplementation at this stage (particularly adding only a single new reference) requires no duplication of effort on the part of either party, even though BT will have to review additional charts.  *See Abraxis BioScience*, 2017 WL 2079647, at *4 ("[T]he fact that some additional work may be required does not constitute undue prejudice."); *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 4:16-CV-00119-HSG (KAW), 2018 WL 5619743, at *5 (N.D. Cal. Oct. 29, 2018) (finding no unfair prejudice where plaintiff claimed it would have to conduct additional burdensome expert discovery and notice last-minute depositions to adjust its arguments to potential new invalidity theories in part because – although fact discovery was closed – plaintiff's responsive invalidity expert reports were not due for two months).  Therefore, BT will not be unfairly prejudiced by the proposed amendments.

**D.    Defendants' Supplement Should Be Allowed As A Matter Of Policy.**

Questions of patent validity are of broad public importance and thus merit consideration here.  *See, e.g.*, *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431, 2006 WL 1329997, at *6 (N.D. Cal. May 15, 2006) (explaining that "the Federal Circuit strongly encourages district courts to decide issues pertaining to invalidity when those issues have been presented to the court, particularly because patent validity has important public implications").  These public interest implications weigh in favor of granting leave to amend invalidity contentions where, as here, the facts demonstrate only a "modest delay in identifying the issue" requiring supplementation.  *In re Papst Licensing GMBH & Co. KG Patent Litig.*, 279 F. Supp.

3d 28, 37 (D.D.C. 2017).  Moreover, where there is little threat of unfair prejudice, public policy also supports amendment, as it "will advance fair resolution of the issues on the merits."  *Zoltar Satellite Alarm Sys., Inc. v. Motorola, Inc.*, No. C06-00044 JW (HRL), 2008 WL 913326, at *3 (N.D. Cal. Apr. 2, 2008).  Here, therefore, public policy weighs in favor of granting Defendants leave to amend their invalidity contentions.

Finally, Defendants' request to amend is not improperly motivated.  Although courts generally protect against amendments in order to prevent the parties from shifting their theories in reaction to adverse substantive rulings or late in discovery, they frequently allow amendments when "the request to amend d[oes] not appear to be motivated by gamesmanship, or where there [is] still ample time left in discovery."  *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-CV-05184-SBA (MEJ), 2014 WL 5499511, at *3 (N.D. Cal. Oct. 30, 2014) (internal quotations and citations omitted); *Digital Ally, Inc.*, 2018 WL 1138283, at *7 (explaining that the court did not find a defendant's "request to amend its invalidity contentions for a single prior art reference to be motivated by gamesmanship").  Here, these considerations support granting Defendants leave to amend their contentions.  As in *Yodlee*, there have been no substantive rulings issued by the Court between the time Defendants served their contentions and the filing of this Motion.  Moreover, there is still ample time left to conduct expert discovery and file dispositive motions.  At bottom, there is no gamesmanship in Defendants' modest request to supplement.

**E.    The *Pennypack* Factors Weigh In Defendants' Favor.**

While many courts apply the "good cause" analysis outlined above to motions for leave to amend invalidity or infringement contentions, some courts instead choose to treat amended contentions as disclosures governed by Federal Rule of Civil Procedure 26(e) and apply the

*Pennypack* factors.  Should the Court choose to apply the *Pennypack* factors here, Defendants' conduct equally satisfies those factors.  *See, e.g.*, *TQ Delta, LLC v. 2Wire, Inc.*, No. CV 13-1835-RGA, 2019 WL 1529952, at *1 (D. Del. Apr. 9, 2019) (applying *Pennypack* and finding that the factors weighed against excluding supplemental expert reports, where those reports included important "new opinions . . . in support of [d]efendant's noninfringement case").  The factors include:  (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld.  *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985).  Moreover, where amended invalidity contentions are "critical" to a party's defense, the first factor weighs heavily in support of granting leave because public interest "favor[s] the resolution of disputes on their merits" particularly "with respect to the validity of patents."  *Abbott Labs. v. Lupin Ltd.*, No. CIV.A. 09-152-LPS, 2011 WL 1897322, at *5 (D. Del. May 19, 2011) (citing *U.S. v. Glaxo Group Ltd.*, 410 U.S. 52, 69 (1973) ("[T]here is a public interest favoring the judicial testing of patent validity . . . . For when a patent is invalid, the public parts with the monopoly grant for no return, the public has been imposed upon and the patent clause subverted.")).

Here, the *Pennypack* factors weigh in favor of granting Defendants leave to supplement their contentions.  First, BT has known about Zhou for over a decade, and Defendants put BT on notice of both of Zhou and Welsh as soon as practical once it determined it was necessary to supplement their contentions.  Second, expert discovery has not begun and, as such, BT will

have ample opportunity to review and attempt to rebut the prior art.  As such, the first and second factors weigh in favor of granting Defendants leave.  There is no unfair prejudice here.

Third, now adding charts based on Zhou and Welsh will not impact the trial setting.  Trial is almost seven months away, and as expert discovery has not begun, Defendants' proposed supplement will not cause further delay by requiring the parties to retool or submit supplemental expert reports.

Fourth, Defendants are not requesting to supplement their contentions in bad faith or for any dilatory purpose.  Indeed, NRF began an independent investigation of the '105 Patent, including a search for prior art, on the same day it appeared in the case and Defendants informed BT of Zhou and Welsh as soon as they determined that they needed to amend their Final Contentions to add these references.  Lastly, as explained in this Motion, Zhou and Welsh are highly material, and potentially case-dispositive, prior art.

## VI.
## CONCLUSION

Defendants Match Group, Inc., Match Group, LLC, and IAC/InterActiveCorp respectfully request that the Court grant their motion for leave to amend their invalidity contentions.

- 16 -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Lucinda C. Cucuzzella*

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
ccucuzzella@mnat.com

OF COUNSEL:

James S. Renard
Robert Greeson
Erik O. Janitens
Jacqueline G. Baker
NORTON ROSE FULBRIGHT US
LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-2784
(214) 855-8000

Robert L. Hails
T. Cy Walker
Cassandra J. Simmons
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403
(202) 861-1500

*Attorneys for Defendants Match Group, Inc.,*
*Match Group, LLC, and IAC/InterActive Corp*

April 30, 2020

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 7.1.1</u>

I hereby certify that the subject of the foregoing motion has been discussed with counsel

for the plaintiff and that counsel for the plaintiff opposes this motion.


*/s/ Lucinda C. Cucuzzella*

_____

Lucinda C. Cucuzzella (#3491)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 30, 2020, upon the following in the manner indicated:

Philip A. Rovner, Esquire                    *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Daniel A. Boehnen, Esquire                   *VIA ELECTRONIC MAIL*
Grantland G. Drutchas, Esquire
Jeffrey P. Armstrong, Esquire
George T. Lyons, III, Esquire
MCDONNELL BOEHNEN HULBERT
& BERGHOFF LLP
300 South Wacker Drive
Chicago, IL 60606
*Attorneys for Plaintiff*

*/s/ Lucinda C. Cucuzzella*

_____
Lucinda C. Cucuzzella (#3491)