# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITHISH TELECOMMUNICATIONS PLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) C.A. No. 18-366-WCB <br> IAC/INTERACTIVECORP, ) <br> MATCH GROUP, INC., ) <br> MATCH GROUP, LLC, and ) <br> VIMEO, INC., ) <br> ) <br> Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO SUPPLEMENT INVALIDITY CONTENTIONS**

OF COUNSEL:

Jeffrey P. Armstrong
Daniel A. Boehnen
Grantland G. Drutchas
George T. Lyons, III
MCDONNELL BOEHNEN HULBERT
 & BERGHOFF LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated:  May 14, 2020

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff*
*British Telecommunications plc*

# **TABLE OF CONTENTS**

I. NATURE AND STAGE OF THE PROCEEDING AND STATEMENT OF FACTS......... 1

II. SUMMARY OF THE ARGUMENT .................................................................................. 5

III. ARGUMENT .......................................................................................................................... 8

    A. Defendants Have Failed to Establish Diligence In Seeking to Amend Their Contentions At This Stage of the Litigation .................................................................. 8

    B. Defendants Have Not Established Diligence in Discovering that an Amendment was Appropriate ........................................................................................................... 9

    C. Defendants Have Not Established Diligence in Moving To Amend After they Learned and Amendment was Necessary .................................................................... 11

    D. Defendants Have Failed to Comply with This Court's Requirements for Showing Good Cause for this Amendment ................................................................................ 12

    E. The *Pennypack* Factors – Even if Applicable – Do Not Support Granting Defendants Leave to Amend ........................................................................................................... 13

        1. The prejudice or surprise to the party against whom the evidence is offered.... 13

        2. The possibility of curing the prejudice ............................................................... 13

        3. The potential disruption of an orderly and efficient trial .................................. 14

        4. The presence of bad faith or willfulness in failing to disclose the evidence ..... 14

        5. The importance of the information withheld ..................................................... 14

    F. The Deficiencies in Defendants' Current Revised Final Invalidity Contentions ....... 15

IV. CONCLUSION .................................................................................................................... 15

## **TABLE OF AUTHORITIES**

*Bayer Cropscience AG v. Dow Agrosciences LLC,*
　No. CV 10-1045 (RMB/JS), 2012 WL 12904380 (D. Del. June 7, 2012) ........................ 6, 9, 11

*Berger v. Rossignol Ski Co*,
　No. C 05-02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) ................................. 7, 11

*Digital Ally, Inc. v. Taser Int'l, Inc.*,
　No. 16-CV-2032-CM-TJJ, 2018 WL 1138283 (D. Kan. Mar. 2, 2018).................................... 12

*Jazz Pharms., Inc. v. Roxane Labs., Inc.,*
　No. CIV.A. 10-6108 ES, 2013 WL 785067 (D.N.J. Feb. 28, 2013)......................................... 10

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
　467 F.3d 1355 (Fed. Cir. 2006)................................................................................................. 9

*R–Boc Representatives, Inc. v. Minemyer*,
　66 F.Supp.3d 1124 (N.D. Ill. 2014) ........................................................................................ 11

*Shire LLC v. Amneal Pharm., LLC,*
　802 F.3d 1301 (Fed. Cir. 2015)............................................................................................. 7, 9

*St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*,
　No. CA 04-1436-LPS, 2012 WL 1015993 (D. Del. Mar. 26, 2012) ...................................... 7, 11

*Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.,*
　No. 13-CV-05184-SBA (MEJ), 2014 WL 5499511 (N.D. Cal. Oct. 30, 2014) ........................ 12

Plaintiff British Telecommunications plc ("BT") opposes the motion by Defendants Match Group, Inc., Match Group, LLC, and IAC/InterActiveCorp (collectively, "Defendants") for leave to amend their invalidity contentions—particularly at this late date. Defendants have failed to establish good cause for a belated amendment of their invalidity contentions, long after the dates set forth in this Court's Scheduling Orders, including the Court's Order of January 17, 2020, which required Defendants to provide revised and narrowed invalidity contentions by February 28, 2020.

