IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-366 (WCB) |
| | ) |
| IAC/INTERACTIVECORP, MATCH GROUP, INC., MATCH GROUP, LLC and VIMEO, INC., | ) |
| | ) |
| Defendants. | ) |

**MATCH GROUP, INC., MATCH GROUP, LLC, AND IAC/INTERACTIVECORP'S
REPLY BRIEF IN SUPPORT OF THEIR
<u>MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS</u>**

OF COUNSEL:

James S. Renard
Robert Greeson
Erik O. Janitens
Jacqueline G. Baker
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-2784
(214) 855-8000

Robert L. Hails
T. Cy Walker
Cassandra J. Simmons
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403
(202) 861-1500

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
ccucuzzella@mnat.com

*Attorneys for Defendants Match Group, Inc.,
Match Group, LLC, and IAC/InterActiveCorp*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. Defendants Have Demonstrated Good Cause To Grant Leave To Amend ........... 2

        1. Welsh And Zhou Are Material Invalidity References ............................... 2

        2. Defendants Diligently Searched For And Identified Welsh And Zhou .................................................................................................. 5

        3. Defendants Acted Diligently In Identifying The Need To Amend Their Invalidity Contentions And In Moving To Seek Leave To Do So ........................................................................................................ 7

    B. BT Has Failed To Establish Undue Prejudice ....................................................... 8

III. CONCLUSION ................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraxis BioScience, LLC v. Actavis, LLC*,
   No. CV 16-1925 (JMV), 2017 WL 2079647 (D.N.J. May 15, 2017)..........................................9

*Berger v. Rossignol Ski Co.*,
   No. C 05-02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006), *aff'd*,
   214 F. App'x 981 (Fed. Cir. 2007) .......................................................................................6, 7

*Digital Ally, Inc. v. Taser Int'l, Inc.*,
   No. 16-CV-2032-CM-TJJ, 2018 WL 1138283 (D. Kan. Mar. 2, 2018)....................................9

*Shire LLC v. Amneal Pharm., LLC*,
   802 F.3d 1301 (Fed. Cir. 2015)..................................................................................................6

*St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*,
   No. CA04-1436-LPS, 2012 WL 1015993 (D. Del. Mar. 26, 2012), *aff'd per
   curiam*, 522 F. App'x 915 (Fed. Cir. 2013) ...............................................................................6

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
   No. 4:16-CV-00119-HSG (KAW), 2018 WL 5619743 (N.D. Cal. Oct. 29,
   2018) .........................................................................................................................................9

*Yodlee, Inc. v. CashEdge, Inc.*,
   No. C05-01550 SI, 2007 WL 1454259 (N.D. Cal. May 17, 2007)....................................6, 7, 8

# I.
# INTRODUCTION

Welsh and Zhou render the '105 Patent invalid. That is why BT seeks to prohibit Defendants from charting them as prior art (and presumably introducing them as evidence of anticipation and obviousness), but does not dispute the materiality of either reference. Instead, BT challenges only the timeliness of Defendants' request to include Welsh and Zhou in their invalidity charts.

Upon their retention and appearance in this action, Defendants' new counsel initiated an independent search – consistent with their professional obligations – for relevant prior art. That search revealed two case-dispositive references, neither of which is charted in Defendants' current invalidity contentions. Recognizing the need to supplement their contentions, Defendants immediately informed BT of their intent to do so and provided BT with copies of both references. Defendants then devoted three weeks to the preparation of 81 pages of detailed claim charts to ensure that BT and the Court had fair and complete notice of Defendants' intent to rely upon the references and the bases for doing so.

BT's response is replete with makeweight arguments and misdirection, which are addressed below. Put simply, Defendants were diligent in finding Welsh and Zhou and promptly bringing each to BT's and the Court's attention. Good cause exists to supplement. Accordingly, the most important principle here is that invalid patents – like the '105 Patent – should never support a finding of infringement or an award of damages. Rather, invalid patents should be invalidated. Welsh and Zhou invalidate the '105 Patent, and Defendants respectfully request that they be permitted to prove it in this action.

