IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 18-366-WCB |
| IAC/INTERACTIVECORP, MATCH | § | |
| GROUP, INC., MATCH GROUP, LLC, and | § | |
| VIMEO, INC., | § | |
| | § | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion by defendants IAC/InterActiveCorp; Match Group, Inc.; and Match Group, LLC (collectively, "IAC") to amend their invalidity contentions by adding two new prior art references. The plaintiff, British Telecommunications PLC ("BT") opposes the motion on the ground that it is untimely and not supported by a showing of good cause. In addition, BT contends that IAC's current invalidity contentions recite more prior art references than were permitted by a prior order of the Court.

## BACKGROUND

Following extensive pretrial proceedings and a substantial narrowing of the scope of this dispute, this case now involves four claims of a single patent asserted by BT against IAC, U.S. Patent No. 7,243,105 ("the '105 patent"). IAC served its final invalidity contentions on November 27, 2019. In January of this year, the parties brought before the Court a dispute over those invalidity contentions. BT complained that IAC had included an unreasonably large number of references in its invalidity contentions. After briefing and argument, I agreed with BT and ordered IAC to limit its invalidity contentions to no more than 15 references in no more than 30

combinations.  Dkt. No. 200-1, Exh. C (Transcript of Jan. 17, 2020, Telephonic Hearing), at 55.  I also noted, however, that I would permit IAC to amend its contentions and exceed those limits upon a showing of good cause.  *Id.* at 55–56.  I directed IAC to submit revised final invalidity contentions to BT by February 28, 2020.  IAC served its revised final invalidity contentions on that date.

On February 27, 2020, four lawyers from a law firm that was new to the case entered appearances on behalf of IAC.  On or about March 14, 2020, according to IAC, the new lawyers identified two prior art references that they characterized as "anticipatory prior art."  Dkt. No. 200-1, Exh. A., at 2.  Those references were not among those included in IAC's February 28, 2020, invalidity contentions.  The two new references were: (1) European Patent Publication No. 2,354,089, entitled "Artificial Intelligence User Profiling" ("Zhou"); and (2) U.S. Patent No. 6,767,691 entitled "Predicting Content Choices By Searching a Profile Database" ("Welsh").  IAC had originally charted the Zhou reference as part of an obviousness combination in IAC's November 2019 invalidity contentions.  But IAC did not include any claim charts that were directed to the Zhou reference in IAC's revised final invalidity contentions that were served in February 2020.  The Welsh reference was altogether new.

After analyzing the Zhou and Welsh references, IAC's lawyers concluded that those references should have been included in IAC's invalidity contentions.  IAC's new counsel then advised BT's counsel that IAC intended to supplement its invalidity contentions.  After BT's counsel indicated that BT would oppose a motion to amend IAC's invalidity contentions, IAC's new counsel prepared a motion to amend IAC's invalidity contentions accompanied by detailed claim charts based on the Zhou and Welsh references.  On April 30, 2020, IAC filed the present

motion requesting leave to add the Zhou and Welsh references to the revised final invalidity contentions that IAC had served on BT on February 28, 2020.  Dkt. No. 200.

In its motion for leave to amend its invalidity contentions, IAC argued that good cause exists to add the new references because (1) IAC added a new law firm to its defense team at the end of February 2020, and the new lawyers demonstrated due diligence by promptly locating the Zhou and Welsh references and promptly informing BT of IAC's intention to supplement its invalidity contentions; (2) the Zhou and Welsh references are highly material—more material, in fact, than any of the references contained in IAC's February 28 invalidity contentions; and (3) BT will not be unfairly prejudiced by IAC's proposed amendment.

BT opposed IAC's motion.  Dkt. No. 202.  It argued that IAC had not shown good cause to amend its invalidity contentions, primarily because IAC was not diligent in locating and disclosing the Zhou and Welsh references.  In addition, BT argued that IAC's February 28, 2020, invalidity contentions contain more prior art references than the number permitted by the Court's January 17, 2020, order.  BT further requested that the Court bar any mention at trial of any prior art references that were not charted in IAC's February 28, 2020, invalidity contentions.

