# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BRITISH TELECOMMUNICATIONS PLC,　　§
　　　　　　　　　　　　　　　　　§
　　　*Plaintiff*,　　　　　　　　　§
　　　　　　　　　　　　　　　　　§
　　v.　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　§　　　Civil Action No. 18-366-WCB
IAC/INTERACTIVECORP, MATCH　　　§
GROUP, INC., MATCH GROUP, LLC, and　§
VIMEO, INC.,　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　§
　　　*Defendants*.　　　　　　　　§

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is a motion by the defendants (collectively, "IAC") for a stay of this action

pending reexamination of claim 10 of U.S. Patent No. 7,243,105 ("the '105 patent") by the Patent

and Trademark Office ("PTO").  The motion is GRANTED.

## BACKGROUND

The '105 patent is owned by plaintiff British Telecommunications PLC ("BT").  On March

8, 2018, BT filed this action against IAC alleging infringement of six of BT's patents by IAC and

its corporate affiliates.  I granted IAC's motion to dismiss Counts I, II, III, and VI of the complaint,

which were based on four of the six asserted patents, on grounds of patent ineligibility under 35

U.S.C. § 101.  *British Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293 (D. Del.

2019).  BT took an appeal from the dismissal order with respect to one of those four patents, but

the dismissal order was affirmed on appeal.  *British Telecomms. PLC v. IAC/InterActiveCorp*, 813

F. App'x 584 (Fed. Cir. 2020).  I severed Count V of the complaint, which was based on the fifth

patent, U.S. Patent No. 7,974,200, and I stayed that severed action pending *inter partes* review of

various claims of that patent by the PTO.  Dkt. No. 96.  The present case, which is based on Count

IV of the complaint, has been narrowed so that it now involves an infringement allegation of only a single claim from the sixth patent—claim 10 of the '105 patent.  This case is currently scheduled for a week-long jury trial beginning on November 30, 2020.

Claim 10 of the '105 patent recites as follows:

> A method of updating a user profile, the user profile being suitable for use in providing customized services to a respective user, the method comprising:
> (i) storing a first set of rules;
> (ii) generating a set of personalized rule weightings according to a second set of rules and with reference to a set of user preference data;
> (iii) receiving event statistics relating to a user's activity; and
> (iv) applying an inference engine to infer and output at least one update to a profile for the user according to said first set of rules weighted according to said generated set of personalized rule weightings, using said received event statistics.

In June 2020, BT dropped its allegations of infringement as to apparatus claims 1, 6, and 7 of the '105 patent, leaving only method claim 10 of the '105 patent in dispute.  On June 26, 2020, IAC filed a request with the PTO seeking *ex parte* reexamination of that claim.  On August 18, 2020, the PTO granted that request, finding that the references cited by IAC had raised several substantial new questions of patentability as to method claim 10 of the '105 patent.

The examiner made a number of findings in support of the order granting reexamination. First, the examiner found that there is a substantial likelihood that a reasonable examiner would consider the teachings of U.S. Patent No. 6,757,691 ("Welsh") to be important in deciding whether claim 10 of the '105 patent is patentable.  Dkt. No. 243-1, at 12.  In particular, the examiner found that Welsh teaches the following limitations of claim 10: (1) storing a first set of rules; (2) a second set of rules; (3) personalized rule weighting; and (4) "one update to a profile for the user according to said first set of rules weighted according to said generated set of personalized rule weightings." *Id.* at 11–12.  The examiner stated that "it appears from the record" that those limitations were the "key feature[s] missing from the prior art at the time of allowance of claim 10 of the '105 patent."

*Id.* at 9.  The examiner further found that Welsh presents "a new, non-cumulative technological teaching that was not previously considered, and discussed on the record during the prosecution of the application[] that resulted in the '105 patent." *Id.* at 12.

Second, the examiner found that there is a substantial likelihood that a reasonable examiner would consider the teachings of U.K. Patent Application No. GB 2,354,089 ("Zhou") to be important in deciding whether claim 10 of the '105 patent is patentable.  Dkt. No. 243-1, at 13.  In particular, the examiner found that Zhou teaches the following limitations of claim 10: (1) storing a first set of rules; (2) a second set of rules; (3) personalized rule weighting; and (4) "one update to a profile for the user according to said first set of rules weighted according to said generated set of personalized rule weightings." *Id.*  As with Welsh, the examiner found that Zhou presents "a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application" for the '105 patent.  *Id.*

Third, the examiner found that there is a substantial likelihood that a reasonable examiner would consider the teachings of the Applicant Admitted Prior Art ("AAPA"), together with Welsh and Zhou, to be important in deciding whether claim 10 of the '105 patent is patentable.  *Id.* at 14.  The examiner stated that "each of Welsh or Zhou discloses the key limitations that raises [a substantial new question of patentability] and therefore, the AAPA in view of Welsh or Zhou teaches and/or renders obvious every claim limitation of claim 10." *Id.*  In sum, the examiner found substantial new questions of patentability concerning claim 10 of the '105 patent based on four sets of references: Welsh, Zhou, and the Admitted Prior Art in combination with either Welsh or Zhou.  *Id.* at 12–14.

The order granting reexamination provided that the patent owner may submit a responsive statement by October 18, 2020, and the challenger may submit a reply two months after the patent

owner serves its response. *Id.* at 4. The order noted that extensions of time would not be permitted in the reexamination proceeding and that the proceeding would be conducted "with special dispatch," as required by statute, 35 U.S.C. § 305. Dkt. No. 243-1, at 16. Thus, the parties' submissions to the examiner in the reexamination proceeding will be completed by December 18, 2020, at the latest. *See id.* at 4, 16.

Following the issuance of the order granting reexamination, IAC filed this motion seeking a stay of proceedings in this court pending resolution of the reexamination proceedings. Dkt. No. 245. BT responded, opposing a stay, Dkt. No. 249, and IAC filed a reply, Dkt. No. 252.

## DISCUSSION

The question whether district court proceedings should be stayed when post-grant proceedings are instituted on some or all of the patent claims at issue in the district court litigation has arisen frequently, particularly in the years since the enactment of the Leahy-Smith America Invents Act ("AIA") in 2011. The principles governing that question have been developed by courts in numerous cases involving different types of post-grant proceedings, including reexamination, *inter partes* review, post-grant review, and covered business methods ("CBM") review.

It is well settled that the power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997). This inherent authority includes the discretion to stay judicial proceedings pending post-grant proceedings that will consider the validity of an issued patent. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (request for a stay pending reexamination).

District courts typically consider three factors when determining whether to grant a stay pending PTO proceedings with respect to a patent in suit: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Princeton Digit. Image Corp. v. Konami Dig. Entm't Inc.*, Nos. CV 12-1461 *et al.*, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) (citing cases). A stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015) (citing cases).

The related context of CBM review provides guidance as to the principles that apply to stay applications in other post-grant proceedings. In the uncodified portion of the AIA directed to CBM review, Congress set forth four factors governing whether a stay should be granted pending CBM review by the Patent Trial and Appeal Board ("PTAB"). Those four factors are:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Pub. L. No. 112-29, § 18(b)(1), 125 Stat. 284, 331 (2011). Those statutory factors largely track the three factors traditionally used by courts in determining whether to grant stays pending post-grant proceedings, with a fourth factor added. *See Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489 (D. Del. 2013) ("This [CBM] statutory test closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte*

reexamination . . . .").  The fourth factor, which requires an inquiry into whether a stay will reduce the burden of litigation on the parties and the court, was intended to ensure that courts apply their discretion to grant stays liberally so as to minimize the duplicative litigation of patent validity issues in parallel forums.[1]  *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2019 WL 3943058, at *3 (D. Del. Aug. 21, 2019).

While Congress's four-factor test for granting stays in the CBM context does not expressly extend to other types of post-grant proceedings, such as *ex parte* reexaminations, the policy considerations are similar in both contexts.  The Federal Circuit and various district courts have held that courts may weigh the fourth factor set forth in the CBM statute when considering staying cases that are co-pending with other types of post-grant proceedings.  *See, e.g.*, *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016); *British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366, 2019 WL 4740156, at *3 (D. Del. Sept. 27, 2019); *Neuro Cardiac Techs., LLC v. LivaNova, Inc.*, No. H-18-1517, 2018 WL 4901035, at *2 (S.D. Tex. Oct. 9, 2018); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346, 2013 WL 6044407, at *2 (W.D. Wis. Nov. 14, 2013).  I will therefore address the "burden of litigation" factor as a component of the factor directed to "simplifying the issues."

The legislative history of the AIA makes it apparent that Congress intended for district courts to be liberal in granting stays pending CBM review.  As Senator Schumer observed regarding the CBM review provision, Congress intended to place "a very heavy thumb on the scale

---

[1] The four-factor test was added to the AIA through an amendment offered by Senator Charles Schumer.  The provision was added in order to encourage district courts to issue stays when district court litigation and post-grant proceedings were co-pending.  Senator Schumer commented: "Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time.  This is unacceptable, and would be contrary to the fundamental purpose of the Schumer-Kyl amendment to provide a cost-efficient alternative to litigation."  157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011).

in favor of a stay being granted" once the PTAB instituted CBM review proceedings.  157 Cong.

Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Chuck Schumer).

Congress's desire to enhance the role of the PTO and limit the burden of litigation on courts

and parties was not limited to CBM review proceedings.  The AIA's legislative history indicates

that Congress viewed both CBM review and *inter partes* review as serving the policy of

adjudicating patent validity in an efficient manner.  *See* H. Rep. No. 112-98, Part I, at 48 (2011)

(statutory post-grant proceedings were designed to be "quick and cost effective alternatives to

litigation"); 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (*inter partes* review was intended to

provide a "faster, less costly alternative[] to civil litigation to challenge patents") (statement of

Sen. Chuck Grassley); *id*. at S5319 (daily ed. Sept. 6, 2011) (post-grant proceedings, including

*inter partes* review, were meant to be "an inexpensive substitute for district court litigation" that

"allows key issues to be addressed by experts in the field") (statement of Sen. Jon Kyl).

In light of the similar policies underlying the CBM and *inter partes* review proceedings, it

is not surprising that courts have applied generally similar analysis to requests for stays in both

settings.  Moreover, given the close parallels between *inter partes* review and other forms of post-

grant proceedings, courts have applied similar stay analysis in the context of reexaminations, such

as the *ex parte* reexamination at issue in this case.  *See Goldfinch Design Studio LLC v. Collector's*

*Universe, Inc.*, No. 20-2542, 2020 WL 5017351, at *1 (D.N.J. Aug. 25, 2020); *BodyMedia, Inc. v.*

*Basis Sci., Inc.*, No. 12-cv-133, 2013 WL 2462105, at *1 (D. Del. June 6, 2013); *Ever Win Int'l*

*Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 505 (D. Del. 2012); *Round Rock Rsch. LLC v.*

*Dole Food Co.*, Nos. 11-1239 *et al.*, 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012).  In particular,

the benefits of reexamination are the same as those served by CBM review: giving the PTO an

opportunity to reconsider patents that have become the focus of litigation, relieving the courts of

the need to decide some patent validity issues, and saving the courts from adjudicating infringement claims based on patents of questionable validity.

That point is made clear by the legislative history of the 1980 statute authorizing the PTO to conduct administrative reexaminations of issued patents. Early versions of the 1980 statute contained a section providing for a stay of court proceedings during reexamination. The stay provision was omitted from the final version of the statute on the ground that it was unnecessary. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). The House Report on the bill that became the 1980 statute, H.R. Rep No. 96-1307, part 1 (1980), explained that a stay provision was unnecessary because "such power [to stay] already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure." *Id.* at 4. Moreover, the House Report anticipated that reexaminations would "provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner," and that reexaminations would permit the validity of patents to be tested in the PTO "where the most expert opinions exist and at much reduced costs." *Id.*

Because of the benefits conferred by PTO post-grant proceedings, courts have concluded that the "liberal policy" in favor of staying cases pending CBM review also applies to staying cases pending other post-grant proceedings. *See British Telecomms.*, 2019 WL 4740156, at *3 (citing cases). In addition to the numerous decisions cited in *British Telecomms.*, 2019 WL 4740156, at *3, courts in many other cases have noted, and acted on, the liberal policy in favor of issuing stays pending post-grant proceedings. *See, e.g., Goldfinch*, 2020 WL 5017351, at *1; *Jiaxing Super Lighting Elec. Appliance Co. v. MaxLite, Inc.*, No. cv-19-4047, 2020 WL 5079051, at *2 (C.D. Cal. June 17, 2020); *Rembrandt Wireless Techs., LP v. Qualcomm Inc.*, No. 8:19-cv-705, 2020

8

WL 5044195, at *2 (C.D. Cal. Apr. 9, 2020); *No Spill, Inc. v. Scepter Canada, Inc.*, No. 18-2681, 2020 WL 1528542, at *2 (D. Kan. Mar. 31, 2020); *Larada Scis., Inc. v. Flosonix Ventures, LLC*, No. 3:18-cv-320, 2020 WL 1481571, at *2 (W.D.N.C. Mar. 23, 2020); *Horizon Glob. Ams. Inc. v. Curt Mfg., LLC*, No. 2:17-cv-11870, 2019 WL 8750416, at *3 (E.D. Mich. Dec. 14, 2019); *DMF, Inc. v. AMP Plus, Inc.*, No. 2:18-cv-7090, 2019 WL 9077477, at *6 (C.D. Cal. Dec. 13, 2019); *Lodge Mfg. Co. v. Gibson Overseas, Inc.*, No. CV 18-8085, 2019 WL 9443180, at *2 (C.D. Cal. Sept. 24, 2019); *Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 956 (N.D. Cal. 2019).

Although the three-factor test set forth above informs the decision whether to issue a stay pending post-grant proceedings, that test merely provides general guidance; it is not a rigid template for decision.  Rather, district courts retain the "discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata Mach. USA*, 830 F.3d at 1362.  "[U]ltimately the Court must decide stay requests on a case-by-case basis," and whether a stay should be granted turns in each case on the totality of the circumstances. *IOENGINE*, 2019 WL 3943058, at *3 (quoting *Norman IP Holdings, LLC v. TP-Link Techs. Co.*, No. 6:13-cv-384, 2014 WL 5035718, at *2 (E.D. Tex. Oct. 8, 2014), and *Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, No. SACV 17-1914, 2019 WL 116784, at *2 (C.D. Cal. Jan. 2, 2019), and citing other cases).  In addition to the cases cited in *IOENGINE*, courts in numerous other contemporaneous and subsequent cases have ruled that stay requests must be decided on a case-by-case basis. *See, e.g.*, *Cellect LLC v. Samsung Elecs. Co.*, No. 19-cv-438, 2020 WL 3425166, at *2 (D. Colo. June 23, 2020); *Jiaxing Super Lighting Elec. Appliance Co.*, 2020 WL 5079051, at *2; *Document Sec. Sys., Inc. v. Nichia Corp.*, No. CV 19-8172, 2020 WL 4529613, at *1 (C.D. Cal. June 15, 2020); *DivX, LLC v. Netflix, Inc.*, Nos. CV 19-1602 *et al.*, 2020 WL 3026034, at *2

(C.D. Cal. May 11, 2020); *Larada Scis.*, 2020 WL 1481571, at *1; *British Telecomms.*, 2019 WL 4740156, at *4; *Lodge Mfg.*, 2019 WL 9443180, at *2; *Zomm*, 391 F. Supp. 3d at 956.

With that caveat, I now turn to each of the principal specific factors courts have recognized as bearing on whether to grant a motion for a stay pending post-grant proceedings in the PTO.

## I.  The State of the Proceedings

One of the factors courts have considered in determining whether to issue a stay pending post-grant proceedings is the state of the district court proceedings, i.e., how far along the district court case is at the time the motion for a stay is filed.

In this case, claim construction and fact discovery have been completed.  Expert discovery is ongoing.  A trial date has been set for November 30, 2020, and thus as of the time the motion for a stay was filed, a period of three months remained before trial.  BT emphasizes that the stay motion has been filed late in the pretrial period.  Stays have been granted in other cases that were similar time periods away from trial, however.  *See CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, Dkt. No. 331 (E.D. Tex. Feb. 14, 2019) (stay granted three months before trial); *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*, No. 03-CV-2223, 2006 WL 1897165, at *8–10 (D. Colo. July 11, 2006) (stay granted less than three months before trial; court cited cases in which stays were granted as little as 20 days before trial).

Moreover, in light of the COVID-19 pandemic, it seems highly unlikely that the present schedule will hold.  Currently, all civil and criminal jury selections and jury trials in the District of Delaware have been continued pending further order from the court.  *See* Standing Order re: Criminal Civil Jury Selections: Jury Trials; and Transition to Phase 2 (D. Del. Sept. 1, 2020). When the court transitions to "phase 2," it will begin conducting jury trials, but at a significantly reduced rate from normal, holding no more than one jury trial at a time.  Furthermore, the court

has announced that for jury trials held in phase two, criminal cases will be given precedence.  And once trials resume, the district court will be faced with the challenge of dealing with the backlog of civil cases that has built up during the past five months.  It thus seems highly likely that, even if the request for a stay were denied, the trial in this case could not be conducted before the end of this calendar year.  Thus, as of the time the motion for a stay was filed, it appears that a period of significantly more than three months remained before trial could be held.[2]

While there has been substantial progress in this case, the most burdensome parts of the case for the parties and the court—preparation for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future.  *See CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, Dkt. No. 331, at 13; *see also Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015) (holding that the district court abused its discretion when it denied a stay prior to trial, explaining that "[d]espite the substantial time and effort already spent in this case, the most burdensome task is yet to come"); *NFC Tech.*, 2015 WL 1069111, at *3 ("[I]t appears likely that the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future.").

In *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871, 2019 WL 1276029 (D. Del. Mar. 20, 2019), the proceedings were roughly as far along as the proceedings in this case:  Claim construction and fact discovery were complete, and expert discovery was nearly concluded.  *Id.* at *2.  The court noted that the case was "further along than is typical for a motion to stay," but nonetheless found that any weight given to the stage of the case was "outweighed by the likelihood that the issues for trial will be simplified by a stay."  *Id.*  Likewise, in this case, the relatively

---

[2]  The date on which the motion for a stay is filed is generally regarded as "the relevant time to measure the stage of litigation," *Virtual Agility, Inc. v. SalesForce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014), which in this case was September 2, 2020.  Dkt. No. 245.

advanced stage of the proceedings is entitled to weight, and thus the "state of the proceedings" factor cuts somewhat against issuing a stay. But that weight is not dispositive and must be balanced against other factors, including the prospect that a stay—and the PTO's ruling in the interim— would simplify the issues for trial, thereby reducing the burden on the parties and the court.

## II. Undue Prejudice or Clear Tactical Advantage

A second factor that courts consider in determining whether to issue a stay of district court litigation pending post-grant proceedings is whether a stay would result in undue prejudice to the non-moving party or provide a clear tactical advantage to the moving party.

As BT argues, its interest in the prompt enforcement of its patent rights is entitled to weight. *See NFC Tech.*, 2015 WL 1069111, at *2. However, that interest is present in every case in which a patentee resists a stay, and that interest is therefore insufficient, standing alone, to establish the undue prejudice necessary to defeat a stay motion. *See BodyMedia, Inc.*, 2013 WL 2462105, at *1 n.1; *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662, 2013 WL 424754, at *2 (D. Del. Jan. 31, 2013) ("[T]he potential for delay does not, by itself, establish *undue* prejudice."); *Ever Win*, 902 F. Supp. 2d at 509 ("Potential delay from reexamination 'does not, by itself, amount to undue prejudice.'" (quoting *Wall Corp. v. BondDesk Grp., L.L.C.*, No. 07-844, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009)); *see also Rembrandt Wireless Techs.*, 2020 WL 5044195, at *3 ("Rembrandt asserts two forms of prejudice: reduction in the quality of evidence due to lapse of time and indefinite delay of the time to trial. . . . [Both] arise[] from the delay necessarily inherent in any stay. . . . That is not enough. Rather, Rembrandt must show it is likely to suffer prejudice beyond what any plaintiff necessarily experiences when its suit is stayed . . . ." (quotations and citations omitted)); *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-cv-495, 2018 WL 4002776,

at *3 (E.D. Tex. Aug. 22, 2018); *VirnetX Inc. v. Apple Inc.*, No. 6:12-cv-855, 2018 WL 398433, at *3 (E.D. Tex. Jan. 12, 2018); *NFC Tech.*, 2015 WL 1069111, at *2.

BT argues that reexamination proceedings are typically slower than *inter partes* review proceedings and that a stay would risk putting this case on hold for years. It is far from clear, however, that granting a stay in this case will delay final resolution of the dispute for as long as BT contends. As noted, the parties' submissions to the examiner in the reexamination proceeding will be completed by December 18, 2020, and by statute the reexamination must be conducted "with special dispatch within the Office." 35 U.S.C. § 305. Moreover, the Manual of Patent Examining Procedure ("MPEP") provides that when cases are involved in litigation, reexamination proceedings "will have priority over all other cases," MPEP § 2261, and when the reexamination is conducted concurrently with litigation, the examination following the patent owner's responsive statement and the challenger's reply "will be expedited to the extent possible," MPEP § 2686.04(I). And because only a single claim is at issue in the reexamination proceeding for the '105 patent, it can be anticipated that the reexamination will take less time than would be the case for reexaminations involving multiple claims or multiple patents.

PTO statistics show that the median pendency time for a reexamination proceeding in recent years has been less than 20 months. *See Ex Parte Reexamination Historical Statistics*, UNITED STATES PATENT AND TRADEMARK OFFICE, pp. 1–8 (Dec. 2019), https://www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_roll_up.pdf. Because the reexamination of the '105 patent will be conducted on an expedited basis, it can be expected to take less time than the median pendency time, i.e., less than 20 months. In addition, the fact that the reexamination

involves only a single claim of a single patent and only two new references suggests that the reexamination proceedings may be far quicker than the median pendency period.[3]

BT also argues that the delay pending the reexamination would be extended by possible appellate proceedings in the PTO and, subsequently, in the Federal Circuit.  There is no reason, however, that a stay of district court proceedings needs to allow for possible appeals from the examiner's decision.  If the examiner confirms claim 10 of the '105 patent, the balance of factors would shift against further extension of any stay, because the likelihood that the claim would ultimately be invalidated would be considerably reduced.  And if the examiner concludes that the claim is unpatentable, there would be no need or justification for resuming the district court proceedings pending BT's exhaustion of its appeal rights.

On the other side of the ledger, as noted, the date on which it will be possible to conduct the jury trial in this case is far from certain.  Rather, it seems highly likely that even if the stay request were denied, the trial in this case would have to be postponed for a significant period. Considering all the circumstances, the delay that would be caused by a stay pending reexamination is likely shorter than BT fears.  While the COVID-19 pandemic adds an additional layer of uncertainty to predicting the amount of delay that would result from a stay, any postponement of the trial caused by the pandemic would mean the period of delay resulting from a stay would be less than under normal circumstances.  For those reasons, I do not find that the delay factor constitutes undue prejudice to BT.

---

[3]  To a significant degree, the speed with which the reexamination proceeding progresses is within BT's control.  For example, although the examiner has given BT two months to file the patent owner's responsive submission, BT can self-expedite the process by filing that submission in less than two months and taking other steps throughout the process to facilitate a rapid resolution of the reexamination.

Aside from BT's general interest in the prompt enforcement of its patent rights, BT has not pointed to any specific hardship or inequity that it will suffer as a result of a stay. The absence of any specific hardship or inequity is a factor that weighs against a finding of undue prejudice. *See Yodlee, Inc. v. Plaid Techs. Inc.*, No. 14-1445, 2017 WL 401896, at *2 (D. Del. Jan. 27, 2017); *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865, 2010 WL 5149351, at *2 (D. Del. Dec. 13, 2010); *Neodron, Ltd. v. Lenovo Grp., Ltd.*, No. 19-cv-5644, 2020 WL 5074308, at *2 (N.D. Cal. Aug. 27, 2020) ("Courts have repeatedly found no undue prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay.").

Courts have found that a stay of litigation would prejudice a patent owner if the parties are direct competitors and the patent owner is likely to suffer a competitive disadvantage from a stay pending reexamination. *See AgroFresh, Inc. v. Essentiv LLC,* No. 16-662, 2019 WL 2327654, at *3 (D. Del. May 31, 2019) ("Courts have recognized that when the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill."); *f'real foods, LLC v. Hamilton Beach Brands, Inc.*, No. 16-cv-41, 2017 WL 10619854, at *1 n.3 (D. Del. Mar. 9, 2017); *Neste Oil*, 2013 WL 3353984, at *3. BT, however, has not shown that it will be subject to such a competitive disadvantage in this case. There is no evidence that BT competes with IAC (through IAC's Match subsidiaries) in the market space that the Match entities occupy. Because BT does not appear to participate in the relevant market, it "will not suffer any loss of market share or erosion of goodwill due to a stay." *Princeton Digit. Image Corp.*, 2014 WL 3819458, at *6; *see also SZ DJI Tech. Co. v. Autel Robotics USA LLC*, No. 16-706, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019) ("[T]he stay of proceedings with respect to a patent Autel does not practice will not greatly harm Autel."); *Bonutti*

*Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, Nos. 12-cv-1107 *et al.*, 2014 WL 1369721, at *5 (D. Del. Apr. 7, 2014) (holding that the plaintiff's status "as a non-practicing entity, rather than a market participant, suggests there is little risk that it will lose sales or goodwill in the market" if a stay is granted); *Market-Alerts*, 922 F. Supp. 2d at 495. The relationship of the parties therefore does not cut against issuance of a stay.

Because BT does not compete against the Match entities, it is likely that any remedy BT might obtain in this case would be limited to an award of damages. And, as the Federal Circuit pointed out in *Virtual Agility Inc. v. SalesForce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014), a stay "will not diminish the monetary damages to which [a patentee] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages." BT has failed to identify any prejudice it would suffer other than a delay in the receipt of a damages award if it succeeds in this action. Prior cases in this district involving stays pending post-grant proceedings have held that such a delay in the payment of damages does not constitute "undue prejudice." *See BodyMedia*, 2013 WL 2462105, at *1 n.1. Further, BT's prejudice from any delay would be mitigated by an award of pre-judgment interest on any judgment that BT might be awarded if it prevails on its infringement claim. In the context of this case, I do not find that degree of prejudice to be "undue."

Nor do I find that granting a stay would confer a clear tactical advantage on IAC. A stay will ensure that the PTO has an opportunity to consider whether claim 10 of the '105 patent was improvidently issued. Since the PTO was responsible for issuing that claim in the first instance, it is appropriate that the PTO have an opportunity to determine if that claim was improperly issued in the first instance. Of course, even if a stay were not granted, the PTO would continue with the reexamination process and would determine whether claim 10 of the '105 patent should be

cancelled.  The only effects of denying a stay would be (1) that the proceedings before the PTO and before the court would proceed concurrently, with the waste of resources entailed in such duplicative proceedings, and (2) that if the district court proceedings resulted in a final court judgment in BT's favor before the PTO reexamination proceeding became final, and the reexamination resulted in the cancellation of claim 10 of the '105 patent, the final judgment as to the validity of claim 10 of the '105 patent would not be affected by the PTO's determination, at least with respect to the parties in this case.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340–45 (Fed. Cir. 2013).  However, the prospect of such a conflict between a district court judgment and the PTO's ruling would be unseemly and should be avoided if possible.

To be sure, the effect of granting a stay would be to allow IAC to litigate the validity of claim 10 of the '105 patent before the PTO in light of the Welsh and Zhou references, when IAC's failure to timely include those references in its invalidity contentions has effectively barred IAC from litigating invalidity theories based on Welsh or Zhou in this court.  However, Congress has provided two separate mechanisms for raising validity challenges—through the administrative process and through litigation in federal court.  A party's failure to raise an issue in a court proceeding does not bar it from raising that issue in an administrative proceeding, so IAC's challenge to the validity of claim 10 based on Welsh and Zhou is not undermined by IAC's failure to preserve that challenge in this court.  To the contrary, denying a stay could have the effect of depriving IAC of its right to an effective administrative remedy notwithstanding Congress's intent to make such a remedy available as a supplement to invalidity defenses in district court litigation.

It appears that IAC's failure to raise the Welsh and Zhou references in this litigation and in administrative proceedings earlier than June 2020 is attributable not to a tactical ploy, but rather to IAC's failure to become aware of or appreciate the strength of those references at an earlier

date.  In addition, IAC suggests that its decision to seek reexamination was triggered by BT's decision to narrow the infringement case to claim 10 of the '105 patent.  In any event, raising the Welsh and Zhou references belatedly has provided no benefit to IAC, and in fact has proved to be a disadvantage, at least to the extent that the failure to include those references in its final invalidity contentions barred IAC from asserting Welsh and Zhou as invalidating references in this litigation.  I discern no clear tactical advantage to IAC from its failure to raise the Welsh and Zhou references earlier in this litigation and its decision to raise those references in its reexamination request only as of June 2020.

Accordingly, I conclude that the factor discussed above—whether BT will experience undue prejudice and whether IAC will gain a tactical advantage—does not counsel against granting a stay of this litigation pending the reexamination proceeding.

### III.  Simplification of the Issues

The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial.  As explained in *NFC Technology*, with respect to *inter partes* review,

> Congress's purpose in creating an inter partes review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed.  Giving the agency the authority to consider the validity of patents in the inter partes review process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation.

2015 WL 1069111, at *4; *RetailMeNot v. Honey Sci. LLC*, No. 18-937, 2020 WL 373341, at *3 (D. Del. Jan. 23, 2020) (quoting *IOENGINE*, 2019 WL 394 3058, at *8).  The same is true for *ex parte* reexaminations.  *See In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

This litigation is a prime example of a case in which a reexamination decision has the greatest likelihood of simplifying issues at trial.  The reexamination of the '105 patent will result in either cancellation, confirmation, or amendment of claim 10, which is the only claim at issue in this litigation.  "When a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot."  *Fresenius,* 721 F.3d at 1340.  In *454 Life Sciences Corp. v. Ion Torrent Systems, Inc.*, No. 15-595, 2016 WL 6594083, at *3 (D. Del. Nov. 7, 2016), the court found a "very strong likelihood that the IPR proceedings will simplify the issues for trial," primarily because the PTAB had granted review with respect to every claim asserted in the district court litigation.  Similarly, in *Finjan, Inc. v. Symantec Corp.* 139 F. Supp. 3d 1032, 1036 (N.D. Cal. 2015), all of the patentee's asserted claims were being challenged in an *inter partes* review.  The *Finjan* court took note of the situation and concluded that "[g]ranting a stay pending [*inter* partes review] is particularly likely to simplify the case when a party has obtained PTO review of each of the asserted claims in the patents-in-suit." *Id.* (quotations and citations omitted).  And in *Ethicon*, 2019 WL 1276029, at *2, the court found that the potential for simplification of the issues was "quite substantial" where 14 of the 15 asserted claims were under review by the PTO.

The same can be said in this case with respect to the '105 patent and the pending reexamination.  If the reexamination results in the cancellation of claim 10, "this litigation would be 'simplified' because it would be concluded."  *Softview LLC v. Apple Inc.*, No. 12-989, 2013 WL 4757831, at *1 (D. Del. Sept. 4, 2013).  If the reexamination results in the amendment of claim 10, the complexion of this case will change dramatically; conducting a trial on a claim that is subsequently amended is an invitation to a waste of resources.  And even if the patentability of

claim 10 is confirmed through reexamination, the reexamination decision will likely clarify some of the invalidity issues presented in this litigation.

In the *Virtual Agility* case, the Federal Circuit noted the significance of the simplification factor when post-grant proceedings are instituted on all the claims at issue in the district court litigation.  759 F.3d at 1314.  The court emphasized that CBM review had been instituted "on *all* asserted claims of the *sole* asserted patent."  *Id.*  The post-grant proceedings could therefore "dispose of the entire litigation," which the court referred to as "the ultimate simplification."  *Id.* The same is true here, as the reexamination will consider the patentability of the only claim at issue in the litigation, claim 10 of the '105 patent.  The simplification factor is thus at its apex.

To be sure, the standard for granting reexamination (the existence of a substantial new question of patentability) is not as rigorous as the standard necessary to trigger *inter partes* review or CBM review (a finding that the disputed claims are more likely than not to be found unpatentable).  *See Aavid Thermalloy LLC v. Cooler Master, Ltd.*, No. C 17-5363, 2019 WL 4009166, at *3 (N.D. Cal. Aug. 26, 2019); *Parsons Xtreme Golf LLC v. Taylor Made Gold Co.*, No. CV 17-3125, 2018 WL 6242280, at *5 (D. Ariz. Nov. 29, 2018).  For that reason, the examiner's findings upon instituting the reexamination do not necessarily provide as strong a basis for concluding that claim 10 is likely to be invalidated or amended relative to similar findings in an *inter partes* review.  However, the standard for reexamination is sufficiently exacting that the great majority of *ex parte* reexaminations end in the cancellation or amendment of at least some of the reexamined claims.[4]   In this case, the examiner found that substantial questions of

---

[4]  PTO statistics show that only 21 percent of all *ex parte* reexaminations have resulted in all reexamined claims being confirmed without amendment.  *Ex Parte Reexamination Historical Statistics*, UNITED STATES PATENT AND TRADEMARK OFFICE, p. 2 (Dec. 2019), https:// www.uspto.gov/sites/default/files/documents/ex_parte_historical_stats_roll_up.pdf.  That number has remained fairly steady over the past eight years.  *See id.* at pp. 2–16.

patentability are raised by two separate prior art references and two combinations of those references with the applicant's admitted prior art.  It would be inappropriate at this point to assess the strength of the references that are subject to reexamination.  *See Virtual Agility*, 759 F.3d at 1313.  Yet, based on the examiner's finding that multiple prior-art combinations present substantial new questions of patentability as to claim 10, there appears to be a high likelihood that claim 10 will be cancelled or amended in a way that will dramatically affect this litigation.  In its brief, BT relies heavily on the decision denying a stay in *Cronos Technologies, LLC v. Expedia, Inc.*, Nos. 13-1538 *et al.*, 2016 WL 1089752 (D. Del. Mar. 21, 2016).  In that case, the court found that the simplification factor "neither favors nor disfavors a stay."  *Id. at *1.*  The court emphasized that there were multiple claims being challenged in the reexamination proceedings and that while "there is at least a potential for significant simplification of the issues," if the PTO did not invalidate all of the asserted claims, "significant issues will remain to be resolved."  *Id.*  In this case, by contrast, only a single claim is at issue in the reexamination proceeding, which makes the prospect of simplification, in the form of cancellation of the only claim in dispute, much more likely.

I therefore conclude that there is a high likelihood that the reexamination proceeding will simplify this litigation and reduce the burden on the parties and on the court, and that the simplification factor therefore cuts strongly in favor of granting a stay.

## CONCLUSION

After weighing all the factors that bear on whether to grant a stay pending reexamination of claim 10 of the '105 patent, I conclude that a stay of this action is warranted.  Accordingly, further proceedings in this matter are stayed, and the scheduling order for upcoming proceedings

in this case is vacated.  The stay will extend until the examiner in the reexamination proceeding renders a decision as to the patentability of claim 10 of the '105 patent.

BT has stated that it intends to proceed with its claim of infringement of U.S. Patent No. 7,974,200 ("the '200 patent").  BT's claim of infringement of that patent was severed from the remainder of its claims pending *inter partes* review of the '200 patent.  The PTAB has recently completed its *inter partes* review of the '200 patent.  The PTAB found claims 1–3, 5–7, and 10–12 of the '200 patent to be unpatentable, and it found that claim 4 was not shown by a preponderance of the evidence to be unpatentable.  *Vimeo, Inc. v. British Telecomm. PLC*, IPR No. 2019–00833, Paper 20, at 2 (PTAB Aug. 5, 2020).  The present stay order does not affect further proceedings in this court relating to the '200 patent.

IT IS SO ORDERED.

SIGNED this 11th day of September, 2020.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE