IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-366 (WCB) |
| | ) | |
| IAC/INTERACTIVECORP, MATCH GROUP, INC., MATCH GROUP, LLC, and VIMEO, INC. | ) | REDACTED -- PUBLIC VERSION |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**VIMEO, INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | Jack B. Blumenfeld (#1014) |
| | Jeremy A. Tigan (#5239) |
| | Lucinda C. Cucuzzella (#3491) |
| OF COUNSEL: | 1201 North Market Street |
| | P.O. Box 1347 |
| James Stephen Renard | Wilmington, DE  19899 |
| Robert Greeson | (302) 658-9200 |
| Jacqueline Groves Baker | jblumenfeld@morrisnichols.com |
| Hao J. Wu | jtigan@morrisnichols.com |
| NORTON ROSE FULBRIGHT US LLP | ccucuzzella@morrisnichols.com |
| 2200 Ross Avenue, Suite 3600 | |
| Dallas, TX  75201 | *Attorneys for Defendant Vimeo, Inc.* |
| (214) 855-8000 | |

Erik Janitens
NORTON ROSE FULBRIGHT US LLP
1301 McKinney Street, Suite 5100
Houston, TX  77010
(713) 651-3629

Original Filing Date:  March 22, 2021
Redacted Filing Date:  March 30, 2021

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II.     INTRODUCTION ......................................................................................................... 1

III.    SUMMARY OF ARGUMENT ....................................................................................... 3

IV.     STATEMENT OF FACTS .............................................................................................. 4

V.      LEGAL STANDARD..................................................................................................... 10

VI.     ARGUMENT .................................................................................................................. 11

   A.   Vimeo Has Good Cause to Amend Its Contentions............................................ 11
      1.   The RealNetworks System Was Recently Imbued with New Significance.................. 11
      2.   The RealNetworks System Is Relevant to Validity........................................................ 12

   B.   Vimeo Acted Diligently in Determining an Amendment Was Required and Moving to
        Amend.................................................................................................................................. 15

   C.   Granting Vimeo Leave to Amend Will Not Prejudice BT or Delay Proceedings Beyond
        What Could Be Cured by a Short Extension of the Expert Deadlines............................. 17

   D.   The *Pennypack* Factors Weigh in Vimeo's Favor ........................................................... 19

VII.    CONCLUSION................................................................................................................ 20

## **TABLE OF AUTHORITIES**

**Cases**

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
    889 F.3d 735 (Fed. Cir. 2018)..................................................................................13

*Abbott Labs. v. Lupin Ltd.*,
    C.A. No. 09-152-LPS, 2011 WL 1897322 (D. Del. May 19, 2011).......................20

*Acceleration Bay LLC v. Activision Blizzard Inc.*,
    C.A. No. 16- 00453-RGA, 2019 WL 4194060 (D. Del. Sept. 4, 2019) .................17

*Bayer Cropscience AG v. Dow AgroSciences LLC*,
    No. 10-1045 (RMB/JS), 2012 WL 12904381 (D. Del. Feb. 27, 2012) ...........10, 15

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*,
    C.A. No. 05-132 JJF, 2007 WL 521894 (D. Del. Feb. 15, 2007)...........................17

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001)...............................................................................16

*Genentech, Inc. v. Amgen, Inc.*,
    289 F.3d 761 (Fed. Cir. 2002).................................................................................14

*HSM Portfolio LLC v. Elpida Memory Inc.*,
    160 F. Supp. 3d 708 (D. Del. 2016)........................................................................13

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
    87 F. Supp. 3d 928 (N.D. Cal. 2015) ......................................................................14

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    No. 13-1668-LPS, 2017 WL 658469 (D. Del. Feb. 14, 2017)................................10

*Lambda Optical Solutions, LLC v. Alcatel-Lucent USA Inc.*,
    C.A. No. 10-487-RGA-CJB, 2013 WL 1776104 (D. Del. Apr. 17, 2013) ............17

*Meda Pharms. Inc. v. Teva Pharms. USA, Inc.*,
    C.A. No. 15-785-LPS, 2016 WL 6693113 (D. Del. Nov. 14, 2016) ......................19

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
    559 F.2d 894 (3d Cir. 1977), o*verruled on other grounds, Goodman v. Lukens*
    *Steel Co.*, 777 F.2d 113 (3d Cir. 1985) ...............................................10, 11, 19, 20

*Nobelbiz, Inc. v. Global Connect, L.L.C.*,
    No. 6:12-CV-244, 2015 WL 11089488 (E.D. Tex. July 16, 2015) ........................14

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006)......................................................................10, 14, 15, 17

*S. Track & Pump, Inc. v. Terex Corp.*,
  722 F. Supp. 2d 509 (D. Del. 2010) ...............................................................................19

*SmithKline Beecham Corp. v. Apotex Corp.*,
  403 F.3d 1331 (Fed. Cir. 2005)......................................................................................15

*Symantec Corp. v. Veeam Corp.*,
  No. C 12–00700-SI, 2013 WL 3490392 (N.D. Cal. July 11, 2013) ...............................17

*TQ Delta, LLC v. 2Wire, Inc.*,
  C.A. No. 13-1835-RGA, 2019 WL 1529952 (D. Del. Apr. 9, 2019) ..............................19

*Yodlee, Inc. v. CashEdge, Inc.*,
  No. C05-01550, 2007 WL 1454259 (N.D. Cal. May 17, 2007) ......................................10

**Other Authorities**

Nadja Popovich, et al., *Mapping the Winter Storm's Impact*, THE NEW YORK
  TIMES, https://www.nytimes.com/interactive/2021/02/16/us/winter-storm-
  texas-power-outage-map.html (last updated Feb. 18, 2021).................................................16

**Rules and Statutes**

35 U.S.C. §§ 102 and 103 ...............................................................................................2

Fed. R. Civ. P. 16(b)(4).................................................................................................19

Fed. R. Civ. P. 26(e)(1).................................................................................................10

Federal Rule of Civil Procedure 26(a) ..........................................................................10

Federal Rules of Civil Procedure. *O2* ..........................................................................14

Rule 16(b) .....................................................................................................................19

Rule 26 ..........................................................................................................................10

Rule 26(e) ................................................................................................................10, 19

Rule 30(b)(6)...................................................................................................................8

## I.     NATURE AND STAGE OF THE PROCEEDINGS

The Court's February 16, 2021 Order confirmed that Defendant Vimeo, Inc. ("Vimeo") may seek leave to amend its invalidity contentions.  D.I. 298 at 6, 7 n.2.  Vimeo now respectfully requests that the Court grant it leave to amend its invalidity contentions to include a claim chart corresponding to a prior art system implemented by RealNetworks (the "RealNetworks System"). *See* Ex. 1 (Vimeo's Proposed Exhibit B Invalidity Claim Chart for the RealNetworks System).  As shown, good cause exists for Vimeo to do so.

## II.    INTRODUCTION

Vimeo has good cause to amend its invalidity contentions because Plaintiff British Telecommunications PLC ("BT") is now trying to interpret the only remaining asserted claim (i.e., claim 4 of the '200 Patent) so broadly that it is clearly invalid in view of the RealNetworks System. As such, the RealNetworks System is highly relevant to Vimeo's defenses to BT's infringement allegations and the relevant factors strongly favor granting leave to amend.

The asserted claim is directed to a method to optimize video streaming during startup. Specifically, the asserted claim requires that, during startup, when a "store" (referred to as a buffer) is filled to a "predetermined level," an indication is transmitted to increase a video's encoding rate. Video sharing services (e.g., Vimeo) use various forms of compression and decompression to playback video files, as well as techniques to adjust encoding rates of streaming video.  The umbrella term for such techniques is adaptive bit rate ("ABR") streaming.

Until recently, BT focused on a particular type of ABR streaming—███████████ ████████████████████████████████████████████████████████.  This specific ABR technique is referred to as ██████████████████████████.

Consistent with the foregoing, BT's First Amended Complaint and its Final Infringement Contentions allege that ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████. The problem for BT is that █████████████████████████████████████████████ █████████████████████████████████. Having realized that it has, at best, a *de minimis* damages case (even if infringement is assumed), BT is trying to broaden its interpretation of claim 4 to encompass not only ███████████████████, but also other types of ABR algorithms. That is, ██████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████. However, other companies implemented ABR streaming methods well before the '200 patent's priority date.  To the extent BT asserts that claim 4 of the '200 Patent extends to ████████████████, then claim 4 is invalid under 35 U.S.C. §§ 102 and 103 in view of *at least* the RealNetworks System, which was one target of Vimeo's recent third-party discovery.

BT will not be prejudiced by this amendment. ████████████████████████ ████████████████████████████. Further, Vimeo was diligent in identifying the need for an amendment, notifying BT of same, and raising the issue with the Court by filing this Motion.

### III.    <u>SUMMARY OF ARGUMENT</u>

The Court should grant leave to amend because: (1) the RealNetworks System is highly relevant to Vimeo's defenses to BT's infringement allegations, (2) Vimeo was diligent in identifying the need to amend, bringing the issue to BT's attention, and seeking leave from the Court, and (3) allowing Vimeo to amend will not cause BT undue prejudice.

First, the RealNetworks System is highly relevant because, under BT's apparent infringement theory, it invalidates the asserted claim. Therefore, inclusion of the RealNetworks System is case-dispositive.

Second, Vimeo was diligent in pursuing third-party discovery relating to, among others, the RealNetworks System.  Vimeo timely issued a document and deposition subpoena to RealNetworks on January 21, 2021, and RealNetworks produced responsive documents to Vimeo on February 4, 2021.  Vimeo's counsel immediately started reviewing RealNetworks' production and creating a meaningful and informative invalidity chart based on the RealNetworks System. Upon realizing the significance of the RealNetworks System, on March 7, 2021, Vimeo determined it should amend its contentions to include the RealNetworks System and disclosed its intent to do so to BT.  In parallel, Vimeo continued working on the RealNetworks claim chart, reviewing documents produced by BT that relate to the RealNetworks System, taking steps to extract discovery from other third parties, and drafting this Motion.

Third, BT will not suffer undue prejudice if leave is granted. ███████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ Vimeo also disclosed the RealNetworks System as potentially invalidating prior art in its initial and final invalidity contentions.  Further, Vimeo's requested amendment is narrow in that it seeks to add a single claim

chart based on a single prior art system.  Although Vimeo spent much time and effort conducting discovery of several likely sources of prior art, it does not seek leave to amend its contentions to include all available prior art systems.  Instead, Vimeo's approach is focused: seeking leave to add a single claim chart based on a single prior art system.

BT will not be unfairly prejudiced because expert discovery has not yet begun, opening expert reports are due on March 25, rebuttal reports are due April 22,[1] reply reports are due May 20, and dispositive motion briefing does not begin until August.  Therefore, Vimeo's amendment will not disrupt the case schedule.  To the extent BT argues insufficient time to conduct discovery regarding the RealNetworks System and address it in its expert report, there is additional time for a short extension of expert deadlines (between May and August) without impacting the remaining case schedule.  Vimeo has informed BT that it is amenable to a reasonable extension of expert discovery.

## IV.   STATEMENT OF FACTS

On September 20, 2019, BT served its First Supplemental Claim Charts for its Initial Infringement Contentions and, on November 16, 2020, it served its Final Infringement Contentions.  *See* Ex. 3 (BT's First Supplemental Claim Charts); Ex. 2.  Both of BT's infringement contentions focus on ███████████████ in alleging infringement.  Ex. 2 at 75; Ex. 3, Chart A at 7.

For instance, claim 4 recites:

> *on said store being filled* with data packets *to a predetermined level*, *sending an indication* to said data sender *that said predetermined level has been reached*.

---

[1]   BT would not be required to serve a report on the issue of invalidity for over one month.

(emphasis added).  BT specifically mapped the foregoing claim limitation to █████████.

████████████████████████████████████████████████████████████

██████  In fact, BT revised its allegations relating to the foregoing element of claim 4 between its

initial and final infringement contentions by adding a specific infringement mapping to ██████████

██████████



Specifically, BT's Final Infringement Contentions allege that the client sends the HTTP GET

command ("indication") based on █████████████ ("predetermined level") in █████████

████████████████████

██████  Notably, ████████████████████████████████████████

████████████████████████████████████████████████████████████

Unlike the ███████, which is has been at the core of BT's claim, ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████  No later than December 22, 2020, Vimeo put BT on notice

that the ████████████████████████████████████████████████

██  ████████████████████████████████████████████

████████████████████████  ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

Moreover, BT has been aware since at least January 12, 2021 that (a) the ████████████

███████████████████████████████████████████████

████████████████████████  *See* Ex. 5 at 7, 8.  In fact, through

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

Tellingly, BT's contentions did not provide a mapping or analysis of how ████████ ████████ meets any limitation of claim 4.[2]  More precisely, BT did not identify any aspect of ██ ████████████████████████████████████████████████—that would meet a "predetermined level" of a "store," as required by the asserted claim.  BT's lack of analysis of ████████████████████████████████████████████ ██████████████████  Ex. 5 at 4.  Despite not mapping ████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████ ██ ████

---

[2]  Although BT's final infringement contentions mention ████████ it is only in passing in a quote to a "*see also*" citation.  Ex. 2, Chart A at 7.

[3]  Even in view of the stay from September 21, 2019–October 16, 2020 (*see* D.I. 130, D.I. 256), BT had access to Vimeo source code from February 2019–September 2019 and October 2020–present, totaling over 12 months of access.

[4]  After Vimeo served its final invalidity contentions, BT served over 60,000 pages of documents including multiple studies and analyses on allegedly infringing products and associated claim charts.  Documents requests for these documents were served on August 30, 2019, i.e., well before the contention deadline.  Ex. 6 (Vimeo's First Set of Requests for Production (Aug. 30, 2019)) at 7, 9–10.

████████████████████████████████████████████████████████

████████████████████████████████   ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

For example, on January 9, 2021, BT produced, for the first time, an internal analysis that

included a claim chart mapping claim 4 to ████████████████████████   ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

---

[5]   Although BT's discovery requests and interrogatories prior to serving its final infringement
contentions included references to both ████████████████████████, the final
infringement contentions were based only on ██████████████. Thus, Vimeo had basis to
believe that BT concluded ████████████ did not infringe.

And on February 2, 2021, nearly three months after its Final Infringement Contentions, BT affirmatively asserted infringement allegations ███████████████ infringes claim 4. Ex. 16 (BT's Supplemental Responses to Vimeo's First Set of Interrogatories) at 3.  At a minimum, BT's activity after serving its final infringement contentions illuminates its shifting interpretation of claim terms, specifically the claimed "predetermined level" of a "store" as applied to the accused products.

By analyzing BT's discovery requests and document production served *after* its Final Infringement Contentions, ███████████████████████████████ ████████████   Soon thereafter, on January 22, 2021, Vimeo issued a document and deposition subpoena to RealNetworks.[6]  Ex. 10 (Vimeo Subpoena to RealNetworks, Inc.).  RealNetworks produced non-publicly accessible documents on January 29, 2021.  Ex. 15 (Email from RealNetworks); *see also* Ex. 28 (cross-producing RealNetworks documents to BT).

The RealNetworks System was cited as an invalidating prior art system against all asserted claims in Vimeo's Initial Invalidity Contentions, served April 30, 2019 (Ex. 17 at 81, 92, 100–01), and Final Invalidity Contentions, served December 7, 2020 (Ex. 18 at 23, 30, 34, 42).  Prior to RealNetworks' production discussed above, Vimeo did not have sufficient evidence to map the RealNetworks System in good faith.  To the extent BT alleges infringement based on a mapping of elements in ███████████████ to claim 4, including the identification of an element that

---

[6]   Vimeo also served third-party subpoenas on Microsoft Corp. and Apple Inc. related to their prior art systems.  Ex. 11 (Vimeo's Subpoena to Microsoft Corp.); Ex. 12 (Vimeo's Subpoena to Apple Inc.).  On information and belief, both Microsoft and Apple also used ABR algorithms that predate the priority date of the '200 Patent.  Microsoft and Apple completed production of non-publicly accessible documents on March 1 and 8, respectively. *See* Ex. 13 (Email from Microsoft); Ex. 14 (Emails from Apple).

satisfies the claimed "predetermined level" of a "store," the same functionality exists in the RealNetworks System.

## V.   <u>LEGAL STANDARD</u>

A motion for leave to amend invalidity contentions requires good cause. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365–66 (Fed. Cir. 2006); *Bayer Cropscience AG v. Dow AgroSciences LLC*, No. 10-1045 (RMB/JS), 2012 WL 12904381, at *1 (D. Del. Feb. 27, 2012) (applying case law from New Jersey district court to interpret the definition of "good cause" because there is a "dearth of Delaware cases interpreting what 'good cause' means" in the context of amending contentions).  To show good cause, a party seeking to amend its contentions ordinarily must show: (1) its diligence in both discovering an amendment was necessary and in moving to amend after that discovery; and (2) lack of unfair prejudice to the non-movant. *O2 Micro*, 467 F.3d at 1366–67, *Bayer*, 2012 WL 12904381, at *2–*3.  Courts have also considered additional factors, such as the importance of the new information and the difficulty of locating the new information. *Yodlee, Inc. v. CashEdge, Inc.*, No. C05-01550, 2007 WL 1454259, at *2 (N.D. Cal. May 17, 2007).  Finally, Rule 26(e) may require supplementation,[7] in which case the Court should consider the *Pennypack* factors, which also weigh in favor of granting Vimeo leave to amend its contentions.[8]

---

[7]   In addition, Rule 26 imposes an affirmative obligation on defendants to serve amended contentions. See Fed. R. Civ. P. 26(e)(1) (a party must "supplement or correct its disclosure or response . . . if the party learns that in some material respect the disclosure or response is incomplete . . . .").

[8]   At least one judge in this District has construed infringement contentions as akin to "'initial disclosures' under Federal Rule of Civil Procedure 26(a)," which Rule 26(e) requires a party to supplement. *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 13-1668-LPS, 2017 WL 658469, at *1 (D. Del. Feb. 14, 2017) (applying *Pennypack* factors in deciding whether to strike plaintiff's amended infringement contentions).  Vimeo also includes an analysis of the *Pennypack* factors in Section V.D, below.

## VI.    <u>ARGUMENT</u>

Good cause exists for Vimeo to amend its invalidity contentions to include the RealNetworks System chart.   Vimeo acted with diligence to discover an amendment was necessary, expeditiously conducted third-party discovery, and moved to amend in a timely manner. The requested amendment is narrowly-tailored and critical for Vimeo's defenses.  Also, BT will not suffer unfair prejudice if Vimeo is granted leave to amend.  Finally, the *Pennypack* factors weigh in favor of granting Vimeo leave to amend its contention.

### A.    **Vimeo Has Good Cause to Amend Its Contentions**

#### 1.    <u>The RealNetworks System Was Recently Imbued with New Significance</u>

BT broadening its infringement theory beyond ████████████ after serving its Final Infringement Contentions, as shown by its discovery including interrogatories, subpoenas, and document production, brought new importance to the RealNetworks System.   As discovery progressed and BT began to fully comply with its written discovery and document production obligations,[9] facts were uncovered that led Vimeo to conclude that BT was asserting that ███ ████████████ infringed claim 4.

As explained above, BT had knowledge of █████████████████████████████ ██████████████████████████████ Yet, in its Initial and Final Infringement Contentions, BT only provided a complete mapping for claim 4 to ██████████████████ █████████████████████████████████████████████████ █████████████████████████████.  The contentions only map features of ██████████████ to claim 4.  Ex. 2 at 75; Ex. 3, Chart A at 7.  For example, ███ ████████████████████████████████████████████████████

---

[9]  *See* fn. 4, *supra*.

████████████████████████████████████ Only later, from BT's discovery subsequent to its Final Infringement Contentions, including interrogatories, subpoenas, and document production, it became clear that BT considered ████████████ to be at issue.

A patentee's changing infringement theory, stemming for a new interpretation of the claim terms, provides good cause for allowing amendment of invalidity contentions.  For example, in *Alt v. Medtronic, Inc.*, the court allowed an amendment to add eight additional prior art references in light of plaintiff's "very broad and unclear" infringement contentions that were subsequently narrowed.  No. 2:04-cv-370, 2006 WL 278868, at *2, *6 (E.D. Tex. Feb. 1, 2006).  Similarly, in *Mobile Telecomms. Techs., LLC v. Blackberry Corp.*, the court allowed amendment to add two new prior art references after the plaintiff "asserted a new 'retransmission' theory" that provided clarification of its "initially ambiguous infringement contentions."  No. 3:12-cv-1652-M, 2015 WL 12698061, at *1, *4 (N.D. Tex. May 19, 2015).  Here, the amendment requested is not so sweeping.  Vimeo moves for leave to add a single claim chart for a prior art system that was previously disclosed in its invalidity contentions as an invalidating prior art system.

It is still unclear how BT will ultimately allege █████████████ infringes claim 4. And while Vimeo reserves the right to object to any analysis by BT's expert that departs from its final infringement contentions, Vimeo should be permitted to amend its invalidity contentions to address BT's apparently evolving interpretation of claim 4.

2.    The RealNetworks System Is Relevant to Validity

In considering good cause, courts may examine the relevance of the prior art to be added. In this case, the RealNetworks System is highly relevant under BT's apparent infringement theory. Reference to the detailed claim chart demonstrates as much.  Specifically, claim 4 recites "on said store being filled with data packets to a predetermined level, sending ***an indication to said data***

*sender that said predetermined level has been reached*." ███████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████ infringes claim 4, BT is advancing an

interpretation of this claim element broader than the interpretation disclosed in its Final

Infringement Contentions.  As seen from the attached claim chart, any such mapping by BT

necessarily implicates ████████████████████████████████████████████████████

██████████ in this regard.

The Federal Circuit has recognized that an accused infringer is allowed the latitude to rely

on the patentee's interpretation of claims to develop defenses: "an accused infringer cannot defeat

a claim of literal infringement or establish invalidity merely by pointing to similarities between an

accused product and the prior art.  This does not, however, preclude a litigant from arguing that if

*a claim term must be broadly interpreted to read on an accused device, then this same broad*

*construction will read on the prior art*."  *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d

735, 742 (Fed. Cir. 2018) (internal citations omitted; emphasis added).

Here, if BT's infringement theory seeks to broaden its interpretation regarding the accused

device, then Vimeo should be permitted to apply BT's new interpretation to prior art.  To be more

specific, BT is advancing an infringement theory that includes a broad interpretation of claim

terms, e.g., a "predetermined level" of a "store" that reads directly on prior art.  Therefore, under

BT's broadened infringement theory, the RealNetworks System is highly relevant.

Courts have consistently allowed defendants to advance invalidity positions under similar

circumstances.  *See, e.g.*, *HSM Portfolio LLC v. Elpida Memory Inc.*, 160 F. Supp. 3d 708, 726

(D. Del. 2016) ("The case does not preclude parties from arguing that if a claim limitation must be

interpreted in a certain fashion to read on the accused products, then—if interpreted that same way—the claim reads on the prior art."); *Nobelbiz, Inc. v. Global Connect, L.L.C.*, No. 6:12-CV-244, 2015 WL 11089488, at *3 (E.D. Tex. July 16, 2015) ("[Defendant's expert] is permitted to analyze the 2004 prior art systems in accordance with the claim interpretations put forth by [Plaintiff], subject to the claim constructions adopted by this Court."); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 943 (N.D. Cal. 2015) ("[Defendant's expert] does not argue that the [asserted patent] is invalid because the prior art is identical to an infringing product . . . Rather, he assumes that [Plaintiff's] understanding of the construed claims is correct, and then proceeds to demonstrate how, in his opinion, each element of the claims is found in the prior art.").

Accordingly, it would substantially prejudice Vimeo to deny the requested amendment. Such a result would not comport with the letter or spirit of the disclosure requirements of the Federal Rules of Civil Procedure. *O2 Micro*, 467 F.3d at 1366 (noting that it is "certainly correct that refusing to allow any amendment to contentions based on new information developed in discovery could be contrary to the spirit of the Federal Rules"). Further, while the philosophy behind amending contentions is decidedly conservative, the rationale for that conservative approach is not threatened in this case. Minimizing contention amendments is designed to prevent the parties from shifting their theories in reaction to adverse substantive rulings, *see Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002) ("designed to prevent the 'shifting sands' approach to claim construction"), or late in discovery, leaving the opposing party with little time to conduct discovery on a new theory, *see O2 Micro*, 467 F.3d at 1365 ("[D]iscovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to

- 14 -

information that is pertinent to the theories of the case."). In this case, the Court's claim construction order issued before Vimeo filed its final contentions, and no substantive rulings issued between the time Vimeo served final invalidity contentions and the filing of this Motion. An adverse ruling is not the impetus for the requested amendment. Furthermore, as discussed below, there is still ample time left for BT to conduct any required discovery on the RealNetworks System. Finally, Vimeo's proposed amendment serves the public interest by permitting Vimeo to test the validity of the '200 Patent against relevant prior art. *See, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1354 (Fed. Cir. 2005) ("[T]here is a significant public policy interest in removing invalid patents from the public arena.").

### B.     Vimeo Acted Diligently in Determining an Amendment Was Required and Moving to Amend

A primary consideration in determining whether good cause exists is the moving party's diligence. *O2 Micro*, 467 F.3d at 1363–68; *Bayer*, 2012 WL 12904381, at *1. Diligence has two components: (1) whether the moving party acted diligently to discover that an amendment was appropriate; and (2) whether the moving party promptly moved to amend its contentions after it learned an amendment was necessary. *Bayer*, 2012 WL 12904381, at *2. But a movant "does not have to demonstrate perfect diligence in order to show good cause for an amendment." *Id*. at *2. Rather, only "reasonable" diligence is required. *Id*. Vimeo acted diligently in both respects.

<u>First</u>, Vimeo was diligent in determining whether an amendment was necessary. As soon as it became clear that BT intended to pursue an alternative infringement theory related to ██ ████████ via its continued production, deposition notices, and interrogatories at the end of January 2021—after service of its Final Infringement Contentions that alleged infringement based on ██████████ alone—Vimeo reviewed the prior art systems identified in its invalidity contentions, and based on this analysis, determined it was likely that several of the

identified prior art systems operated similarly to ███████████.  *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier.").  Thus, to the extent BT asserts that aspects of ███████████ satisfy claim 4's limitations, several of the identified prior art systems would as well.

Accordingly, Vimeo issued a document and deposition subpoena to RealNetworks for technical details related to the functioning of the system on January 22.  Ex. 10 at 4.  RealNetworks produced non-publicly accessible documents on January 29.  Ex. 15.  Vimeo also issued document and deposition subpoenas to Microsoft and Apple on January 22.  Exs. 11, 12.  After considerable dialogue, Microsoft and Apple reluctantly produced non-publicly accessible documents on March 1 and 8, respectively.  *See* Exs. 13, 14.  Although Vimeo's counsel has been reviewing Microsoft and Apple's productions, Vimeo was able to create a meaningful and informative invalidity chart for the RealNetworks System based on RealNetworks' production.[10]  Ex. 1.

<u>Second</u>, Vimeo was diligent in moving to amend.  When Vimeo determined it was necessary to amend its contentions in February, Vimeo promptly notified BT of its intent to file this Motion and requested a meet and confer.  Ex. 19 (Email from R. Greeson).  Thus, less than two months have elapsed between Vimeo's discovery of a need to amend and the filing of this Motion.  Notably, during this time period Vimeo conducted other third-party discovery, with some amount of resistance, which created delay in Vimeo evaluating the appropriate scope of its requested amendment.

---

[10] Efforts by Vimeo's Texas-based counsel to substantively review the non-publicly accessible documents produced by RealNetworks were waylaid by unprecedented, weather-related power outages spanning several days.  *See* Nadja Popovich, et al., *Mapping the Winter Storm's Impact*, THE NEW YORK TIMES, https://www.nytimes.com/interactive/2021/02/16/us/winter-storm-texas-power-outage-map.html (last updated Feb. 18, 2021).

Vimeo's diligence contrasts with the situation in *O2 Micro*, where the plaintiff waited three months after its discovery that its infringement theory was flawed to seek leave of the court to amend its final infringement contentions.  467 F.3d at 1366–67.  Although Vimeo's counsel has been reviewing Microsoft and Apple's production of non-publicly accessible documents in a good faith effort to determine whether additional amendments to Vimeo's invalidity contentions are necessary, Vimeo is cognizant of the Court's schedule for exchanging expert reports and corresponding discovery.  Therefore, Vimeo seeks to amend its invalidity contentions to include only one chart corresponding to one prior art system.  *See Lambda Optical Solutions, LLC v. Alcatel-Lucent USA Inc.*, C.A. No. 10-487-RGA-CJB, 2013 WL 1776104, at *4 (D. Del. Apr. 17, 2013), *report and recommendation adopted*, 2013 WL 12156799 (D. Del. May 13, 2013) (allowing contention amendments in part because of the "significant quantity and technical nature of the documentation provided" and "the significant effort required . . . to review the voluminous and technical documents-at-issue"); *accord Symantec Corp. v. Veeam Corp.*, No. C 12–00700-SI, 2013 WL 3490392, at *3 (N.D. Cal. July 11, 2013) (recognizing diligence where a plaintiff's late production caused delays and the defendant "needed to view the non-public material ***before it could in good faith amend*** its invalidity contentions" (emphasis added)).

## C.    Granting Vimeo Leave to Amend Will Not Prejudice BT or Delay Proceedings Beyond What Could Be Cured by a Short Extension of the Expert Deadlines

Absent a strong showing of prejudice, evidence should not be excluded.  *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, C.A. No. 05-132 JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) ("evidence should be excluded sparingly and only in circumstances involving litigation conduct that is clearly unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered"); *see also Acceleration Bay LLC v. Activision Blizzard Inc.*, C.A. No. 16- 00453-RGA, 2019 WL 4194060, at *7–8 (D. Del. Sept. 4, 2019)

(denying motion to exclude new theories because there was no strong showing of prejudice, and where any prejudice can be cured by further discovery with ample time to prepare for trial on new theories).  In this case, there is little or no prejudice to BT, and any prejudice could be cured with a short extension of expert deadlines that would have no impact on the remaining schedule.

Here, Vimeo's amendment to its Final Invalidity Contentions is narrowly focused, charting only one compelling system—i.e., the RealNetworks System.  ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

Moreover, the RealNetworks System was further brought to BT's attention via Vimeo's initial invalidity contentions.  The RealNetworks System chart merely expands on that initial disclosure with a detailed mapping to claim 4.  As mentioned above, expert discovery has not yet begun, opening reports are due on March 25, rebuttal reports are due April 22, reply reports are due May 20, and dispositive motion briefing does not begin until August.  Ex. 23 (Email agreement).  Because the case is just beginning expert discovery, BT will have ample time for its expert to consider Vimeo's invalidity arguments regarding the RealNetworks System.

To the extent BT argues insufficient time to conduct discovery regarding the RealNetworks System and address it in its expert report, there is additional time for a short extension of expert deadlines (between May and August) without impacting the remaining case schedule.  The Federal

Rules provide that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Good cause is present when the schedule cannot be met despite the moving party's diligence." *Meda Pharms. Inc. v. Teva Pharms. USA, Inc.*, C.A. No. 15-785-LPS, 2016 WL 6693113, at *1 (D. Del. Nov. 14, 2016); *see also S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 521 (D. Del. 2010) ("the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party"). As explained, Vimeo has been diligent in both identifying an amendment was necessary and moving for leave to amend. Accordingly, should a short extension be required, Vimeo will do what is required to accommodate a revised schedule.

### D.   The *Pennypack* Factors Weigh in Vimeo's Favor

Although many courts apply the "good cause" analysis outlined above to motions for leave to amend invalidity or infringement contentions, some courts instead choose to treat amended contentions as disclosures governed by Federal Rule of Civil Procedure 26(e) and apply the *Pennypack* factors. If applied here, Vimeo's conduct equally satisfies those factors. *See, e.g., TQ Delta, LLC v. 2Wire, Inc.*, C.A. No. 13-1835-RGA, 2019 WL 1529952, at *1 (D. Del. Apr. 9, 2019) (applying *Pennypack* and finding that the factors weighed against excluding supplemental expert reports, where those reports included important "new opinions . . . in support of Defendant's noninfringement case").

The *Pennypack* factors include: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977), o*verruled on other grounds, Goodman v.*

- 19 -

*Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985).  Where amended invalidity contentions are "critical" to a party's defense, the *Pennypack* factors weigh heavily in support of granting leave because public interest "favor[s] the resolution of disputes on their merits" particularly "with respect to the validity of patents."  *Abbott Labs. v. Lupin Ltd.*, C.A. No. 09-152-LPS, 2011 WL 1897322, at *5 (D. Del. May 19, 2011).

In this case, the *Pennypack* factors weigh in favor of granting Vimeo's leave to supplement its contentions.  First, BT has known about the RealNetworks System at least since Vimeo's initial invalidity contentions, and Vimeo put BT on notice of its intent to move for leave to amend as soon as practical once it determined amendment was necessary.  Second, expert discovery has not begun and, as such, BT will have ample opportunity to review and respond to the RealNetworks System.  Therefore, the first and second factors weigh in favor of granting Vimeo's leave.

Third, now adding a single chart based on the RealNetworks System will not impact the trial setting.  Trial is over seven months away, and because expert discovery has not begun, Vimeo's amendment will not cause further delay by requiring the parties to alter expert reports.

Fourth, Vimeo is not requesting to amend its contentions in bad faith or for any dilatory purpose.  Indeed, Vimeo diligently pursued third-party discovery related to the RealNetworks System as soon as its significance was clear and informed BT of the need to amend as soon as practical.  Lastly, as explained in this Motion, the RealNetworks System is material, and potentially case-dispositive prior art under BT's apparent claim interpretation.

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, Vimeo respectfully requests that the Court grant its Motion for Leave to Amend Its Invalidity Contentions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Lucinda C. Cucuzzella*

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
ccucuzzella@morrisnichols.com

*Attorneys for Defendant Vimeo, Inc.*

OF COUNSEL:

James Stephen Renard
Robert Greeson
Jacqueline Groves Baker
Hao J. Wu
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201
(214) 855-8000

Erik Janitens
NORTON ROSE FULBRIGHT US LLP
1301 McKinney Street, Suite 5100
Houston, TX  77010
(713) 651-3629

 March 22, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 22, 2021, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                    *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Daniel A. Boehnen, Esquire                                   *VIA ELECTRONIC MAIL*
Grantland G. Drutchas, Esquire
Jeffrey P. Armstrong, Esquire
George T. Lyons, III, Esquire
Margot M. Wilson, Esquire
MCDONNELL BOEHNEN HULBERT
& BERGHOFF LLP
300 South Wacker Drive
Chicago, IL  60606
*Attorneys for Plaintiff*

*/s/ Lucinda C. Cucuzzella*
_____
Lucinda C. Cucuzzella (#3491)