Moreover, Defendants have already far exceeded this Court's January 17th limit on references and combinations, leaving BT and its experts struggling to digest the existing material, while simultaneously preparing for the remaining fact and expert discovery deadlines. Defendants have certainly failed to establish good cause for adding references that were available to them long before this litigation began. Defendants have not alleged, for example, that these new contentions are based on new documents produced in discovery or on depositions that were repeatedly delayed by Defendants' own action. Indeed, Defendants have not even tried to meet their burden of showing these references were not previously available to Defendants. Finally, BT seeks guidance from the Court as to whether, based on the Court's January 17th Order, Defendants will be allowed to introduce arguments at trial based on any of the 100+ prior art references that they have cited in their Revised Final Invalidity Contentions that they not apply in their claim charts. *See* Ex. 1, pp. 32-79 and opening pages to Charts B, C, and I thereto.

**I.     NATURE AND STAGE OF THE PROCEEDING AND STATEMENT OF FACTS**

Defendants served their Preliminary Invalidity Contentions on April 30, 2019 and their Final Invalidity Contentions on November 27, 2019. In those final invalidity contentions, Defendants cited 223 prior art references, applying 111 of those references in over 2000 combinations, presented in over 20,000 pages of claim charts. On January 14, 2020, BT

requested this Court to order Defendants to submit revised, final invalidity contentions constrained to a limited number of prior art references and a limited set of number of combinations based on those references. Dkt. 160.

Thereafter on January 17, 2020, this Court conducted a telephonic hearing and ordered Defendants to submit revised invalidity contentions that were limited to 15 references and 30 combinations of those 15 references, by February 28, 2020. Transcript, pp. 52, 54-55, Docket entry dated 1/21/2020. Although the Court did allow that Defendants could amend these revised invalidity contentions for good cause shown, the Court sharply limited the circumstances for any further revision:

> [A]ny such request would require a showing of good cause which would need to be specific on a reference by reference basis and would need to show that the variance from the 15 references in 30 combinations is necessary for the defendant to present its invalidity cases at trial. This is not something I would do lightly, but I also am not going to close the door on the defendant's right to come back and seek a variance from the numbers that I'm giving.

Transcript, pp. 55-56.

On February 28, 2020, rather than complying with this Court's Order, Defendants submitted a revised set of invalidity contentions ("Final Revised Invalidity Contentions") that contained citations to more than 100 prior art references. *See* Ex. 1. In over 900 pages of attached claim charts and explanations, Defendants provided detailed discussion as to the relevance of more than 30 prior art references, over a multitude of combinations, and further analyzed and applied 16 references in claim charts against the asserted claims. *Id.*[1]

---

[1] These charts include invalidity analysis concerning, at least, the following references: **(1)** Kamyab; **(2)** Azvine, **(3)** PCT/GB02/01421 (published under reference WO 02/080056); **(4)** Bogonikolos; **(5)** Presser; **(6)** Hopgood; **(7)** Linden; **(8)** Burke II; **(9)** Pazzani-1999; **(10)** Claypool; **(11)** Bezos; **(12)** Jacobi; **(13)** Ortega; **(14)** Linden-Smith; **(15)** Linden '505; and **(16)** Lieben. Additionally, Defendants cited thousands of pages of documents produced in this case

Any part of Defendants' Final Revised Invalidity Contentions that rely in whole or in part upon anything other than the 16 charted references is wholly improper and in clear violation of the Court's January 17th Order. Although Defendants' discussion of over 100 prior art references and charting of 16 separate references is more than the Court ordered, BT chose not to raise Defendants' end-run around the Court's Order at that time because (1) BT will have the opportunity to object to the 100+ references should Defendants' expert rely on them in any way; (2) BT did not view it as necessary to burden the Court with the issue at that time; and (3) a few of the 16 charted references discuss different aspects of the same "Amazon.com's Recommendation Algorithm" (Chart G) such that the burden as to the 16 charted references was not undue. But Defendants' current effort to put even more references before this Court takes this issue front and center; BT believes the issue is now more than sufficiently matured and seeks the Court's guidance to help remedy this situation.[2]

On April 30, 2020 – more than two months after Defendants' deadline for submitting their Final Revised Invalidity Contentions, long after the previously-scheduled close of fact discovery, after the previously-scheduled date for submitting opening expert reports, and while the parties are trying to finish the tail-ends of fact discovery – Defendants moved this Court for leave to file an amended set of invalidity contentions. With their motion, Defendants submitted their proposed supplement to their Final Revised Invalidity Contentions explaining, for the first time, their new invalidity contentions and new asserted combinations.

---

purporting to invalidate the asserted claims. *See, e.g.*, Final Revised Invalidity Contentions, p. 21 (citing AMZ_BT-ICA 00000001 - AMZ_BT-ICA 00006285 as supporting evidence for the "Amazon.com's Recommendation Algorithm" reference, and citing the same in Chart G).

[2] Specifically, BT contends that any part of Defendants' Final Revised Invalidity Contentions that rely upon any reference other than the 16 charted references applied in the claim charts served on February 28, 2020 should be ignored, stricken, and unavailable to Defendants' expert witnesses. BT now seeks the Court's guidance as to whether BT should file a formal motion to strike that part of the document at this time.

In that proposed supplement, Defendants provided for the first time entirely new, charted contentions based on a previously-known reference (Zhou) and a previously-uncited reference (Welsh).  Notably, as to Zhou, this reversed their strategic decision made in their February 28, 2020 Revised Final Invalidity Contention to omit any claim charts directed to Zhou (omitting, for example, Exhibit 019 of their prior Final Invalidity Contentions (which they included Ex. B to their Opening Brief)).  Dkt. 200, Ex. B.

In their motion, Defendants fail to even address this Court's admonishment that "any such request would require a showing of good cause which would need to be specific on a reference by reference basis and would need to show that the variance from the 15 references in 30 combinations is necessary for the defendant to present its invalidity cases at trial." Their motion fails to provide or substantiate such a showing.  Their motion also fails to address the problem that their Final Revised Invalidity Contentions already cited 100+ prior art references including 16 charted references, as opposed to the 15 references as mandated by this Court, a violation of this Court's order that their motion to amend only compounds.

After repeated postponements and delays requested by Defendants, and in an effort to get this case back on track, this Court entered a new case management schedule on April 24, 2020 in which the Court reduced the amount of time for expert discovery in general, including reducing the period for BT's rebuttal reports by a third, from nearly 5 weeks (Dkt. 68) weeks to just 3 weeks (Dkt. 197).  Defendants' arguments ignore not only this prejudice but also  that BT and its experts will have to respond to these entirely new invalidity grounds while BT is in the midst of completing infringement discovery and preparing infringement expert reports, in addition to addressing the more than 100 prior art references and invalidity grounds already cited and discussed in the Final Revised Invalidity Contentions (should this Court permit Defendants to

rely on the uncharted references), as well as the 16 (not 15) references already charted in their February 28 submission. This Court should not allow the Defendants to further compound this prejudice by piling on even more references and bases for invalidity, particularly this late in the proceedings.

Moreover, because of the repeated postponements sought and obtained by Defendants, and their refusal to schedule depositions in the interim, the parties are now completing 8 depositions in these last 10 days of fact discovery.

Indeed, the only reason that the parties have not already completed expert reports is because of Defendants' repeated requests for postponement. According to the schedule originally entered by this Court, reply expert reports were due April 16, 2020, and the close of expert discovery was set for May 21, 2020. Dkt. 57 and 68.

## II.   SUMMARY OF THE ARGUMENT

Defendants have failed to meet their dual burdens of establishing both diligence in identifying the prior art reference and promptness in moving for leave to amend. Defendants here made "no showing whatsoever that [they have] been diligently searching for prior art [and] provide[] no explanation as to how or why the two new pieces of prior art eluded that search…" *Bayer Cropscience AG v. Dow Agrosciences LLC,* No. CV 10-1045 (RMB/JS), 2012 WL 12904380, at *3 (D. Del. June 7, 2012). To the contrary, Defendants have long known of the Zhou reference, having cited it in their Preliminary, Final, and Final Revised Invalidity Contentions. Defendants also ignore that they explicitly chose to drop any claims charts applying Zhou to the Thint '105 patent claims in their Final Revised Invalidity Contentions. *See* Ex. 1, at Charts A-J. "A strategic mistake does not equate to a showing of good cause under Rule 16." *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. CA

04-1436-LPS, 2012 WL 1015993, at *6 (D. Del. Mar. 26, 2012), *aff'd per curiam*, 522 F. App'x 915 (Fed. Cir. 2013).

As for the second reference, Welsh, Defendants admit that their new co-counsel discovered it after just a two-week search, but failed to offer any explanation as to why Defendants failed to find it earlier in the 2+ years that the parties have been litigating this case (or the 4+ years that the Defendants have been on notice of their infringement of the Thint '105 patent). Given these delays, Defendants cannot establish that they were diligent in locating the Welsh reference under *Bayer*. *See also Shire LLC v. Amneal Pharm., LLC,* 802 F.3d 1301, 1305 (Fed. Cir. 2015) (affirming denial of amendment of invalidity contentions where "defendants had access to the information [regarding the on-sale bar], or documentation that should have led them to it earlier….")

Nor can Defendants cite surprise, or newly-produced documents, or new deposition testimony as the basis for their identification of these references. Defendants essentially argue that the hiring of new co-counsel should re-set the clock on diligence, but "the addition of co-counsel is not good cause," and "[t]o hold otherwise would mean that a party could avoid the Local Rules simply by adding a lawyer to the pleadings." *Berger v. Rossignol Ski Co.,* No. C 05-02523 CRB, 2006 WL 1095914, at *4 (N.D. Cal. Apr. 25, 2006), *aff'd*, 214 F. App'x 981 (Fed. Cir. 2007). That principle is particularly appropriate here because it was Defendants' new co-counsel who delayed the completion of fact depositions and the related exchange of initial expert witness reports.

Even once Defendants' new co-counsel "discovered" these references, which Defendants admit was "on or about March 14, 2020," Defendants did not act diligently under the circumstances in moving for leave to amend. Defendants admit they took over two weeks to

determine that claim charts corresponding to Zhou and Welsh should be included with their contentions and another month thereafter, until April 30, 2020, to file this motion for leave to amend.  Given the impending completion of clean-up depositions, the close of fact discovery, and the truncated expert discovery deadlines, Defendants' delays in bringing this issue to the Court's attention and failure to seek expedited resolution is inexplicable.

Defendants also ignore that their Final Revised Invalidity Contentions already exceeded this Court's mandate that Defendants limit their contentions.  And that, for any further amendment, the Court expressly required "a showing of good cause [that] would need to be specific on a reference by reference basis and would need to show that the variance from the 15 references in 30 combinations is necessary for the defendant to present its invalidity cases at trial."  Jan. 17, 2020 Hearing Transcript, pp. 55-56.  Defendants attempt to compound their flouting of the Court's order by moving to add yet another prior art reference and more sets of combinations to the fold, but fail to provide the showing this Court indicated would be required.

Furthermore, the *Pennypack* factors – even if applicable – do not support granting Defendants leave to amend.  This Court has already said that Defendants must show good cause to support any request for leave to amend to add new invalidity contentions, not merely comport with *Pennypack*.  Even applying the *Pennypack* factors, however, Defendants' proposed amendments – in view of the stage of fact discovery and the shortened period for expert discovery – would prejudice BT and BT's preparation of its experts.

As this Court has noted, this schedule is already abbreviated, substantially shortening the Court's time for review of summary judgment motions.  Further, the 100+ existing references and multitude of combinations in Defendants' Final Revised Invalidity Contentions will already make an orderly and efficient trial difficult; adding yet more will only disrupt trial further.

Defendants have also made no attempt to explain why these new grounds based on Zhou and Welsh are any better or different than, as opposed to merely cumulative of, their 6 current anticipation arguments. Moreover, Defendants' strategic prior decision to drop any claim charts based on Zhou in their Final Revised Invalidity Contentions suggests that Zhou is not as strong a reference as their co-counsel would lead this Court to believe. As such, even if applicable, the *Pennypack* factors fail to support Defendants' request for leave to file amended contentions adding new invalidity grounds at this late date.

Finally, BT seeks guidance from the Court as to whether Defendants will be allowed to introduce arguments based on the 100+ prior art references that they have cited in their Revised Final Invalidity Contentions, Ex. 1 hereto, where they have not been charted against the claims.

### III. ARGUMENT

#### A. Defendants Have Failed to Establish Diligence In Seeking to Amend Their Contentions At This Stage of the Litigation

The Federal Circuit has held that "good cause" for amending invalidity contentions requires that parties must "proceed with diligence in amending when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-68 (Fed. Cir. 2006) (affirming finding of a "lack of 'good cause'" based on party's delay in moving to amend contentions without adequate explanation). *See also Shire,* 802 F.3d at 1305 (affirming denial of amendment of invalidity contentions where "defendants had access to the information [regarding the on-sale bar], or documentation that should have led them to it earlier…." ) "[T]he key fact courts should look at to determine whether good cause exists to grant an amendment to a contention is the diligence of the moving party." *Bayer*, 2012 WL 12904380, at *3 (discussing *O2 Micro*). There is not – and cannot be – good cause for Defendants' request here because: (i) nothing has emerged from discovery to justify amending

the invalidity contentions, (ii) as Defendants have admitted, they had the Zhou reference all along (iii) Defendants affirmatively, previously decided to drop reliance on Zhou, and (iv) the Welsh reference is a United States Patent issued in 2004 (U.S. Pat. No. 6,757,691), which was readily available with only minor search effort. As the Court found in *Bayer,* "[i]n the absence of unusual and unexpected circumstances that do not exist here, at this stage of the litigation [the plaintiff] is entitled to know that [Defendant's] contentions are complete." *Id.*

The party seeking to amend bears the burden of establishing diligence. *Id.* at *1; *Jazz Pharms., Inc. v. Roxane Labs., Inc.,* No. CIV.A. 10-6108 ES, 2013 WL 785067 at *3 (D.N.J. Feb. 28, 2013). Moreover, a party must not only prove that it "acted diligently to discover that an amendment was appropriate," but that it "promptly moved to amend its contentions after it learned an amendment was necessary." *Id.*

### B. Defendants Have Not Established Diligence in Discovering that an Amendment was Appropriate

In attempting to meet their burden of proving diligence, Defendants have submitted the declaration of Robert Greeson, from the firm of Norton Rose, Defendants' co-counsel with members of the Baker & Hostetler firm. Mr. Greeson alleges that his firm commissioned a prior art search the day that it first appeared as co-counsel in this case, February 28, 2020 and within a two-week period, by March 14, 2020, identified the Zhou and Welch references that form the basis for their new invalidity contentions. However, Defendants' brief and Mr. Greeson's declaration is completely silent as to why Defendants' counsel from Baker & Hostetler failed to conduct such a search any time in the 2+ years that this litigation has been proceeding, or the 4+ years since Sept. 07, 2015 when BT first disclosed their Thint '105 patent assertion to Defendants. Defendants' diligence obligation does not arise only with their new co-counsel; if that were true, any defendant could try for a do-over by hiring new counsel. Defendants were

obligated to establish that they have been diligent in performing adequate searches and identifying all relevant prior art throughout this litigation. "[T]he addition of co-counsel is not good cause. To hold otherwise would mean that a party could avoid the Local Rules simply by adding a lawyer to the pleadings." *Berger*, 2006 WL 1095914, at *4.

Here, just as in *Bayer*, Defendants "make[] no showing whatsoever that it has been diligently searching for prior art [and] provides no explanation as to how or why the two new pieces of prior art eluded that search…." *Bayer*, 2012 WL 12904380, at *3. Here, in fact, one of the pieces of prior art Defendants' counsel describes as "anticipatory prior art" (Greeson Decl., ¶ 5) did ***not*** elude Defendants' search; as Defendants admit, "Defendants have already raised Zhou as prior art in this litigation." Dkt. 200, p. 2. And although Defendants' counsel cited Zhou in their Preliminary Invalidity Contentions served over a year ago, on April 30, 2019, and again in their Final Invalidity Contentions served on November 27, 2020, and yet again in their Final Revised Invalidity Contentions served February 28, 2020, the Defendants affirmatively chose to drop the claim charts applying Zhou in their Final Revised Invalidity Contentions. Allowing Defendants to renege on that decision at this late time, especially given the other time pressures, would be patently unfair in the case. Defendants' counsel from the Baker & Hostetler firm apparently just differed on the relevance of this alleged "highly material" reference to the Thint '105 patent. And this motion is merely an attempt to cure the differences in Defendants' counsels' opinions, i.e., a "Trojan horse for [counsels'] eleventh-hour invalidity contentions under the cover of 'good cause.'" *R–Boc Representatives, Inc. v. Minemyer*, 66 F.Supp.3d 1124, 1129 (N.D. Ill. 2014). But again, "[a] strategic mistake does not equate to a showing of good cause under Rule 16." *St. Clair Intellectual Prop. Consultants*, 2012 WL 1015993, at *6.

Defendants have also provided no explanation as to why they did not identify the Welsh reference earlier or why – if such a search occurred, it did not locate this "highly relevant" reference. These omissions are particularly glaring given Defendants' current self-serving assertion that these references are both "anticipatory prior art." Having failed to establish diligence in discovering that an amendment is appropriate as to either the Zhou or the Welsh reference, Defendants' motion for leave should be denied.

### C. Defendants Have Not Established Diligence in Moving To Amend After they Learned and Amendment was Necessary

Separate and apart from having failed to establish diligence in discovering that an amendment was appropriate, Defendants have also failed to establish diligence in moving to amend after purportedly learning an amendment was necessary.

Mr. Greeson's declaration admits that "on or about March 14, 2020, NRF identified [Zhou] and [Welsh] as anticipatory prior art." Dkt. 200, Greeson Decl., ¶ 5. Yet it took Defendants' counsel six more weeks, until April 30, 2020, to file a motion for leave to file an amended set of Invalidity Contentions based on these references, while in the meantime, Defendants blocked the completion of fact discovery and the exchange of opening expert reports.

Given the then-impending close of fact discovery and the already-truncated expert discovery deadlines which existed at that time – and which have since become even more truncated, Defendants' delays in bringing this issue to the Court's attention and failure to seek expedited resolution is inexplicable, unjustifiable, and unfair to BT.[3] As such, Defendants have

---

[3] This Court has repeatedly shown its willingness to bend over backward to promptly resolve discovery and scheduling disputes using letter submissions; Defendants' decision to wait until the eve of expert discovery to file a motion appears calculated to postpone resolution even longer and further prejudice BT in conducting the remaining fact depositions and in preparing its experts. Contrast *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.,* No. 13-CV-05184-SBA (MEJ), 2014 WL 5499511, at *3 (N.D. Cal. Oct. 30, 2014) (finding no gamesmanship

failed to establish they acted diligently in moving to amend, and their motion for leave should be denied on this ground as well.

### D. Defendants Have Failed to Comply with This Court's Requirements for Showing Good Cause for this Amendment

As noted above, in ordering Defendants to provide their Final Revised Invalidity Contentions, the Court expressly limited the circumstances for any further revision:

> [A]ny such request would require a showing of good cause which would need to be specific on a reference by reference basis and would need to show that the variance from the 15 references in 30 combinations is necessary for the defendant to present its invalidity cases at trial. This is not something I would do lightly, but I also am not going to close the door on the defendant's right to come back and seek a variance from the numbers that I'm giving.

Transcript, pp. 55-56. As described above, rather than complying with this Court's Order of January 17, 2020 Order (*see* Transcript, pp. 52, 54-55), Defendants' Final Revised Invalidity Contentions identified over 100 references and described them in varying detail, over a multitude of combinations, and charted 16 references against the claim elements.

Defendants now seek to compound this deficiency by moving to add yet another prior art reference and another set of combinations without providing any reference by reference basis as to why the variance from the 15 references in 30 combinations is necessary for Defendants to present their invalidity case at trial. As such, based on their failure to comply with this Court's mandate for establishing good cause to exceed this Court's Order, Defendants' motion for leave should be denied on this ground as well.

---

motivation where plaintiff sought to add new infringement contentions prior to claim construction hearing when no discovery had been conducted and when no close of fact discovery had been set); *Digital Ally, Inc. v. Taser Int'l, Inc.*, No. 16-CV-2032-CM-TJJ, 2018 WL 1138283 *7 (D. Kan. Mar. 2, 2018) (finding no gamesmanship motivation where plaintiff sought to add new invalidity grounds prior to claim construction hearing and 5 months before the close of fact discovery).

### E. The *Pennypack* Factors – Even if Applicable – Do Not Support Granting Defendants Leave to Amend

As noted above, this Court has already established the standard that Defendants must meet to amend their invalidity contentions. Therefore, the general *Pennypack* factors do not apply. Even if they did, Defendants' motion should still be denied.

#### 1. The prejudice or surprise to the party against whom the evidence is offered

As noted above, BT had no notice of Defendants' grounds for arguing Zhou or Welsh references were allegedly "anticipatory prior art" until Defendants filed their motion on April 30, 2020, approximately three weeks before the oft-revised close of fact discovery. To the contrary, Defendants explicitly removed any claim charts directed to Zhou (alone or in combination with any other reference) from their Final Revised Invalidity Contentions served February 28, 2020.

Defendants also did not put BT on notice of the grounds for their assertion that Zhou and/or Welsh invalidate any claim of the Thint '105 patent even as of March 31, 2020 when they contacted BT about the references; Defendants' counsel merely identified the references as "highly relevant" at that time. Thus, Defendants' earliest disclosure of the grounds for their assertion was April 30, 2020, when Defendants served this motion.

#### 2. The possibility of curing the prejudice

Given the short time left for fact discovery and the abbreviated schedule for expert discovery caused by delays they repeatedly requested, Defendants' belated inclusion of a new prior art reference and entirely new grounds for invalidity – on top of what Defendants have already cited in their Final Revised Invalidity Contentions – cannot be cured. As this Court has noted, the current schedule reduces to a bare minimum the amount of time the Court will have to consider the parties' pretrial motions. Dkt. 197, p. 5. So, too, does the schedule reduce to a bare minimum the time that BT has to respond to the report of Defendants' invalidity expert.

### 3. The potential disruption of an orderly and efficient trial

Although this factor applies more to the Pretrial Order setting of *Pennypack*, the 100+ references cited by the Defendants in their Final Revised Invalidity Contentions already threatens to disrupt the order and efficiency of any trial in this case. Even addressing the 16 charted references and myriad combinations cited in Defendants' Final Revised Invalidity Contentions before the jury will be difficult. Adding yet more references and arguments does nothing to simplify the case or improve efficiency.

### 4. The presence of bad faith or willfulness in failing to disclose the evidence

Defendants' strategic decision not to apply the Zhou reference directly to any of the Thint '105 patent claims in their Final Revised Invalidity Contentions suggests willful behavior on their part. Defendants' alleged failure to conduct a thorough search to find the Welsh reference on a timely basis only further compounds the problems caused by their strategic decision regarding Zhou. Defendants' recent efforts to delay the previously scheduled completion of fact discovery and the exchange of expert reports raises further troubling considerations.

### 5. The importance of the information withheld

Although Defendants repeatedly argue in their brief that these references are "anticipatory prior art," Defendants' Final Revised Invalidity Contentions already contain six other alleged anticipation arguments, based on the "Admitted Prior Art of The '105 Patent," Bogonikolos, Linden, "Amazon.com System," Pazzzani-1999 and Lieben. *See* Ex. 1, at Charts A, C, E, G, H and J. Defendants have made no attempt to explain why these new grounds based on Zhou and Welsh are any better or different than, as opposed to merely cumulative of, Defendants' current anticipation arguments. Moreover, as noted above, the fact that Defendants' Baker & Hostetler counsel chose not to raise an anticipation argument based on Zhou – even

dropping the prior claim chart directed to Zhou from their Final Revised Invalidity Contentions suggests that the arguments based on this reference is not as strong as their co-counsel would lead this Court to believe.

Taken as a whole, the *Pennypack* factors, even if applicable, fail to support Defendants' request for leave to file amended contentions.

### F. The Deficiencies in Defendants' Current Revised Final Invalidity Contentions

Finally, as noted above, BT seeks guidance from the Court as to (1) whether Defendants will be allowed to introduce arguments based on any of the 100+ prior art references that they have cited in their Revised Final Invalidity Contentions, but not included in charts against the Thint '105 patent claims; and (2) whether Defendants' experts should be precluded from arguing those 100+ references in the upcoming expert reports. If necessary, BT will file a separate motion, or request that the parties submit their respective positions by letter.

### IV. CONCLUSION

For the foregoing reasons, Defendants should be denied leave to amend their invalidity contentions. Furthermore, BT seeks guidance from the Court as to whether Defendants will be allowed to introduce arguments based on any of the 100+ prior art references that they have cited in their Revised Final Invalidity Contentions, but have not charted against the Thint '105 patent claims.

OF COUNSEL:

Jeffrey P. Armstrong
Daniel A. Boehnen
Grantland G. Drutchas
George T. Lyons, III
MCDONNELL BOEHNEN HULBERT
& BERGHOFF LLP
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

Dated: May 14, 2020
6731575

POTTER ANDERSON & CORROON LLP

By: */s/ Philip A. Rovner*
  Philip A. Rovner (#3215)
  Jonathan A. Choa
  (#5319) Hercules Plaza
  P.O. Box 951
  Wilmington, DE 19899 (302) 984-6000
  provner@potteranderson.com
  jchoa@potteranderson.com

*Attorneys for Plaintiff*
*British Telecommunications plc*