## II.
## ARGUMENT

**A.     Defendants Have Demonstrated Good Cause To Grant Leave To Amend.**

**1.     Welsh And Zhou Are Material Invalidity References.**

BT does not dispute that Welsh (which is assigned to America Online, Inc.) and Zhou (which is assigned to Sony United Kingdom Limited) anticipate or render obvious the '105 Patent's claims. BT does not because it cannot – the claim charts attached to Defendants' motion speak for themselves. It is that straightforward.

As explained herein, Welsh is a better invalidity reference than those charted in Defendants' current invalidity contentions at least because it will be particularly helpful to a jury in resolving the issue of invalidity. It is important to allow a jury to consider Welsh as prior art because doing so will assist the jury in avoiding the confusion created by BT's infringement contentions. BT's infringement theory would confuse a jury because it alleges infringement of an invention neither described nor claimed in the '105 Patent. Specifically, BT alleges that performance of collaborative filtering (e.g., "triangulation") constitutes infringement. However, a simple read of the '105 Patent reveals that collaborative filtering is not contemplated, much less described, in the '105 Patent. This was further confirmed on February 21, 2020, when Defendants deposed Dr. Marcus Thint – the '105 Patent's first-named inventor – who testified that (1) collaborative filtering systems are distinct from rule-based inference engines, as recited in the claims of the '105 Patent, and (2) he had no experience (while working at BT or otherwise) with collaborative filtering systems.[1]

---

[1] Dr. Thint made clear that collaborative filtering and the alleged invention described in the '105 Patent are <u>different</u> approaches: "Q. Okay, Earlier I asked you about collaborative filtering, and you gave me an explanation as to how it worked. ***Is there any relevance between the '105 patent and collaborative filtering systems in your mind?*** A. They -- ***they work differently***, just as when we were comparing neural net inference systems, but the end

Because BT alleges that performance of collaborative filtering nevertheless constitutes infringement of the '105 Patent,[2] Defendants understandably had to search for, identify, and include collaborative filtering prior art in their invalidity contentions. In doing so, Defendants demonstrated not only that the collaborative filtering techniques utilized in their products were well-known before the '105 Patent's priority date, but that BT actually knew of invalidating collaborative filtering-type prior art before suing Defendants.[3]

Nonetheless, BT's baseless infringement theories have created a contrived dispute, in that the parties are arguing about something not found in the asserted patent. Although Defendants will show that their collaborative filtering techniques were known before the '105 Patent, that prior art is no more applicable to the '105 Patent's claims than the accused products. The notion of collaborative filtering is only at issue because of BT's baseless infringement theories.

Once the distraction created by BT's faulty interpretation of the '105 Patent as something that covers collaborative filtering is removed, Welsh clearly and directly compares to the '105 Patent's claims. As such, a lay jury would more easily understand how the '105 Patent's claim elements are found in Welsh. In other words, Welsh provides a far less complex exposition and

---

functionality could be similar if they're taking a set of, you know, data and then inferring a reasoning about it and producing an effect or result." *See* Deposition of Marcus Thint ("Thint Dep."), attached hereto as Ex. A, at 75:14-23 (emphasis added); *see also id.* at 18:4-22:17 (explaining how inference engines and collaborative filtering systems operate); *id.* at 153:25-154:20 (explaining a prototype, collaborative filtering system as irrelevant to the '105 Patent), *id.* at 75:23-77:18 (conceding limited familiarity with collaborative filtering systems).

[2] In its Final Infringement Contentions, dated October 28, 2019, BT relies heavily on various "collaborative filtering" and "triangulation" algorithms and functions of the Match.com and Tinder dating services in describing the alleged infringement of the Thint '105 Patent.

[3] Indeed, as discovery has revealed, BT initially identified the Amazon recommender system as potentially infringing the '105 Patent, but quickly withdrew that system from consideration upon realizing that it predated the '105 Patent. *See* BT-IAC0008783, BT-IAC0006078-94, and BT-IAC0006098 (which, upon request, Defendants will submit for the Court's review in conformance with the Protective Order).

explanation for a jury. Welsh "looks" more like the '105 Patent, even if other references cited in Defendants infringement contentions satisfy the '105 Patent's claim elements under BT's baseless claim interpretation.

Considering the foregoing, the heightened importance of Welsh becomes apparent. Although the rules-based prior art disclosed in Defendants' current invalidity contentions clearly describe the concepts set forth in the asserted claims, Welsh actually describes the '105 Patent's "invention" in the same level of detail and with the same terminology used in the asserted claims. As the Court has noted, the '105 Patent is directed to a "two-ruled method for updating user profiles" that "employ[s] an 'inference engine.'" *See* D.I. No. 131, at 2. This is precisely what Welsh described long before the '105 Patent was filed. More specifically, Welsh discloses the same two-rule-set architecture that is set forth in the '105 Patent's claims and alleged in the '105 Patent to be an improvement over prior art systems. According to the '105 Patent, this two-rule-set architecture enables a second set of rules (i.e., meta-rules 235) to bias the importance of a first set of rules (i.e., fuzzy rules 210) in updating a user profile, whereas in the prior art, "all fuzzy rules would have been applied with equal importance." *See* '105 Patent, attached hereto as Ex. B, at 13:9-16. Notably, Welsh also describes the use of meta-rules to change the importance of a first set of fuzzy rules (rules 914) to update a user profile. *See, e.g.*, Welsh, attached hereto as Ex. C, at 4:59-67, 9:15-31 (discussing use and maintenance of meta-rules); *id*. at 14:66-15:15 (discussing use of meta-rules to add and remove rules). As such, a jury can compare Welsh's disclosure to the claims in a straightforward manner, i.e., without the distraction of collaborative filtering, and recognize that it described a two-rule-set system for updating a user profile that existed before the '105 Patent was filed.

Welsh is not only more material than any prior art applied by the Patent Office during prosecution the '105 Patent, it is also more material to the invalidity of the '105 Patent than the collaborative filtering prior art references cited in Defendants' current invalidity contentions served on February 28, 2020. Defendants will prove that, several years before the '105 Patent was filed, Welsh described: (1) storing a first set of rules (i.e., rules 914 expressed as rule set 916); (2) applying personalized rule weightings to rule set 916 according to a second set of rules (i.e., meta-rules that are stored in a meta-rule database) and user preference data (i.e., preference information provided by or gathered from the user); and (3) receiving information reflecting user activity at its monitor agent 724, which monitors user sessions 725 to capture use patterns. *See* Welsh Claim Chart, Ex. F to Motion, at 27-43 (mapping the disclosure of Welsh to claim 10 of the '105 Patent).

### 2. Defendants Diligently Searched For And Identified Welsh And Zhou.

Defendants' new counsel discovered Welsh (assigned to America Online, Inc.) on or about March 14, 2020. Perhaps recognizing that it cannot dispute the materiality of Welsh (and Zhou), BT attempts to deflect attention away from those references by alleging lack of diligence. The facts, however, are that Defendants discovered new prior art that was difficult to uncover, quickly shared it with BT, and then developed detailed claim charts demonstrating invalidity.

BT nevertheless asserts that "Defendants essentially argue that the hiring of new co-counsel should re-set the clock on diligence," and that such an argument cannot be condoned by this Court because it "would mean that a party could avoid the Local Rules simply by adding a lawyer to the pleadings." Response, D.I. No. 202, at 9. Defendants have taken no such position. Indeed, Defendants expressly recognized in their Motion that hiring new counsel does not in and of itself establish diligence: "Defendants do not claim that hiring new counsel alone constitutes good cause; however, considering both the timing of NRF's engagement and the

5

overall case schedule, a finding of reasonable diligence is appropriate." Motion, D.I. No. 200, at 10.

Moreover, the case law cited by BT is inapposite. For instance, BT cites *Berger v. Rossignol Ski Co.*, No. C 05-02523 CRB, 2006 WL 1095914, at *4 (N.D. Cal. Apr. 25, 2006), *aff'd*, 214 F. App'x 981 (Fed. Cir. 2007) for the proposition that "the addition of co-counsel is not good cause." *See* Response, D.I. No. 202, at 9. But the court's reasoning in *Berger* was supported by facts nothing like those at issue here.[4] In *Berger*, the plaintiffs sought leave to amend their contentions one month *after* defendants had moved for summary judgment and after plaintiffs retained "additional experienced counsel in the area of patent litigation" who discovered the need to amend plaintiffs' infringement contentions. *Id*. at *3. The plaintiffs' motion for leave was supported by a declaration from their original counsel, in which he explained that he "made errors in the preliminary contentions" including "neglect[ing] to include *any* claims from the '530 Patent." But the court found that plaintiffs' counsel's mistake did not amount to diligence, in part because the plaintiffs filed their preliminary infringement contentions five weeks late, which were incomplete, and the plaintiffs failed to inform the court of their mistake for several months thereafter. *Id*. at *2.

As discussed in Defendants' Opening Brief, *Yodlee, Inc. v. CashEdge, Inc.*, No. C05-01550 SI, 2007 WL 1454259 (N.D. Cal. May 17, 2007), unlike *Berger*, is instructive here. In

---

[4] The other cases cited by BT are similarly unavailing. *See Shire LLC v. Amneal Pharm., LLC*, 802 F.3d 1301, 1305 (Fed. Cir. 2015) (where defendants did not diligently seek leave to amend because documents produced by plaintiff *a year before defendants filed their motion for* leave contained information that "should have led" defendants to raise an "on-sale bar" argument); *see also St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. CA04-1436-LPS, 2012 WL 1015993, at *6 (D. Del. Mar. 26, 2012), *aff'd per curiam*, 522 F. App'x 915 (Fed. Cir. 2013) (finding no diligence where counsel "was keenly aware of the possibility" that pending Supreme Court precedent "may impact this case, yet [counsel] chose to proceed under its sole infringement theory and not address alternative theories" in its infringement contentions).

*Yodlee*, the same court found – just one year after *Berger* – that good cause existed to amend defendant's final invalidity contentions where, one month after serving its final invalidity contentions, defendant appointed new counsel who, two weeks after appearing in the case, discovered significant new prior art that had not been included in defendant's final invalidity contentions. *Id*. at *1. *Berger* involved a plaintiff's effort to amend untimely infringement contentions to address, for the first time, a patent's claims. In contrast, *Yodlee* involved a defendant's request to amend infringement contentions under facts similar to those here.

      **3.    Defendants Acted Diligently In Identifying The Need To Amend Their Invalidity Contentions And In Moving To Seek Leave To Do So.**

BT makes much of the six weeks that elapsed from when Defendants first identified Welsh and Zhou (March 14) to when Defendants filed their Motion (April 30), arguing that the alleged delay was "inexplicable, unjustifiable, and unfair to BT." Response, D.I. No. 202, at 14. What BT neglects to mention, however, is that Defendants spent two of those weeks (March 14 – March 30) studying Welsh and Zhou – in detail along with several other references identified during counsel's independent invalidity search – to evaluate their significance and determine whether they merited supplementation. Greeson Decl., Ex. A to Motion, at ¶ 5. It was not until around March 31 that Defendants determined that supplementation was necessary. *Id*. ¶ 7. When Defendants reached that decision, they immediately disclosed their intent to seek leave by sending formal notice to BT on April 2. *Id*. Defendants spent the next three weeks following the parties' meet-and-confer preparing the Motion and drafting two detailed claim charts for Welsh (38 pages) and Zhou (41 pages). *Id*. ¶ 9. Defendants simply did not sit idly by for six weeks after they first identified Welsh and Zhou. To the contrary, they worked quickly to evaluate the materiality of both references, immediately disclosed their intent to seek leave once formed,

7

promptly disclosed the prior art to BT, and then worked quickly thereafter to prepare claim charts corresponding to both references.

In any event, a three-week delay between the time Defendants notified BT of their intent to amend their contentions and the time Defendants filed their Motion does not demonstrate a lack of diligence. Defendants chose to inform BT sooner rather than later of both references and their intent to include them in their invalidity contentions. Defendants then drafted the detailed claim charts and provided them as exhibits to their Motion as a courtesy to BT, to avoid any suggestion of undue surprise or prejudice by BT. The fact that Defendants took the time and effort to draft such detailed claim charts cannot and should not be held against them when BT was already on notice of the need to supplement and the grounds for same. For these reasons, it would be manifestly "unjust for information so highly material to 'the merits to be avoided on the basis of such mere technicalities.'" *Yodlee*, 2007 WL 1454259, at *2 (internal quotations and citations omitted) (where "the newly discovered prior art is more material than 'any one of the dozens of prior art references discussed in [defendant]'s Final Invalidity Contentions'").

**B. BT Has Failed To Establish Undue Prejudice.**

BT will not be prejudiced if Defendants were to add two prior art references, especially when BT has been aware of one of those references for years. BT merely says that it would be prejudiced by having to analyze Welsh and Zhou "on top of what Defendants have already cited" because of the short time left for fact discovery and the "abbreviated" schedule for expert discovery. Response, D.I. No. 202, at 16. BT's argument lacks merit for several reasons.

First, adding Welsh and Zhou as invalidity references cannot unduly prejudice BT because BT has been aware of Zhou for years (*see* Motion, D.I. No. 200, at 1), and Defendants placed BT on notice of both Welsh and Zhou nearly three months before expert rebuttal reports

are due. *See* D.I. No. 197 (resetting the pretrial schedule). Moreover, Defendants have already provided detailed claim charts for both references. *Yodlee*, 2007 WL 1454259, at *3 (allowing amendment where defendant notified plaintiff of the new prior art over two months before the fact discovery cutoff).

Second, BT's suggestion that two additional references would somehow overwhelm its experts or require them to expend additional resources is similarly unavailing. "[T]he fact that some additional work may be required does not constitute undue prejudice." *Abraxis BioScience, LLC v. Actavis, LLC*, No. CV 16-1925 (JMV), 2017 WL 2079647, at *4 (D.N.J. May 15, 2017). *See also Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 4:16-CV-00119-HSG (KAW), 2018 WL 5619743, at *6 (N.D. Cal. Oct. 29, 2018); *Digital Ally, Inc. v. Taser Int'l, Inc.*, No. 16-CV-2032-CM-TJJ, 2018 WL 1138283, at *3 (D. Kan. Mar. 2, 2018) (Defendant had previously identified 24 prior art publications and provided over 800 pages of exemplary claim charting. In light of the amount of references already at issue in the litigation, the court was "not convinced that [the] Plaintiff will be unduly prejudiced by [the] Defendant's amendment of its invalidity contentions to add one prior art reference.").

Finally, Defendants bear the burden of proving invalidity and, thus, it will be their expert addressing the subject in the first instance. Given how long BT has already been on notice of Welsh and Zhou, sufficient time exists for BT's expert to address those references in rebuttal.

In sum, BT cannot claim any unfair prejudice. Nevertheless, Welsh and Zhou are so important that, if the Court deems it just and fair to do so as a condition to adding those invalidity references to their infringement contentions, Defendants will withdraw one or more earlier-charted references.

9

## III.
## CONCLUSION

Defendants respectfully request that the Court grant their motion for leave to supplement their invalidity contentions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Lucinda C. Cucuzzella*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
ccucuzzella@mnat.com

*Attorneys for Defendants IAC/Interactive Corp, Match Group, Inc. and Match Group, LLC*

OF COUNSEL:

James S. Renard
Robert Greeson
Erik O. Janitens
Jacqueline G. Baker
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-2784
(214) 855-8000

Robert L. Hails
T. Cy Walker
Cassandra J. Simmons
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403
(202) 861-1500

May 21, 2020

10

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 21, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Jonathan A. Choa, Esquire<br>POTTER ANDERSON & CORROON LLP<br>1313 North Market Street<br>Hercules Plaza, 6th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Daniel A. Boehnen, Esquire<br>Grantland G. Drutchas, Esquire<br>Jeffrey P. Armstrong, Esquire<br>George T. Lyons, III, Esquire<br>MCDONNELL BOEHNEN HULBERT<br>& BERGHOFF LLP<br>300 South Wacker Drive<br>Chicago, IL  60606<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Lucinda C. Cucuzzella*
_____
Lucinda C. Cucuzzella (#3491)

11