## DISCUSSION

As noted, in my January 17, 2020, order I advised IAC that it would be permitted to amend its invalidity contentions upon a showing of good cause.  In determining whether a party has demonstrated good cause to amend its contentions, the key factor that courts have considered is whether that party has shown diligence both in discovering that an amendment was necessary and in moving to amend after that discovery.  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366–67 (Fed. Cir. 2006); *Bayer Cropscience AG v. Dow AgroSciences LLC*, No. CV 10-1045, 2012 WL 12904381, at *2 (D. Del. Feb. 27, 2012).  "'Good cause' requires a showing

of diligence." *O2 Micro*, 467 F.3d at 1366; *see also Bayer*, 2012 WL 12904381, at *1; *Banks v. City of Philadelphia*, 309 F.R.D. 287, 290–91 (E.D. Pa. 2015).

If the moving party can establish diligence, other considerations pertinent to the good cause inquiry come into play, including the importance of the new information, the difficulty of locating the new information, any gamesmanship that is evident from the untimely disclosure, and the potential prejudice to the opposing party that would result from permitting the belated amendment. *See Bayer*, 2012 WL 12904381, at *3; *Bombardier Recreational Prods., Inc v Arctic Cat, Inc.*, No 12-cv-2706, 2014 WL 2945877, at *5 (D. Minn. Apr. 28, 2004); *Yodlee, Inc. v. CashEdge, Inc.*, No. C05-01550, 2007 WL 1454259, at *2 (N.D. Cal. May 17, 2007); *Kroy IP Holdings, LLC v. AutoZone, Inc.*, No. 2:13-CV-888, 2014 WL 7463099, at *1 (E.D. Tex. Dec. 30, 2014); *Streak Prods., Inc. v. Antec, Inc.*, No. C09-04255, 2010 WL 3515752, at *1 (N.D. Cal. Sept. 8, 2010). Unlike the liberal policy for amending pleadings, the philosophy behind amending infringement and invalidity contentions is decidedly conservative, as it is designed to "'require parties to crystallize their theories of the case early in the litigation[.]'" *O2 Micro*, 467 F.3d at 1364 (quoting *Atmel Corp. v. Info. Storage Devices*, No. C 95-1987, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998)).

In this case, the standard for finding good cause is even more exacting.  In my order limiting the number of prior art references that IAC was permitted to assert, I advised IAC that I would apply a strict standard of good cause before allowing any further amendments.  Because the amended invalidity contentions filed on February 28, 2020, were already several months past the date on which the final invalidity contentions were supposed to be filed, I explained that any request for a further amendment would require a showing "of good cause which would need to be specific on a reference by reference basis and would need to show that the variance from the 15

4

references in 30 combinations is necessary for the defendant to present its invalidity cases at trial." Dkt. No. 200-1, Ex. C, at 55–56.  For the reasons set forth below, I conclude that IAC has not satisfied its burden under that standard by showing good cause for adding the Zhou and Welsh references to its invalidity contentions at this late stage of the proceedings.

1.  To begin with, there is no force to IAC's argument that the presence of new counsel supports its claim of diligence.  Courts have consistently held that the substitution of counsel does not support a finding of good cause to make untimely amendments to infringement contentions, invalidity contentions, or other pleadings.   Rather, the diligence inquiry must include an assessment of the diligence of the original attorneys.  *See GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, No. CV 14-877, 2016 WL 7319670, at *3 (D. Del. Dec. 15, 2016) ("new counsel's entry into a case does not serve as a magic wand that enables the party to conjure up a showing of good cause"); *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738, 2020 WL 109063, at *4 (N.D. Cal. Jan. 9, 2020) ("[Defendant's] diligence arguments rest on new counsel's prompt search along with its prompt disclosure of the systems after their discovery. . . .  That is not the standard: 'The critical issue is not when [the party seeking to amend] discovered [the] information, but rather, whether they could have discovered it earlier had it acted with the requisite diligence.'" (alterations in original) (citations omitted)); *La Jolla Spa MD, Inc. v. Avidas Pharms. LLC*, No. 17-1124, 2018 WL 6523048, at *3 (S.D. Cal. Dec. 12, 2018) ("the fact that Plaintiff recently retained new counsel does not establish good cause"); *FTC v. Roca Labs, Inc.*, Case No. 8:15-cv-2231, 2017 WL 11002078, at *2 (M.D. Fla. May 2, 2017) ("[T]hat defendants have obtained new counsel and have embarked on new litigation strategies, are not sufficient to establish good cause."); *Berger v. Rossignol Ski Co.*, No. C 05-02523, 2006 WL 1095914, at *4 (N.D. Cal. Apr. 25, 2006) ("[T]he addition of co-counsel is not good cause. To hold otherwise would mean that a

5

party could avoid the Local Rules simply by adding a lawyer to the pleadings."); *Medtronic Sofamor Danek USA, Inc. v. Nuvasive, Inc.* Case No. 08 CV 1512, 2010 WL 11452386, at *2 (S.D. Cal. June 25, 2012) (same); *see also Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (denying, as based on "an insufficient reason," Ansam's request to amend its complaint on the ground that Ansam's prior counsel had failed to conduct substantive discovery and that it was only after new counsel was substituted that Ansam discovered the information that formed the basis of its new claim).

IAC cites only a single case in support of its theory that the diligence inquiry should take the addition of its new defense team to the case into account. Dkt. No. 200, at 9–10 (citing *Yodlee*, 2007 WL 1454259, at *1). However, the *Yodlee* case, on which IAC relies, provides no support for IAC's position. In summarizing the facts in the background section of its opinion, the court in that case merely noted in passing that the defendant had changed counsel and that its new counsel had discovered the new prior art that the defendant wished to add to its invalidity contentions. *Yodlee*, 2007 WL 1454259, at *1. However, the court did not rely on that fact in analyzing whether good cause existed. *Id.* at *2–4.

Accordingly, the proper focus of the diligence inquiry is not principally on IAC's diligence in locating disclosing the Zhou and Welsh references after the new attorneys were added to IAC's defense team, but on whether IAC exhibited diligence in discovering those references from the outset of the litigation.

Courts have also uniformly held that a change in legal strategy does not constitute good cause to amend infringement or invalidity contentions. *See St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. CA 04-1436, 2012 WL 1015993, at *6 (D. Del. Mar. 26, 2012) ("A strategic mistake does not equate to a showing of good cause[.]"); *Lyden*

*v. Hogan Dedicated Servs., LLC*, No. 15-9289, 2016 WL 6778941, at *2 (D. Kan. Nov. 16, 2016) ("A change in legal strategy or the errors of past counsel do not equate to due diligence."); *Quinn v. Deutsche Bank Nat'l Trust Co.*, Civil Action No. 13-115, 2014 WL 977632, at 4 & n.11 (S.D. Ala. Mar. 12, 2014) (disagreement with strategy decisions of former counsel is not good cause); *Marlowe Patent Holdings LLC v. Dice Elecs., LLC*, 293 F.R.D. 688, 701 (D.N.J. 2013) ("*Ex post facto* disagreement with strategic decisions of counsel, made in the course of litigation, does not constitute good cause"); *Berger*, 2006 WL 1095914, at *5 (denying motion for leave to amend due to lack of good cause where "delay suggests that the omission of [certain patent infringement] contentions . . . were not 'errors,' but were instead a deliberate strategic course which plaintiffs now wish to change").

2.  In light of those principles, IAC's argument that it has good cause to add the Zhou reference to its invalidity contentions is weak.  Zhou was not a new reference, previously unknown to IAC and its attorneys.  Rather, IAC identified and charted Zhou in its final invalidity contentions that were served in November 2019.  However, IAC omitted any claim charts directed to the Zhou reference in its revised final invalidity contentions that were served on February 28, 2020.  It is thus apparent that IAC's original set of lawyers (all of whom are still listed as counsel in the case for IAC) had a different opinion about the significance of Zhou from the four new lawyers who entered their appearances in the case at the end of February of this year.[1]  As explained above, however, a new strategic assessment of the importance of a particular prior art reference does not constitute good cause for an untimely amendment of a party's invalidity contentions, even if there

---

[1]  IAC contends that it has "complied with the Court's [January 17, 2020,] order and remain within the Court's limit, even after adding Zhou and Welsh."  Dkt. No. 208, at 2.  Based on that statement, it is clear IAC did not drop the Zhou reference from its February 28, 2020, revised invalidity contentions because IAC thought that the reference would put IAC's contentions over the limit set by the Court's January 17 order.

is new counsel.  I will therefore not allow IAC to supplement its invalidity contentions with claim charts directed to the Zhou reference.

3.  The request to amend by adding the Welsh reference presents a more difficult issue. Unlike Zhou, the Welsh reference was apparently not known to IAC prior to the arrival of the new attorneys as counsel for IAC.  However, IAC asserts that its new defense team was able to discover Welsh, a published U.S. patent, within two weeks of joining the defense team in this case.  That certainly does not suggest that discovering Welsh presented any particular difficulties, and IAC does not persuasively argue that it did.  Although IAC contends that the Welsh reference "was difficult to uncover," Dkt. No. 203, at 5, IAC provides no supporting explanation as to why that was the case.  Indeed, it is difficult to reconcile IAC's contention that "Welsh actually describes the '105 Patent's 'invention' in the same level of detail and *with the same terminology used in the asserted claims*" with IAC's contention that the Welsh reference was difficult to locate.  Dkt. No. 203, at 4 (emphasis added).  IAC offers no explanation at all for its failure to discover the Welsh reference in time to include Welsh in its initial invalidity contentions.  This is therefore not a case in which the difficulty of unearthing a prior art reference is a factor cutting in favor of the moving party's showing of diligence.

Nor did IAC act expeditiously after it found the Welsh reference on March 14, 2020. Although the close of fact discovery was impending, IAD did not notify BT's counsel of the new references until April 2, 2020, and IAC did not file its motion to supplement until almost a month later, on April 30, 2020.  In another setting, such delays might not be significant, but given the stage of the case at the time, IAC's delay of a month and a half between discovering the Welsh reference and moving to supplement its invalidity contentions did not reflect an appropriate degree of urgency on its part.  In sum, IAC failed to act with diligence in discover the Welsh reference,

and IAC did not promptly move for leave to amend its contentions once it had discovered that reference.

Despite IAC's lack of diligence, it does not appear that IAC has engaged in gamesmanship with regard to the Welsh reference. Rather, it simply appears that IAC hired new counsel who discovered a new prior art reference. And granting leave to amend would not likely be severely prejudicial to BT. Although adding any new references at this stage of the case will require BT and its experts to do more work, BT does not persuasively dispute IAC's contention that adding the Welsh reference will not require BT to expend substantial additional resources. *Abraxis BioScience, LLC v. Actavis, LLC*, No. CV 16-1925 (JMV), 2017 WL 2079647, at *4 (D.N.J. May 15, 2017) ("the fact that some additional work may be required does not constitute undue prejudice"). Nor does BT contend that more factual discovery would be required. And while the schedule for expert reports and discovery has been truncated, the Court does not believe that adding a single prior art reference would overwhelm BT's experts during the period allotted for expert discovery. *See id.*; *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-CV-0541, 2013 WL 5674834, at *11 (S.D. Cal. Oct. 16, 2013) (plaintiff was not unduly prejudiced by the addition of one prior art reference after discovery deadline closed but before experts were deposed). With that said, however, it is likely that allowing the Welsh reference to be added to IAC's invalidity contentions would result in at least  some prejudice to BT in the form of additional work during the expert discovery part of the case, and expanding the case even slightly at this point would put some strain on an already stressed schedule. There is not currently much room for further amendments to the case schedule, so adjustment of the schedule is not available as a remedy for any prejudice that BT may suffer were the amendment to the invalidity contentions to be allowed.

In sum, granting the motion to amend would result in some prejudice to BT, but the degree of potential prejudice is not so great as to make prejudice a dispositive factor in deciding the motion.

What is left is the importance of the Welsh reference to the case.  IAC argues that the Welsh reference is extremely important and for that reason should not be excluded from the jury's consideration simply because it has been raised late.  BT does not dispute IAC's claim that Welsh is a material reference, but it argues that IAC has failed to demonstrate that Welsh is "any better or different than, as opposed to merely cumulative of, [IAC's] 6 current anticipation arguments." Dkt. No. 202, at 8.

In an order entered after the opening briefs on this motion had been filed, I directed IAC to explain in its reply brief how the Welsh reference was superior to other references already charted in IAC's invalidity contentions.  In response, IAC did not address the merits of the Welsh reference in any detail or conduct a detailed comparison of Welsh with the previously cited prior art.  Instead, IAC simply contended that Welsh was a superior reference to the references already cited in IAC's invalidity contentions because a "lay jury would more easily understand how the [asserted patent's] claim elements are found in Welsh." Dkt. No. 203, at 3; *see also id.* at 4 ("Welsh 'looks' more like the [asserted patent], even if other references cited in Defendants [invalidity] contentions satisfy the [asserted patent's] claim elements . . . .").  According to IAC, Welsh "discloses the same two-rule-set architecture that is set forth in the '105 Patent's claims and alleged in the '105 Patent to be an improvement over prior art systems," and Welsh "describes the use of meta-rules to change the importance of a first set of fuzzy rules . . . to update a user profile."  *Id.* IAC did not otherwise demonstrate in what ways Welsh was a superior reference to the other references already of record.  IAC thus in effect rested its argument regarding the importance of the Welsh reference on its contention that Welsh would likely have a greater impact on the jury.

10

An argument based on incremental jury appeal, even if there is some force to it, is not on its face a compelling justification for allowing a new reference to be added at this late date in the proceedings.

I have given close consideration to whether the Welsh reference really is superior to the other references relied upon by IAC, even though IAC has provided little help in conducting that analysis. Based on my review of IAC's claim charts for the Welsh reference and several of the other allegedly anticipatory references, it appears that Welsh is a somewhat stronger reference, at least with respect to some of the claim limitations. It is far from clear, however, that the relative strength of Welsh is sufficient, standing alone, to justify its belated addition to IAC's invalidity contentions. That is particularly true given the fact that IAC maintains that its six other anticipatory references are also strong invalidating references, even if they may be, as IAC contends, less jury friendly.[2]

For the foregoing reasons, the Court concludes that IAC has failed to meet its burden of establishing good cause to support its motion to amend. IAC will therefore not be permitted to add the Zhou and Welsh references to its invalidity contentions.[3]

---

[2]   For that reason, the "public interest in the elimination of invalid patents" is also not a significant factor supporting IAC's position, contrary to IAC's suggestion. *Nestier Corp. v. Menasha Corp.-Lewisystems Div.*, 739 F.2d 1576, 1581 (Fed. Cir. 1984). IAC has also indicated that it intends to file ex parte reexamination requests based on the Zhou and Welsh references, further reducing the chances that public will not be permitted "full and free competition in the use of ideas which are in reality a part of the public domain." *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969). In any event, even if the omission of the Welsh reference from this litigation results in an adverse decision for IAC, that will not affect the ability of any other prospective defendant to rely on the Welsh reference in seeking to invalidate the '105 patent. The public interest in eliminating invalid patents will therefore not be affected except insofar as it applies to IAC.

[3] The parties also analyze whether the *Pennypack* factors support IAC's motion to amend. *See Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894 (3d Cir. 1977). Neither party, however, affirmatively contends that the *Pennypack* test applies. In any event, the parties' *Pennypack* arguments largely repeat the arguments already analyzed in this order, and the Court

4.  The parties also dispute whether IAC is relying on more than 15 prior art references, the limit I set in the January 17, 2020, order.  According to BT, IAC cited more than 100 references in its February 28, 2020, invalidity contentions and provided claim charts for 16 of those references.  BT contends that the Court should bar IAC's reliance "upon anything other than the 16 charted references."  Dkt. No. 202, at 3.  IAC responds that its revised final invalidity contentions included only nine charted references.  Dkt. No. 205, at 2.  In particular, IAC asserts that BT improperly counted two prior art references—"the admitted prior art," which is described in the asserted patent, and the "Amazon Recommender System"—as each constituting multiple references.  Dkt. No. 208, at 1.  IAC further contends that the non-charted references are going to be used as "background material," which is permissible under established law.  Dkt. No. 205, at 1–2.

I agree with IAC that the number of charted references does not exceed the limit set by the January 17, 2020, order.  The "admitted prior art" chart appears to consist of three separate references: Kamyab, Azvine, and WO 02/080056.  However, the Amazon Recommender System appears to constitute a single prior art reference.  It was permissible for IAC to use several documents as evidence about how a single prior art system worked.  *See IP Innovation L.L.C. v. Red Hat, Inc.*, No. 2:07-CV-447, 2010 WL 9501469, at *4 (E.D. Tex. Oct. 13, 2010); *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024, 2016 WL 861065, at *2 (N.D. Cal. Mar. 5, 2016).

Accordingly, I conclude that IAC did not exceed the Court's limit of 15 prior art references. In any event, BT does not object to the alleged use of "16 charted references."  Dkt. No. 202, at 3. Even counting the five documents that describe the Amazon Recommender System as five prior art references, the number of IAC's charted references does not exceed 16.

---

would not reach a different conclusion under *Pennypack*.

Finally, I will not impose a strict rule barring any mention of non-charted references for any purpose, as BT urges.  While BT is correct that IAC may not use those non-charted references as invalidating prior art references, there are other, permissible uses for which they may be relevant and admissible.  As IAC notes, for example, courts have frequently declined to strike undisclosed references (let alone disclosed references) from expert reports, when those references are used only as "background" material.  *See TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-954, 2019 WL 4346530, at *3 (D. Del. Sept. 12, 2019); *Pavo Sols. LLC v. Kingston Tech. Co.*, No. 814-CV-01352, 2019 WL 8138163, at *11 (C.D. Cal. Nov. 20, 2019); *Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, No. 2:14-CV-203, 2015 WL 7303352, at *2 (E.D. Tex. Aug. 25, 2015); *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587, 2015 WL 757575, at *30 (N.D. Cal. Feb. 20, 2015); *Verinata Health, Inc. v. Sequenom, Inc*., No. C 12-00865 SI, 2014 WL 4100638, at *8 n.7 (N.D. Cal. Aug. 20, 2014); *but see Life Techs. Corp. v. Biosearch Techs., Inc.*, No. 12-cv-852, 2012 WL 4097740, at *1–2 (N.D. Cal. Sept. 17, 2012).  I recognize that "the line between when a reference is used as background material, and when it is used as an anticipation or obviousness reference, can be difficult to draw."  *Finjan, Inc. v. Sophos, Inc.*, Case No. 14-cv-1197, 2016 WL 2988834, at *12 (N.D. Cal. May 24, 2016).  Nonetheless, I will expect the parties to be cognizant of that distinction, and I will police that line to ensure that such references "are not asserted as invalidating prior art references."  *Id.*

It would be premature at this point to bar IAC from making any mention of non-charted references for any purpose, as BT urges.  After expert reports have been served, BT may move to strike any specific portions of IAC's expert reports that BT believes rely for an improper purpose on references that were not among the list of 15 or fewer specific references charted in IAC's invalidity contentions.

IT IS SO ORDERED.

SIGNED THIS 8th day of June, 2020.


_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE